UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LAFAYETTE RICKS<br>500 West Cork St., #2<br>Winchester, VA 22301<br><br>Plaintiff,<br><br>v.<br><br>MPD OFFICER TOMMY BARNES<br>Third District Station<br>1620 V St., NW<br>Washington, DC 20009<br><br>*and*<br><br>The District of Columbia<br>1350 Pennsylvania Avenue, NW<br>Washington, DC 20004<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.: _____<br><br><br>Jury Trial Demanded |

## COMPLAINT

**(Police Misconduct: Violation of rights under the Constitution of the United States
and the common law of the District of Columbia.)**

Plaintiff Lafayette Ricks ("Mr. Ricks" or "plaintiff"), by his undersigned attorneys, files

this Complaint against Officer Tommy Barnes ("Officer Barnes") and the District of Columbia

asserting claims of assault and battery; false imprisonment; intentional infliction of emotional

distress; and violations of Plaintiff's Fourth, Fifth, and Eighth Amendment rights arising from

the improper arrest of Mr. Ricks on September 4, 2004, while he was eating lunch and reading

the newspaper in a public park. Plaintiff seeks damages, fees, costs, and other appropriate relief.

## JURISDICTION

1.  Mr. Ricks brings this action to redress the deprivation of rights secured to him by the United States Constitution, as made actionable under 42 U.S.C. § 1983, and additional rights secured by the law of the District of Columbia.

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. In addition, this Court has supplemental jurisdiction to adjudicate claims under the laws of the District of Columbia pursuant to 28 U.S.C. § 1367.

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the conduct giving rise to this action occurred in the District of Columbia.

## PARTIES

4.  Plaintiff Lafayette Ricks is an adult resident of Virginia. His current address is 500 West Cork Street #2, Winchester Virginia, 22301. He is employed as a bus driver. At the time of the incident described in this Complaint, plaintiff resided at 425 2d Street, NW, Washington, DC 20001—a homeless shelter.

5.  Defendant Tommy Barnes is an employee of the District of Columbia Metropolitan Police Department ("MPD"). His badge number is 341. Officer Barnes is assigned to the Third District, located at 1620 V St. NW, Washington, DC 20009. Officer Barnes is sued in his individual capacity.

6.  Defendant District of Columbia is a municipal corporation duly organized and existing under the laws of the United States.

7.  The MPD, which employs defendant Tommy Barnes, is a department of the District of Columbia government.

## FACTS

8.     Around noon of September 4, 2004, Mr. Ricks was seated by himself on a bench in

Dunbar Park, located at the corner of New Jersey and N Streets, N.W.  Mr. Ricks was

eating his lunch and drinking a soda as he read the morning newspaper.

9.     Mr. Ricks was among approximately a dozen other homeless individuals gathered in the

park.  The church across the street—the New Covenant Evangelistic Center—was giving

away clothes and food to needy people in the neighborhood.  Many of the people in the

park, though not Mr. Ricks himself, were enjoying the gifts from the church.

10.    Officer Barnes drove his police cruiser onto a paved area in the park.  Officer Barnes

rolled down his window and began to yell at everyone in the park, ordering them to leave.

11.    Officer Kimberly Tutt was in the cruiser with Officer Barnes and was present throughout

the incident described in this Complaint.

12.    Officers Barnes and Tutt got out of the cruiser, and Officer Barnes approached another

homeless man in the park, James Fedison.  Mr. Fedison said he did not see any reason

why anyone had to leave the park.  As Officer Barnes approached Mr. Fedison, still

yelling generally for everyone to leave, Mr. Fedison left the park.

13.    Officer Barnes then yelled to Mr. Ricks to leave the park, too.  Mr. Ricks was still sitting

by himself approximately 150 feet from the parked cruiser, reading a newspaper, and he

was bothering no one.

14.    Mr. Ricks told Officer Barnes that he did not understand what authority the police had to

make him leave, as he had done nothing wrong.

3

15.  As Mr. Ricks spoke, both officers approached him, and Officer Barnes threatened to arrest him if he did not leave.  Mr. Ricks responded that there was no reason to arrest him or harass him.

16.  Officer Barnes continued to approach Mr. Ricks in an aggressive and hostile manner.  He got extremely close to Mr. Ricks's face as he continued to yell at him to leave.

17.  While Mr. Ricks believed that Officer Barnes was attempting to incite him to react physically, he remained still and did not respond.

18.  Without provocation or warning, Officer Barnes then reached for his pepper spray canister, but Officer Tutt cautioned him not to use it.

19.  Officer Barnes then said to Mr. Ricks, "I'm going to arrest you," and accused Mr. Ricks of calling him an "asshole."

20.  Mr. Ricks replied that Officer Barnes did not need to use profanity because Mr. Ricks was not using such language and had not called the officer any names.

21.  Apparently perturbed that he could not get a rise out of Mr. Ricks, Officer Barnes then came from behind Mr. Ricks without provocation or warning and placed handcuffs on one of his wrists, placing him under arrest.  Mr. Ricks was subsequently charged with disorderly conduct.

22.  Officer Barnes put on the handcuffs with unnecessary force.  The hinge of the cuff pinched deeply into Mr. Ricks's skin, causing him to bleed and leaving a permanent scar. He continues to feel pain and numbness in one of his fingers as a result of his encounter with Officer Barnes.

23.  Officer Barnes then forcefully pushed Mr. Ricks to the ground.

4

24. Next, Officer Barnes led Mr. Ricks to a low wall about 25 feet away that surrounded the perimeter of the park. Officer Barnes attempted to seat Mr. Ricks on a paper tray that had french fries and ketchup on it, in order to soil his pants.

25. Officer Barnes stated that he was going to call a transportation van for Mr. Ricks so that he could spend the weekend in jail.

26. A sergeant arrived at the scene. Apparently conscious that there was no probable cause for his arrest of Mr. Ricks, Officer Barnes told the sergeant that Mr. Ricks had called him a "mother-fucker," which was not true. The sergeant called Mr. Ricks a "smart-ass."

27. Mr. Ricks was transported to the Third District station house. Once there, Officer Barnes commented that it looked like Mr. Ricks would be spending the long weekend (Labor Day) in jail, assuming he would be unable to make the requisite payment to be released pursuant to post and forfeit. Post and forfeit is a method the police use to resolve many misdemeanor arrests, if the arrestee can pay to "post" collateral. The procedure is described further in paragraphs 33 and 34 below.

28. Upon recognizing that Mr. Ricks's address corresponded to a homeless shelter, Officer Barnes said to him, "What, are you homeless?" Mr. Ricks responded, "Yes, is that a strike against me?" Officer Barnes said that it was.

29. After learning that Mr. Ricks was homeless, Officer Barnes cynically offered him the option of post and forfeit, believing that he would be unable to post the requisite $25. Contrary to Officer Barnes's apparent expectations, however, Mr. Ricks did have the funds to post and forfeit. When Officer Barnes learned that Mr. Ricks was able to post and forfeit, he exclaimed that Mr. Ricks was "lucky" and explained that Mr. Ricks could either pay $25 or spend the weekend in jail.

30.    Given the choice described by Officer Barnes, Mr. Ricks opted to pay $25 and was released from police custody.

31.    Mr. Ricks did not receive any attention for his injury, despite his bleeding.

32.    As a result of the events described above, Mr. Ricks suffered physical injury, pain, mental anguish, fear, humiliation, and embarrassment.

33.    Post and forfeit is a procedure the police can offer certain misdemeanor arrestees.  The arrestee pays $25 or $50 (the amount is set in a court-approved collateral schedule) and the District agrees not to press charges.  The practice involves a fiction:  The payment constitutes posting of collateral, securing the arrestee's appearance at a trial that will not take place, because the charges are not pursued.  When posting the collateral, the arrestee also forfeits any right to have the collateral returned.

34.    Paying post and forfeit is, in effect, a fine without an admission or a finding of guilt.  If an arrestee cannot afford to post and forfeit, he or she is incarcerated until his or her initial appearance before a judicial officer—or until a prosecutor decides not to proceed with criminal charges.

35.    Citation release is another procedure the police can offer to eligible persons arrested for certain misdemeanors.  The arrestee does not make any payment or post any sort of collateral, and the police do not agree to forego prosecution of the minor offense.  Instead, the police issue the arrestee a citation to appear in court on a set date in the future and then release the suspect.  If the government pursues the misdemeanor charges, the arrestee is arraigned on the date noted in the citation and a trial date is set.  Of course, the government still can decline to prosecute these minor offenses, and it often does so.

36.  Officer Barnes did not explain the post and forfeit procedure to Mr. Ricks, nor did he explain to Mr. Ricks that if he did post and forfeit he could, within 90 days, move the Superior Court to withdraw his post and forfeit and stand trial.

37.  Officer Barnes did not make citation release available—which would have cost Mr. Ricks nothing—or let Mr. Ricks know that citation release was an option.

38.  At all times relevant to this complaint, Officer Barnes acted under color of law, statute, custom or usage of the District of Columbia.

39.  At all times relevant to this complaint, Officer Barnes acted within the scope of his employment as an MPD officer and acted on behalf of, and in the interests of, his employer.

40.  At no time did Officer Barnes have probable cause, or a reasonable basis, to believe that Mr. Ricks had committed the offense of disorderly conduct, or any other criminal offense.

41.  Upon information and belief, Officer Barnes made the arrest with the expectation that charges would never be filed against Mr. Ricks.

42.  At no time did Officer Barnes have justification for using physical force against Mr. Ricks.  At all times relevant to this complaint, Mr. Ricks was unarmed and did not pose a threat of death or bodily injury to Officers Barnes or Tutt, or to anyone else.

43.  At the time of Mr. Ricks's arrest, it was clearly established as a matter of law that a person could not be arrested without probable cause and that force could not be used against citizens except where necessary and reasonable.

44.    Officer Barnes knew, and any reasonable police officer would have known, that Mr. Ricks could not lawfully be arrested without probable cause to believe he committed a criminal offense, and that force could not be used unless reasonable.

45.    Fueled by his animus towards the homeless, Officer Barnes acted with actual malice toward Mr. Ricks and with reckless indifference to, and deliberate disregard for, Mr. Ricks's constitutional rights.

46.    Upon information and belief, the District of Columbia, through the Metropolitan Police Department, maintains a policy or practice of offering only post and forfeit to many minor misdemeanor arrestees when the Metropolitan Police Department has no expectation that the U.S. Attorney's office will pursue misdemeanor charges, rather than also offering citation release. This policy or practice generates money and curtails scrutiny of improper arrests.

47.    Upon information and belief, the District of Columbia, through the MPD, considers the homeless to be a nuisance and often finds it difficult to deal with the homeless. The District of Columbia's policy or practice of offering only post and forfeit, rather than also offering citation release, to individuals arrested for misdemeanors has the effect of inflicting punishment on homeless and other indigent arrestees, who often will not have the money to post and forfeit, and thus will be deprived of their liberty for an extended period before the authorities make a final determination not to pursue charges, just as Officer Barnes assumed would happen with Mr. Ricks.

48.    At the time of Mr. Ricks's arrest, the District of Columbia government knew or should have known that MPD officers were misusing the post and forfeit procedure both to

inflict punishment and to sweep under the rug arrests for which there was no probable cause or likelihood of prosecution.

49. The District of Columbia knew or should have known that this improper use of post and forfeit would likely violate some arrestees' constitutional rights.

50. At the time of Mr. Ricks's arrest, the District of Columbia government had not provided adequate training, nor adequate supervision, to MPD Officers regarding the proper use of post and forfeit.

51. The District of Columbia's actions and omissions reflect deliberate indifference to the constitutional rights of plaintiff Lafayette Ricks.

52. At the time of Mr. Ricks's arrest, it was clearly established as a matter of law that the government cannot inflict punishment on an individual prior to trial.

53. At the time of Mr. Ricks's arrest, it was clearly established as a matter of law that any amount of bail is excessive, and any fine is excessive, when there is no probable cause to believe an arrestee has committed a criminal offense.

## CLAIMS FOR RELIEF

### I: Violation of Fourth Amendment Rights
(Defendant Barnes)

54. Officer Barnes arrested plaintiff without probable cause to believe that plaintiff had committed or was about to commit a crime.

55. Officer Barnes had no good faith or reasonable belief that probable cause existed to arrest plaintiff.

56. The actions of Officer Barnes deprived plaintiff of his rights under the Fourth Amendment to the Constitution of the United States to be free of unreasonable search and seizure, as made actionable by 42 U.S.C. § 1983.

57.    The relevant law was clearly established at the time Officer Barnes interfered with plaintiff's Fourth Amendment rights.

## II: Assault and Battery
### (Defendant Barnes)

58.    When Officer Barnes confronted and then arrested plaintiff, he intended to cause harmful or offensive contact with plaintiff, or to create the imminent apprehension of such contact.

59.    Plaintiff did experience the imminent apprehension that Officer Barnes would batter him.

60.    Officer Barnes's use of force when arresting plaintiff did cause offensive contact with plaintiff.

61.    The actions of Officer Barnes in using force against plaintiff without lawful reason constitute assault and battery under the common law of the District of Columbia.

## III: False Arrest
### (Defendant Barnes)

62.    Officer Barnes arrested plaintiff without probable cause to believe that plaintiff had committed or was about to commit a crime.

63.    Defendant had no good faith or reasonable belief that probable cause existed to arrest plaintiff.

64.    The actions of Defendant in arresting plaintiff constitute false arrest under the common law of the District of Columbia.

10

## IV: Intentional Infliction of Emotional Distress
### (Defendant Barnes)

65.    Officer Barnes's conduct when confronting and arresting plaintiff, and in threatening that

plaintiff would spend the weekend in jail, was extreme and outrageous, and it was

intentionally or recklessly calculated to cause plaintiff severe emotional distress.

66.    Officer Barnes's conduct did cause plaintiff severe emotional distress.

67.    Officer Barnes's conduct constitutes intentional infliction of emotional distress under the

common law of the District of Columbia.

## V: Violation of Fifth Amendment Rights
### (Defendant Barnes)

68.    Officer Barnes required that plaintiff either post and forfeit or remain incarcerated, even

though he had no probable cause to believe that plaintiff had committed or was about to

commit a crime.

69.    Officer Barnes had no good faith or reasonable belief that probable cause existed to

justify prosecuting plaintiff.

70.    When Officer Barnes required that plaintiff either post and forfeit or remain incarcerated,

he already knew that plaintiff was homeless.

71.    Officer Barnes offered post and forfeit as the only option for resolving Mr. Ricks's arrest

with the intent to punish Mr. Ricks.

72.    The actions of Officer Barnes deprived plaintiff of his rights under the Fifth Amendment

to the Constitution of the United States to be free of punishment prior to trial, as made

actionable by 42 U.S.C. § 1983.

73.    The relevant law was clearly established at the time Officer Barnes interfered with

plaintiff's Fifth Amendment rights.

11

## VI: Violation of Eighth Amendment Rights
### (Defendant Barnes)

74.    Officer Barnes required that plaintiff post collateral in the amount of $25, and forfeit that

collateral, or remain incarcerated, even though there was no probable cause to believe

that plaintiff had committed or was about to commit a crime.

75.    Officer Barnes had no good faith or reasonable belief that probable cause existed to

justify prosecuting plaintiff.

76.    The actions of Officer Barnes deprived plaintiff of his rights under the Eighth

Amendment to the Constitution of the United States to be free of excessive bail and fines,

as made actionable by 42 U.S.C. § 1983.

77.    The relevant law was clearly established at the time defendant interfered with plaintiff's

Eighth Amendment rights.

## VII: Violation of Fifth Amendment Rights
### (Defendant District of Columbia)

78.    The District of Columbia maintains a policy or practice of offering post and forfeit to

disorderly conduct arrestees, without offering citation release.

79.    The policy or practice described in the previous paragraph is implemented at times when

the department's officers have no expectation that criminal charges will be pressed

against the arrestee, including circumstances in which there is no probable cause that the

arrestee committed the offense of disorderly conduct (or any other offense).

80.    The District of Columbia fails adequately to train MPD officers regarding the proper use

of post and forfeit.  In particular, the District of Columbia fails adequately to train

officers that post and forfeit should not be used as a tool to keep arrestees incarcerated,

and the District of Columbia fails adequately to train officers about the circumstances

under which an arrestee should be released without having to post collateral. Likewise, the District of Columbia fails adequately to supervise police officers' resort to, and use of, post and forfeit.

81.    The lack of adequate training and supervision described in the previous paragraph leads police officers frequently to use post and forfeit as a form of punishment, in violation of arrestees' substantive due process rights.

82.    At the time of Mr. Ricks's arrest, the District of Columbia had actual or constructive knowledge that police officers were misusing post and forfeit in the ways alleged in this Complaint.

83.    Both the policy or practice and the failure to adequately train or supervise regarding post and forfeit reflect a deliberate indifference on the part of the government to the constitutional rights of arrestees.

84.    When Officer Barnes offered plaintiff the option of post and forfeit and failed to either make citation release available or simply release plaintiff, Officer Barnes was implementing the policy and practice described in paragraphs 46-48 and 78-79 of this Complaint.

85.    The failure of Officer Barnes to offer plaintiff citation release, or simply to release him, in lieu of post and forfeit was the result of the District of Columbia's lack of adequate training or supervision regarding the use of post and forfeit.

86.    The policy or practice of the District of Columbia, and its failure adequately to train or supervise its officers, caused plaintiff to be deprived of his rights under the Fifth Amendment to the Constitution of the United States to be free of punishment prior to trial, as made actionable by 42 U.S.C. § 1983.

13

87.    The relevant law was clearly established at the time the District of Columbia's policy or practice regarding post and forfeit, and failure to adequately train and supervise its officers regarding post and forfeit, caused injury to plaintiff's Fifth Amendment rights.

### VIII: Violation of Eighth Amendment Rights
### (Defendant the District of Columbia)

88.    The District of Columbia maintains a policy or practice of offering post and forfeit to disorderly conduct arrestees, without offering citation release.

89.    The policy or practice described in the previous paragraph is implemented at times when the department's officers have no expectation that criminal charges would be pressed against the arrestee, including circumstances in which there is no probable cause that the arrestee committed the offense of disorderly conduct (or any other offense).

90.    At the time of Mr. Ricks's arrest, the District of Columbia had actual or constructive knowledge that police officers were misusing post and forfeit in the ways alleged in this Complaint.

91.    When Officer Barnes offered plaintiff the option of post and forfeit and failed to either make citation release available or simply release plaintiff, Officer Barnes was implementing the policy and practice described in the previous paragraphs.

92.    The District of Columbia does not provide adequate training or supervision for its offers regarding the proper use of post and forfeit, citation release, or the simple release of individuals arrested for disorderly conduct.

93.    The lack of adequate training or supervision described in the previous paragraph leads police officers frequently to use post and forfeit when an arrestee would not be

14

prosecuted, in violation of those arrestees' Eighth Amendment rights to be free of excessive bail and fines.

94.    The failure of Officer Barnes to offer plaintiff citation release, or simply to release him, in lieu of post and forfeit was the result of the District of Columbia's lack of adequate training and supervision regarding the use of post and forfeit.

95.    The policy or practice of the District of Columbia, and its failure to adequately train or supervise its officers caused plaintiff to be deprived of his rights under the Eighth Amendment to the Constitution of the United States to be free of excessive bail and fines, as made actionable by 42 U.S.C. § 1983.

96.    Both the policy or practice and the failure to adequately train or supervise regarding post and forfeit reflect a deliberate indifference on the part of the government to the constitutional rights of arrestees.

97.    The relevant law was clearly established at the time the District of Columbia's policy or practice regarding post and forfeit, and failure to adequately train or supervise its officers regarding post and forfeit, caused injury to plaintiff's Eighth Amendment rights.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, plaintiff requests that the Court:

(a) ENTER JUDGMENT holding defendants liable to plaintiff for compensatory damages in an amount appropriate to the proof adduced at trial;

(b) ENTER JUDGMENT holding defendant Barnes liable to plaintiff for punitive damages in an amount appropriate to the proof adduced at trial;

(c) ENTER JUDGMENT imposing injunctive relief that (1) bars the District of Columbia from incarcerating arrestees who are eligible for citation release or post and

forfeit, but who lack the funds to post collateral, (2) requires the District of Columbia to

offer citation release, as well as post and forfeit, to arrestees who are eligible for both,

and (3) requires that the District of Columbia train and supervise police officers in the

proper use of citation release and post and forfeit;

> (c) AWARD to plaintiff his costs and reasonable attorneys' fees;

> (d) GRANT such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests that his claims be tried by a jury.

Respectfully submitted,

John Moustakas (DC Bar # 422076)
David Huitema (DC Bar # 475082)
Goodwin | Procter LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 346 – 4000
(202) 346 – 4444 (fax)

Arthur B. Spitzer (DC Bar #235960)
Frederick V. Mulhauser, (DC Bar # 455377)
American Civil Liberties Union of the
    National Capital Area
1400 20th St., NW, Suite 119
Washington, DC 20036
(202) 457-0800
(202) 452-1868 (fax)

Attorneys for Lafayette Ricks

16