UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAFAYETTE RICKS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MPD OFFICER TOMMY BARNES ) | Civil Action No.: 05-1756 HHK |
| ) | |
| *and* ) | |
| ) | |
| THE DISTRICT OF COLUMBIA ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS
PURSUANT TO FED. R. CIV. P. 54(d)**

Pursuant to Fed. R. Civ. P. 54(d) and 42 U.S.C. § 1988, Plaintiff Lafayette Ricks hereby

moves for an award of $84,002.50 in attorneys' fees and costs.  On February 13, 2006, the Court

entered judgment in favor of plaintiff against defendant the District of Columbia ("the District")

in the amount of $32,000, plus costs and attorneys' fees which had not yet been determined.

Accordingly, plaintiff's counsel have prepared the attached Memorandum with supporting

declarations and exhibits detailing the fees and costs incurred in this case.  Plaintiff has conferred

with the District regarding the fee award in this case, but the parties were not able to reach an

agreement.

Respectfully submitted,

_____/s/_____

John Moustakas (DC Bar # 422076)
David Huitema (DC Bar # 475082)
Goodwin | Procter LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 346-4000
(202) 346-4444 (fax)

Arthur B. Spitzer (DC Bar #235960)
Frederick V. Mulhauser, (DC Bar # 455377)
American Civil Liberties Union
   of the National Capital Area
1400 20th St., NW, Suite 119
Washington, DC 20036
(202) 457-0800
(202) 452-1868 (fax)

Attorneys for Lafayette Ricks

February 27, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| LAFAYETTE RICKS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MPD OFFICER TOMMY BARNES ) | Civil Action No.: 05-1756 HHK |
| ) | |
| *and* ) | |
| ) | |
| THE DISTRICT OF COLUMBIA ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS PURSUANT TO FED. R. CIV. P. 54(d)

On February 13, 2006, the Court entered judgment in favor of plaintiff Lafayette Ricks against defendant the District of Columbia ("the District") in the amount of $32,000, plus reasonable costs and attorneys' fees, which are available under 42 U.S.C. § 1988. The terms of the judgment in this civil rights case qualify as an absolute success for the plaintiff. Pursuant to Rule 54(d), plaintiff filed the attached motion seeking an award of $84,002.50 in fees and costs.[1] Mr. Ricks's motion for fees and costs should be granted in full because his case was a complete success, his lawyers' rates were reasonable, and the hours spent crafting and then pursuing his innovative claims were appropriate.

---

[1] This request covers fees and expenses incurred through February 24, 2006. Plaintiff reserves the right to request fees and costs incurred after that date.

**BACKGROUND**

This lawsuit relates to the defendants' unlawful arrest of Mr. Ricks, and to the improper

way in which defendants subsequently manipulated the "post and forfeit" procedure. The

allegations in the Complaint can be summarized succinctly: On September 4, 2004, Officer

Barnes arrested plaintiff Lafayette Ricks for the "offense" of declining to leave a public park in

which Mr. Ricks was peaceably eating lunch and reading the newspaper. See Complaint ¶¶ 8,

13-15, 21. Even though Mr. Ricks offered no resistance, Officer Barnes shoved him to the

ground and cut his wrist. See *id.* ¶¶ 22-23. Instead of simply releasing Mr. Ricks or making

"citation release" available to him once he was at the station, the police gave him the stark choice

of either paying $25 or spending a three day weekend in jail. See *id.* ¶¶ 29, 37. In offering the

$25 "post and forfeit" option, the police did not even believe they were giving Mr. Ricks a

meaningful choice. Indeed, they had offered "post and forfeit" as a taunt, believing that Mr.

Ricks (whom they first confirmed was homeless) would lack the necessary funds to obtain his

release. See *id.* ¶¶ 28-29.

On September 2, 2005, Mr. Ricks filed his Complaint. With respect to the means of his

arrest, he asserted claims of assault and battery, false arrest, intentional infliction of emotional

distress, and violation of Fourth Amendment rights against Officer Barnes. See *id.*, Counts I-IV,

¶¶ 54-67. With respect to the misuse of "post and forfeit", Mr. Ricks claimed that Officer

Barnes violated his Fifth and Eighth Amendment rights by imposing punishment prior to trial

and imposing excessive bail and an excessive fine. See *id.*, Counts V & VI, ¶¶ 68-73, 74-77.

Finally, Mr. Ricks asserted Fifth and Eighth Amendment claims against the District of Columbia

because the city knew or should have known that the Metropolitan Police Department engaged in

a pattern or practice of misusing the "post and forfeit" procedure in cases involving arrestees

who are believed to be indigent, and because the District of Columbia has failed to adequately train or supervise with regard to the proper use of "post and forfeit."  See *id.*, Counts VII-VIII, ¶¶ 78-97.  Mr. Ricks's damages were essentially the $25 "collateral" he paid, the time he spent in custody, the medical costs incurred treating his cut wrist, pain and suffering, and any emotional distress or punitive damages.

The District filed a motion to dismiss all of the claims relating to "post and forfeit" issues, but the Court denied that motion.  Less than two weeks later, the District served an Offer of Judgment for $32,000, plus attorneys fees and costs available under § 1988.  See Offer of Judgment (Exhibit A hereto).  Plaintiff timely accepted the Offer of Judgment, noting that it "permits the entry of judgment against defendant the District of Columbia in the amount of $32,000 in addition to costs and attorney's fees available under 42 U.S.C. § 1988," and making clear that "Plaintiff does not waive his entitlement to seek 'fees on fees' in connection with any efforts made to enforce his rights under § 1988."  See Notice that Offer of Judgment Is Accepted (Exhibit B hereto).  While plaintiff was attempting to initiate settlement of the attorneys' fees, the District (over the objection of plaintiff's counsel) filed its own Notice with the Court (Exhibit C hereto), seeking the entry of judgment.  Based on the District's Notice, the Court entered judgment for Mr. Ricks on February 13, 2006, triggering the deadline for seeking fees under Rule 54(d).[2]

---

[2]   Though plaintiff made repeated overtures toward settlement of fees, those efforts were effectively rebuffed. Even after the District filed the Notice with the Court, plaintiff asked the District to indicate its willingness to enter good faith negotiations by February 10, 2006, or plaintiff would assume that filing a petition with the Court was his only recourse for recovering the fees and costs to which he is entitled.  See Declaration of John Moustakas ¶ 12.  That final overture passed without any response from the District at all, and plaintiff was left with no option but to file this petition.

**ARGUMENT**

A plaintiff who succeeds in civil rights litigation is entitled to a fully compensatory legal fee pursuant to § 1988 that "encompass[es] all hours reasonably expended on the litigation." *Hensley* v. *Eckerhart,* 461 U.S. 424, 435 (1983). The fee award is not capped or in any way limited by the amount of the plaintiff's recovery. See *City of Riverside* v. *Rivera*, 477 U.S. 561, 574 (1986).[3] Indeed, in enacting § 1988, Congress has recognized that "if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must recover what it costs them to vindicate these rights in court." S. Rep. No. 94-1011, at 2 (1976). Thus, the measure of reasonable fees is not the plaintiff's recovery, but the number of hours reasonably expended in the case and the reasonable hourly rate for each attorney, law clerk, and paralegal. See *Blum* v. *Stenson*, 465 U.S. 886, 888 (1984); *Covington* v. *District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). Multiplying the number of hours by the hourly rate results in a "lodestar" amount that is considered a reasonable measure of the fee portion of litigation costs. See *Blanchard* v. *Bergeron*, 489 U.S. 87, 94-95 (1989). Because the hourly rates of his lawyers and the number of hours they spent on the case were reasonable, Mr. Ricks respectfully requests that his fee petition be paid in full.

**I.      Plaintiff's Requested Hourly Rates are Reasonable.**

The D.C. Circuit has adopted a three-factor analysis for determining reasonable hourly rates. The Court should consider "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107.

---

[3]    See also *Williams* v. *First Government Mortgage & Investors Corp.*, 225 F.3d 738 (D.C. Cir. 2000) (rejecting the notion that a fee award under the district's Consumer Protection Procedures Act must be proportional to the plaintiff's damages).

For attorneys in private practice, the first factor – the attorney's customary billing rate – is the most important. See, *e.g.*, *Save Our Cumberland Mountains, Inc.* v. *Hodel*, 857 F.2d 1516, 1521, 1524 (D.C. Cir. 1988) (en banc) ("*SOCM*").[4] The attached declaration from John D. Aldock, managing partner of Goodwin Procter's Washington, D.C. office, sets forth the customary billing rates for the lawyers, law clerks, and paralegals at Goodwin Procter who worked on this case. See Declaration of John D. Aldock ¶ 27 (Exhibit D hereto). Those are the billing rates that should be used in calculating the fees to which plaintiff is entitled for the Goodwin Procter attorneys' time. For the ACLU attorneys, who do not regularly bill clients for their time, fees are sought under the latest version of the *Laffey* Matrix, updated by Dr. Michael Kavanaugh and applied by this Court and other federal courts in several recent opinions. See *infra* at 7; see also Declaration of Arthur Spitzer ¶¶ 7 & 10 (Exhibit E hereto).

Second, the skill, experience, and reputation of Mr. Ricks's counsel merits their hourly rates. See *Blum*, 465 U.S. at 896 n.11; *SOCM*, 857 F.2d at 1524. The skill, experience, and reputation of plaintiff's attorneys are documented in the attached Declarations of Messrs. Aldock and Spitzer. The four attorneys who worked on this case – John Moustakas, David Huitema, Art Spitzer, and Fritz Mulhauser – are highly qualified attorneys with excellent reputations, whose requested billing rates appropriately reflect their respective legal experience in the District of Columbia legal marketplace for complex federal litigation. See Aldock Declaration ¶¶ 4-22; Spitzer Declaration at ¶¶ 3-4. The summer associates and paralegals who worked on this case also possess the skills and experience required to justify their billing rates. See Aldock

---

[4] See also *Kattan ex rel. Thomas* v. *District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) ("[A]n attorney's usual billing rate is presumptively the reasonable rate."); *Nat'l Ass'n of Concerned Veterans* v. *Sec'y of Def.*, 675 F. 2d 1319, 1326 (D.C. Cir. 1982) ("*NACV*") ("[T]he actual rate that applicant's counsel can command in the market is itself highly relevant proof of the prevailing community rate"). See, *e.g., Bolden* v. *J & R Inc.*, 135 F. Supp. 2d 177, 179-80 (D.D.C. 2001) (awarding Crowell & Moring its customary hourly rates for work done for paying clients).

Declaration ¶¶ 23-36; Spitzer Declaration ¶ 5.

Finally, counsel's rates are in line with the prevailing market rates in the Washington D.C. legal community. Attached to this memorandum are declarations prepared by three leading members of the D.C. Bar that were filed publicly last August in another civil rights case against the District. They show that Goodwin Procter's billing rates for attorneys, law clerks, and paralegals are either in line with or lower than the rates charged by comparable District of Columbia law firms for their attorneys at the same experience levels, as well as for their law clerks and paralegals. See Declaration of John Payton of Wilmer, Cutler, Pickering, Hale and Dorr LLP (Exhibit 1 to Aldock Declaration); Declaration of James J. Sandman of Arnold & Porter, LLP (Exhibit 2 to Aldock Declaration); and Declaration of Anthony Herman of Covington & Burling (Exhibit 3 to Aldock Declaration).

Moreover, the rates requested for plaintiff's Goodwin Procter attorneys are consistent with those reflected in recent surveys of the D.C. legal market. Exhibit 4 to the Declaration of John Aldock is a survey published by CourtEXPRESS that reflect the billing rates for attorneys of relevant experience levels from bankruptcy court fee applications by comparable firms in 2005 in the District of Columbia market.[5] The billing rates for the Goodwin Procter attorneys fall within the range shown in the CourtEXPRESS survey for each experience level. See Aldock Declaration at ¶ 32. Goodwin Procter competes with those firms to provide legal services in the District of Columbia market. In addition, Exhibit 5 to the Declaration of John Aldock is a national survey of billing rates of associates for 2005 published in the National Law Journal.[6]

---

[5] These surveys show the rates for timekeepers from Baker & McKenzie; LeBoeuf, Lamb, Greene & MacRae, LLP; Nixon Peabody LLP; Sidley Austin Brown & Wood LLP; Swidler Berlin Shereff Friedman LLP; Wiley Rein & Fielding; Winston & Strawn LLP; and Kirkpatrick & Lockhart Nicholson Graham LLP.

[6] The four Washington-area law firms whose rates are set forth in chart format are Dickstein, Shapiro, Morin & Oshinsky; Patton Boggs; Swidler Berlin; and Wiley Rein & Fielding.

The billed rates for Goodwin Procter's associates for 2005 are comparable to the rates for those firms which compete in the D.C. marketplace with Goodwin Procter. See Aldock Declaration at ¶ 33.

The rates requested for plaintiff's ACLU attorneys are based on recent updates to the *Laffey* Matrix made by Dr. Michael Kavanaugh, which have been accepted by this and other federal courts. The U.S. Attorney's Office for the District of Columbia has created a schedule of hourly rates for attorneys and paralegals of varying experience levels referred to as the *Laffey* Matrix. It is often applied to set the appropriate hourly rate for public-interest lawyers who do not otherwise have usual and customary billing rates. See, *e.g.*, *Covington*, 57 F.3d at 1109. The matrix has been updated by Dr. Michael Kavanaugh, a PhD economist, and recently this Court has specifically applied Dr. Kavanaugh's update of the *Laffey* Matrix, rather than the U.S. Attorney's Office version of the matrix, as the correct current measure of prevailing market rates in the market for complex federal litigation. See *Salazar* v. *District of Columbia*, 123 F. Supp. 2d 8, 14 (D.D.C. 2000) (Kessler, J.); *Muldrow* v. *Re-Direct, Inc.*, 397 F. Supp. 2d  1, 3 n.3 (D.D.C. 2005) (Huvelle, J.); *Brown* v. *Barnhart*, No. 02-1752, 2005 U.S. Dist. LEXIS 23212 at *2 (D.D.C. Oct. 12, 2005) (Sullivan, J.).[7]  Accordingly, the hourly rates for the ACLU attorneys and paralegal are calculated using Dr. Kavanaugh's updated version of the *Laffey* Matrix. See Spitzer Declaration ¶ 10.[8]

---

[7]   Other federal courts have accepted Dr. Kavanaugh's updated *Laffey* Matrix as well. See *ICO* v. *Honeywell Int'l*, 336 F. Supp. 2d 370, 387-88 (D.N.J. 2004); *N.C. Alliance for Transp. Reform* v. *U.S. Dept. of Transp.*, 168 F. Supp. 2d 569, 579-80 (M.D.N.C. 2001).

[8]   Dr. Kavanaugh's *Laffey* update is a superior measure of the appropriate billing rate for the ACLU lawyers because it is based on the legal services component of the Consumer Price Index, rather than the more generalized, over-inclusive "other goods and services" category in the Consumer Price Index. In *Salazar*, this Court concluded that this difference means that Dr. Kavanaugh's update of the *Laffey* Matrix "more accurately reflects the prevailing rates for legal services in the D.C. community" than the U.S. Attorney's Office matrix. 123 F. Supp. 2d at 15. A declaration from Dr. Kavanaugh is attached as exhibit 1 to the Declaration of Arthur

In sum, the Goodwin Procter lawyers should be paid their usual and customary billing rates and the ACLU lawyers should be paid the *Laffey* rates as updated by Dr. Kavanaugh.

## II.    The Number of Hours for Counsel Spent Vindicating Mr. Ricks's Civil Rights Was Reasonable.

All of the time and effort put into the case by Mr. Ricks's counsel played a significant role in achieving an extremely favorable result for Mr. Ricks. And that time was properly accounted for. Consistent with the mandate of *Hensley* v. *Eckerhart,* 461 U.S. 424 (1983), plaintiff's attorneys kept detailed, contemporaneous records of their time. See Moustakas Declaration ¶ 3 (Exhibit F hereto); Spitzer Declaration ¶ 8. The work on the case is captured in detailed invoices, which are attached hereto as Exhibit G. Here we summarize the efforts undertaken by counsel on Mr. Ricks's behalf and explain why they were necessary and how they contributed to the successful resolution of this case.

- Factual Investigation and Development: A total of approximately 39 hours were spent interviewing Mr. Ricks to learn the facts surrounding his illegal arrest, interviewing other witnesses, investigating the Metropolitan Police Department's use of the post-and-forfeit procedure, and investigating Officer Barnes's history of abusive behavior. For example, Mr. Ricks's legal team spoke with Mr. Fedison, who was one of the other homeless individuals run out of the park by Officer Barnes, and a woman involved with the clothing give-away that had drawn people to the park where Mr. Ricks was arrested. Records relating to Mr. Ricks's arrest and to complaints against Officer Barnes were requested from the Metropolitan Police Department and the Office of Citizen Complaint Review. To the extent possible, this work was carried out by a paralegal. This factual investigation was vital, both to ensure that Mr. Ricks had

Spitzer. It contains the updated *Laffey* Matrix as well as an explanation of the methodology Dr. Kavanaugh used to arrive at his updated rates.

a viable case, and to develop as much evidence supporting his claims as possible.  See

Declaration of John Moustakas at ¶ 6.

- Legal Research and Drafting Complaint:  Counsel spent approximately 113

hours researching creative and innovative legal theories and carefully drafting a complaint that

made those theories actionable.  While Officer Barnes's treatment of Mr. Ricks presented a

straightforward false arrest case, it was only after creative thinking and careful consideration that

plaintiff's counsel was able to articulate claims premised on the unconstitutional manipulation of

the post and forfeit rules as well.  Mr. Ricks believes he is the first person to successfully

challenge the use of post and forfeit as a violation of the Fifth and Eighth Amendments.

Including these post and forfeit claims made cookie-cutter pleading impossible, and much

original thought and work product was expended to craft the claims in a way that ensured they

would survive dismissal.  Mr. Ricks's Fifth and Eighth Amendment claims did indeed survive a

motion to dismiss, and judgment has now been entered for Mr. Ricks on those claims.  Including

the post and forfeit claims allowed Mr. Ricks to add the District as a defendant against which

*Monell* (municipal) liability could be asserted in good faith.  See *id.* at ¶¶ 7 & 8.

- Litigating Defendants' Untimely Filings:  Counsel spent approximately 12.5

hours responding to defendants' untimely motion for an extension of the deadline for filing an

answer.  If defendants had complied with the Rules of Civil Procedure and the local rules, no

responsive filings would have been required from plaintiff.  But, these hours were necessary to

set the record straight with regard to the chronology of events and to establish the District's

violation of the rules.  This, in turn, was important for the prophylactic purpose of expressing

unambiguously that Mr. Ricks expected the District to follow the rules and to litigate fairly and

reasonably and not in a manner designed to interpose delay and increase the costs of obtaining a

favorable result.  In short, this time was spent in the spirit of the old saw "an ounce of prevention is worth a pound of cure," and in the hope of nipping in the bud behavior that might have resulted in far greater fees over the course of the litigation if the District's obdurate practices were allowed to continue unchecked.  More to the point, the effort was successful: the Court's order on the motion for an extension of time noted that defense counsel had not abided by the local rules.  See *id.* at ¶¶ 9 & 10.

- <u>Opposing Motion to Dismiss</u>:  Counsel spent approximately 47 hours drafting a response to defendants' motion to dismiss.  Obviously, this work would not have been necessary had defendants not filed a motion to dismiss.  Plaintiff's opposition was successful; the Court denied the motion to dismiss in its entirety.  And subsequent events demonstrate the significance of that victory:  within ten days of the Court's order denying the motion to dismiss, defendants made an offer of judgment that plaintiff accepted.  See *id.* at ¶ 11.

- <u>Negotiating Fees and Preparing Fee Petition</u>:  Counsel spent approximately 67 hours first attempting to negotiate a fee award with the District and then preparing this fee petition.  If the District had been willing to engage in a good faith negotiation of fees in this case, most of this effort could have been avoided.  Plaintiff initiated such negotiations and provided an initial demand along with a preliminary review of the time spent on the case by category, and plaintiff expressed a willingness to provide more detailed billing information if the District would then reciprocate with a good faith offer.  Those overtures were met with canceled settlement discussions and unanswered letters and phone calls.  When the District unilaterally filed the Notice that the offer of judgment had been accepted, over plaintiff's objection that the parties should exhaust the possibilities of negotiation before "starting the clock" for filing a fee petition, plaintiff sent one more letter to opposing counsel to evaluate the potential for a

negotiated settlement before beginning the major work involved with preparing this fee petition. The District never responded to that communication.  See *id.* at ¶¶ 12 & 13.

The District's Offer of Judgment acknowledges that § 1988 governs the fee award in this case, and the Notice of Acceptance stated that "Plaintiff does not waive his entitlement to seek 'fees on fees' in connection with any efforts made to enforce his rights under § 1988."  See Exhibits A & B.  That simply restates a well-established rule that successful civil rights plaintiffs are entitled under § 1988 to compensation for the time spent litigating the fee award itself.   See *Noxell Corp.* v. *Firehouse No. 1 Bar-B-Que Restaurant*, 771 F.2d 521, 528 (D.C. Cir. 1985) ("hours reasonably devoted to a request for fees are compensable").  The D.C. Circuit has explained why compensation of "fees on fees" is warranted: "for fee-shifting provisions to serve their purposes . . . their beneficiaries must be assured that they will be able to collect the fee awards that they are due."  *Bd. of Trs. of the Hotel & Rest. Employees Local 25* v. *JPR, Inc.*, 136 F.3d 794, 808 (D.C. Cir. 1998).

While this section describes the time which plaintiff's legal team devoted to the case, it is important to note that plaintiff's counsel has reduced the number of hours for which recovery is sought in an exercise of billing judgment.  As a matter of routine practice, attorneys and staff exercise direct billing discretion and refrain from reporting all of their work time.  See Moustakas Declaration ¶ 4.  Apart from those routine daily reductions, plaintiff has made further reductions of 38.5 hours, representing a total of $9,729.50 in fees that plaintiff's counsel will "write off."  See *id.*; see also Exhibit G

After exercising this billing judgment, plaintiff seeks compensation for fees in the amount of $83,216.  The breakdown among the law firms involved is as follows:

Goodwin Procter:                $71,899.50

ACLU:                    $11,316.50

Total:                   $83,216.00

See Exhibit G.

**III.    Plaintiff's Costs Are Reasonable.**

Plaintiff seeks compensation for reasonable expenses incurred by the law firm of

Goodwin Procter in the amount of $786.50.  These costs all relate to the filing and service of the

Complaint.[9]  See Exhibit G.  Mr. Ricks is entitled to recover his reasonable costs of this

litigation.

## <u>CONCLUSION</u>

For the reasons set forth above, plaintiff respectfully requests that this Court award him

reasonable attorneys' fees in the amount of $83,216, and reasonable costs in the amount of

$786.50.[10]

                                        Respectfully submitted,

                                        _____/s/_____
                                        John Moustakas (DC Bar # 422076)
                                        David Huitema (DC Bar # 475082)
                                        Goodwin | Procter LLP
                                        901 New York Avenue, NW
                                        Washington, DC 20001
                                        (202) 346-4000
                                        (202) 346-4444 (fax)

                                        Arthur B. Spitzer (DC Bar #235960)
                                        Frederick V. Mulhauser, (DC Bar # 455377)
                                        American Civil Liberties Union

---

[9]    Goodwin Procter has also incurred costs for office expenses such as copying, printing, faxing, and LEXIS and Westlaw research that are compensable under § 1988.  Because of the vagaries of the firm's billing system for cases designated as *pro bono*, these costs are not broken out on a case-by-case basis.  Thus, it would be difficult to generate a report of those costs.  Plaintiff is not seeking compensation for those items in this case, further reducing the District's burden.

[10]   Because the District has failed to engage in any meaningful discussion with Mr. Ricks concerning fees, it is impossible to know what, if any, objections it will make to his fee petition  Accordingly, plaintiff reserves the right to address any argument made by the District in his Reply.

of the National Capital Area
1400 20th St., NW, Suite 119
Washington, DC 20036
(202) 457-0800
(202) 452-1868 (fax)

Attorneys for Lafayette Ricks

February 27, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| LAFAYETTE RICKS ) | |
| ) | |
|      Plaintiff, ) | |
| ) | |
|    v. ) | |
| ) | |
| MPD OFFICER TOMMY BARNES ) | Civil Action No.: 05-1756 HHK |
| ) | |
| *and* ) | |
| ) | |
| THE DISTRICT OF COLUMBIA ) | |
| ) | |
|      Defendants. ) | |
| _____ ) | |

**<u>ORDER</u>**

Upon consideration of the Plaintiff's Motion for Attorneys' Fees and Costs and Memorandum of Law, along with all related papers, it is hereby ORDERED:

1. That Plaintiff's Motion is GRANTED;

2. Reasonable attorneys' fees in the sum of $83,216, along with ordinary costs in the amount of $786.50, are taxed as part of the costs of this matter pursuant to 42 U.S.C. § 1988 in favor of the plaintiff and against the defendant the District of Columbia.

3. The Clerk shall prepare and enter judgment as set forth in this Order.

So ORDERED this ___ day of _____, 2006.

_____
Henry H. Kennedy, Jr.
United States District Judge