# EXHIBIT E

*To*

Plaintiff's Memorandum in Support of Motion for Award of Attorneys' Fees and Costs

*Ricks v. Barnes, et al.*, No. 05-1756 HHK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAFAYETTE RICKS )
  )
       Plaintiff, )
  )
v. ) Civil Action No.: 05-1756 HHK
  )
TOMMY BARNES, *et al.*, )
  )
       Defendants. )
  )

### DECLARATION OF ARTHUR B. SPITZER

I, Arthur B. Spitzer, hereby declare as follows:

#### Background of Declarant

1. I am the Legal Director of the American Civil Liberties Union of the National Capital Area (ACLU-NCA), which is the local affiliate of the American Civil Liberties Union, a nationwide, nonprofit organization with more than half a million members, which was founded in 1920 to protect and defend the civil liberties and civil rights of Americans.

2. I am personally familiar with the education, training, experience and billing practices of the ACLU attorneys and paralegals who have represented plaintiff Lafayette Ricks in this action.

#### Qualifications of ACLU Attorneys & Staff

*Arthur Spitzer*

3. I have been employed as the Legal Director of the American Civil Liberties Union of the National Capital Area since April 1980. Prior to that, I was an associate at Wilmer, Cutler & Pickering (now Wilmer Cutler Pickering Hale and Dorr LLP) from 1976 to 1980, and before that I served as law clerk to then-United States District Judge (now United States Circuit Judge) Walter K. Stapleton. I graduated from the Yale Law School in 1974, and I have been an active member of the bar of this Court and of the District of Columbia since 1976. As Legal Director of the ACLU-NCA, I have been involved in hundreds of lawsuits dealing with the constitutional and statutory rights of individuals vis-à-vis the government, most of which have been litigated in this Court.

*Fritz Mulhauser*

4. Fritz Mulhauser graduated from the Georgetown University Law Center in June 2001 and immediately became a Staff Attorney at the American Civil Liberties Union of the National Capital Area, having been a volunteer here for the previous seven years, after his retirement from a senior position at the General Accounting Office (now the Government Accountability Office). Since June 2001 (as a lawyer) and before 2001 (as a law student) he has worked on numerous ACLU-NCA cases, with a concentration on cases involving police misconduct.

*Jessica Langley*

5. Jessica Langley graduated from the University of California at Santa Cruz in June 2004 and began employment as a paralegal at the American Civil Liberties Union of the National Capital Area in July of that year. A large part of her work involves pre-litigation investigation of potential ACLU-NCA cases, which is the role she played in this case.

**The ACLU's Representation of Mr. Ricks Served the Public Interest, and Use of the Billing Rates in Dr. Kavanaugh's Version of the Laffey Matrix is Reasonable**

6. The ACLU-NCA intends its work to serve the public interest. In particular, we regularly undertake to handle police misconduct cases that the private bar would not accept because the clients are unable to afford hourly rates and the dollar value of the injury is not sufficient to make a contingent fee economically feasible. In our view, it is important that such cases be brought not only to vindicate the rights of the particular individuals involved but also in order to make local police departments aware that they cannot engage in with impunity in misconduct that does not result in serious physical or economic injury. We agreed to represent Mr. Ricks in this case for these reasons.

7. As a matter of longstanding organizational policy, the ACLU and its local affiliates never bill clients for the time spent on their cases by ACLU employees or volunteers.

8. Although we do not bill our clients for our time, ACLU-NCA attorneys and staff do contemporaneously record the time we spend, and the nature of our activities, on cases as to which a fee-shifting statute may ultimately make possible the recovery of attorneys' fees from opposing parties. Consistent with that general practice, Fritz Mulhauser, Jessica Langley, and I regularly recorded the time spent on Mr. Ricks's representation. The billing records for myself, Fritz Mulhauser, and Jessica Langley that are attached to plaintiff's fee petition as Exhibit G reflect our regular, contemporaneous recordation of time in this case. Of course all fees received by ACLU staff are paid in full to the ACLU-NCA treasury and no employee or volunteer directly benefits from such fees.

9. In the past, when ACLU-NCA attorneys have been entitled to fees pursuant to a "fee shifting" statute such as 42 U.S.C. § 1988, we have sought fees based upon the hourly rates set out in the *Laffey* Matrix created by the U.S. Attorney's Office for the District of

Columbia. Recently, federal courts in the District of Columbia and elsewhere have adopted a version of the *Laffey* matrix updated by Dr. Michael Kavanaugh, a Ph.D. economist. A copy of a declaration from Dr. Kavanaugh containing that fee matrix is attached as Exhibit 1 hereto. That declaration originally was filed in another recent case in this Court. As Judge Kessler found in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), Dr. Kavanaugh's matrix is a better measure of reasonable hourly rates for legal services than the U.S. Attorney's Office matrix, because Dr. Kavanaugh's matrix uses the legal services component of the Consumer Price Index as an input, while the U.S. Attorney's Office matrix uses a broader, over-inclusive category of "other goods and services" from the Consumer Price Index. *Id.* at 15. Accordingly, we are using Dr. Kavanaugh's version of the *Laffey* Matrix in our fee calculation for this case.

10. Because of our limited resources, the ACLU-NCA frequently partners with law firms to carry out litigation, as we have done with Goodwin Procter in this case. We have received fee awards or fee settlements from the District of Columbia under § 1988 in a number of such cases over the last few years. To calculate those fees, we have consistently used a version of the *Laffey* matrix for calculating the value of the ACLU-NCA attorneys' time, while the law firms with which we work have used their actual hourly rates. The District of Columbia has not objected to this approach to calculating fees.

I hereby declare, under penalty of perjury, that the foregoing is true and accurate.

Executed on February 24, 2006.

Arthur B. Spitzer
American Civil Liberties Union
  of the National Capital Area
1400 20th St., NW, Suite 119
Washington, DC 20036-5920
(202) 457-0800

# SPITZER DECLARATION

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOSEPH S. HEARD, )
)
        Plaintiff, )
)
v. ) No. 1:02CV00296 (CKK)
)
DISTRICT OF COLUMBIA )
GOVERNMENT, ET AL., )
)
        Defendants. )
)

## DECLARATION OF MICHAEL KAVANAUGH

I, Michael Kavanaugh, Ph.D., do hereby affirm and state:

1. My name is Michael Kavanaugh. I am an economist in private practice at 160 Wood Street, Batavia, Ohio 45103.

2. I hold a Ph.D. in economics from the University of Cincinnati (1975) and a BA in economics from Xavier University (1970). I have taught economics at the University of Cincinnati and at Northern Kentucky University. For 30 years I have worked as an economist for a variety of clients including the U.S. Department of Justice, the U.S. Environmental Protection Agency, the U.S. Department of the Interior, the States of Ohio, California, and Alaska, citizen groups and private parties. I have been qualified as an expert in Federal court in financial and economic matters twelve times. A copy of my *curriculum vitae* is attached as Attachment 1.

3. I submitted an affidavit updating the *Laffey* matrix in Oscar Salazar *et al.*, v. The District of Columbia *et al.*, Civil Action No. 93-452 (GK) before Judge Kessler. The decision, which uses the update I prepared, is reported at 123 F. Supp. 2d 8 (D.D.C. 2000).

4. I have been asked by plaintiff's counsel to update the *Laffey* matrix of rates for 2001 to the present.

5. The *Laffey* matrix is used in applying the lodestar method to determine fee awards. The lodestar method multiplies the number of hours reasonably expended on litigation by attorneys of differing levels of experience and their paralegals by hourly rates for each labor category. The *Laffey* matrix provides the rates by labor category by year.

1

6. The matrix of rates by labor category by year is called the *Laffey* matrix because the District Court for the District of Columbia accepted it in 1982 in *Laffey v. Northwest Airlines, Inc.* Subsequently in 1989 the matrix was updated with new rates in connection with *Save Our Cumberland Mountains v. Hodel.* I understand that an updated *Laffey* matrix has been used for over twenty years as one measure for determining appropriate fee awards.

7. As part of my work in *Salazar*, I reviewed the matrix used by the U.S. Attorney. The method I use and describe in this affidavit produces a matrix that differs from the matrix used by the U.S. Attorney. There are two reasons for this. First, I use an index specific to legal services; the U.S. attorney uses the entire Consumer Price Index (CPI) for Metro DC. The Metro DC CPI has items in it that are not relevant to the market for legal services and these other items are given much more weight than legal services. Second, the method of the U.S. Attorney applies its more general index to 1982 observations of rates; the method I use applies the specific legal services index to 1989 observations of rates. In general, the more contemporary the observation, the less possibility exists for forecasting error.

8. I used the following method to update the *Laffey* matrix. First, I obtained monthly data for the legal service component of the CPI maintained by the Bureau of Labor Statistics of the U.S. Department of Labor. Second, I applied the legal services component of the CPI to the 1989 *Laffey* matrix rates for each labor category to produce an hourly rate for each labor category for each year.[1] The results for 2001 to 2005 are in the table below. The matrix for 1989 to 2005 is in Attachment 2.

| Years of experience | 2001-02 | 2002-03 | 2003-04 | 2004-05 | 2005-06 |
|---|---|---|---|---|---|
| Atty. 20 to + | 496 | 519 | 545 | 572 | 594 |
| Atty. 11 to 19 | 412 | 430 | 452 | 475 | 494 |
| Atty. 8 to 10 | 361 | 377 | 396 | 416 | 432 |
| Atty. 4 to 7 | 250 | 261 | 274 | 288 | 299 |
| Atty. 1 to 3 | 203 | 212 | 223 | 235 | 244 |
| Paralegal Law Clerk | 111 | 116 | 122 | 128 | 133 |

9. Economists use as specific an index as possible to determine changes in prices in an industry, such as here where I determine changes in the prices of legal services in the District of Columbia. Accordingly, components of the CPI are the better tool to use to update an industry's prices rather then the entire CPI. This is because there are two

---

[1] Starting with 1989, the legal services CPI for September of each year was divided by the legal services CPI from the previous September. This results in an adjustment factor. The rates from the preceding year are multiplied by the adjustment factor to get the next year's rates. This process is repeated and a chain of estimates result with each year's estimate linked to the prior year's estimate by the change in the price index. This is a common and appropriate use of index numbers.

2

strong forces exerting pressure on prices over time. One is inflation, a rise in the general price level; the other is a supply and demand imbalance. Often for a specific good or service, supply and demand imbalances are the stronger of the two and can accentuate or negate inflation. If a broad index is used to adjust an industry's prices over time, then the specific supply and demand effects are suppressed and only the effect of inflation is captured. On the other hand when a specific index is used the net effect of both inflation and supply and demand imbalances is captured. Accordingly, to measure price changes in an industry it is far preferable to use a specific index rather than a broad index.

10. The legal services index is a national index that includes the metropolitan Washington D.C., area. Adjusting the *Laffey* matrix with a national index assumes that the rate of change of prices for legal services is about the same everywhere. I note this is not the same thing as prices being the same everywhere. Even if prices differ in different places, the rate of change of prices is likely to be about the same. Resource mobility and easy long-distance communications make this a plausible assumption. While it is possible for prices for the same good or service to change at different rates in different places, this is more likely to happen for goods and services for which there is only a local market because their transport is expensive relative to their value or because communication is difficult. For goods and services that are easily transported or communicated, resource mobility and arbitrage will attenuate price change differences.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on October 31, 2005.

*Michael Kavanaugh*

Attachment 1

MICHAEL KAVANAUGH
160 Wood St.
Batavia, OH 45103-2923
Voice/Fax (513) 732-3939
E-mail M.kavanaugh@att.net

PRESENT POSITION: Private practice, since 1985

PREVIOUS POSITIONS
    Senior Economist/Project Manager, ICF Incorporated, 1983-85,
        Washington DC
    Research Director, Public Interest Economics Foundation, 1976-83
        Washington DC & San Francisco CA
    Assistant Professor, Northern Kentucky University, 1975-76

EDUCATION
    Ph.D., Economics, University of Cincinnati, 1975
    BA, Economics, Xavier University, 1970

EXPERIENCE
Dr. Kavanaugh is:
- an independent research economist with over twenty-five years of experience;
- a national expert in environmental enforcement and policies for municipal and industrial pollution sources;
- experienced in natural resource damage assessment and regional economic impact assessment; and,
- an author of groundwater management and climate change papers.

Short descriptions of selected projects follow.

ECONOMICS & FINANCE
    Applied economics to many of the environmental changes of the last twenty-five years including:
- estimating the benefits of cleaner beaches and rivers;
- developing methods to determine the effects of water quality policies on agricultural output, employment, and income;
- developing methods to estimate the benefits of preserving groundwater quality;
- estimating expected and realized benefits and costs of irrigation projects; and
- critiquing efforts to regulate effluents from several industries.

Examples include:

*Exxon Valdez* - Estimated the employment and income effects from spending the civil settlement. The work involved characterizing the options in the restoration plan in terms of input/output models.

*Ohio River* - valued public resource damages from spills from tugs and barges. The work combined results from the Natural Resources Damage Assessment models for Great Lake environments, studies of the costs of reducing risks to drinking water, and restoration costs.

Kailua Beach State Park – valued a three-mile public beach based on recreational use and estimated the damage to the beach from wastewater treatment plant effluent. The work involved reviewing, updating and synthesizing a variety of studies that valued recreation.

Florida Beaches – valued beach closures from pollution at several beaches. The work involved extensive use of the Natural Resource Damage Assessment models for coastal and marine environments.

Provided expert economic and litigation support services to the United States (and others) in Clean Water Act, Clean Air Act, Superfund, Resource Conservation and Recovery Act Enforcement Cases.

Designed and used financial after-tax, cash-flow models to:
- estimate the benefit gained by entities that violate their discharge permits;
- measure the effect of penalties on their financial position; and,
- estimate the residential burden for controlling overflows from combined and separated sewers.

Advised environmental groups on the use of contingent valuation to value natural resource damages and commented on the Federal Register Notice on the use of contingent valuation to determine damages.

Testified about the influence of groundwater quality on residential property values.

Design team member to size and fund the CERCLA Superfund and the WVA acid mine drainage reclamation fund.

Testified about the change in rates needed to pay for adopting cooling water intake controls at a nuclear power plant.

Testified to the benefits North Miami received from a landfill and on the economics of operating a landfill (Orange County, NY).

Conducted several analyses of the U.S. petroleum industry: to estimate current and future production in wetlands and in the arctic; and, to estimate the cost effectiveness of technologies to control produced water discharges.

Estimated current and future greenhouse gas emissions by fuel, sector, and region. The work involved estimating long-term energy use using an economic model based on prices and income and forecasting combustion technology. Atmospheric modelers use the work.

Advised and submitted affidavits supporting Alaska's position on oil and gas leasing in the North Aleutian Basin.

PUBLICATIONS

"Fuel economies available from ultrahigh bypass jet engines" in *Cost estimates of measures available to reduce U.S. greenhouse gas emissions by 2010.* ICF Washington D.C. 1990.

"End-use efficiency and NOx emissions in aviation". In S. Meyers, Ed. *Energy efficiency and structural change: Implications for the Greenhouse problem.* Lawrence Berkeley Laboratory, Berkeley CA 1988.

Estimates of future CO, N2O and NOx emissions from energy combustion, *Atmospheric Environment*, March 1987.

Tropospheric CH4/CO/NOx: The next 50 years. Co-author with Anne M. Thompson. UNEP/USEPA International Ozone Conference, 1986.

Eliminating CFCs from aerosol uses: the U.S. experience and its applicability to other nations. U.S. Environmental Protection Agency, Washington, February 1986.

The 1983 world oil surplus: some implications for OCS leasing. Prepared for the U.S. House Subcommittee on the Panama Canal/OCS Washington, April 1983.

The effect of OCS leasing schedules and procedures on fair market value. Paper presented to the Western Economic Association, Seattle July 1983.

Efficient strategies for preserving groundwater quality, with Rob Wolcott. U.S. Environmental Protection Agency, May 1982.

Exclusive territorial distributorships and consumer welfare: the case of beer. Food Marketing Institute, Washington D.C. 1982.

*The Great Giveaway*, with others, Sierra Club, October 1982.

The public benefits of the proposed Union Pacific, Missouri Pacific, Western Pacific Consolidation. Interstate Commerce Commission, August 1981

Regional economic impacts of OCS oil and gas development. with Susan Little and Rob Wolcott. Governor's Office of Planning and Research, California, November 1976.

MICHAEL KAVANAUGH

Federal Court Trial Testimony Since 1/91

NRDC v. Texaco - Wilmington - 2/91, 88-263-JRR
U.S. v. City of San Diego - San Diego - 2/91, 88-1101-B(IEG)
SCLDF v. City/County of Honolulu - Honolulu - 1/93, 90-00218-HMF
Friends of Earth v Laidlaw - Columbia SC - 11/93, DSC 3-92-1697-17
PIRG v. MEI - Newark - 1/94, DNJ 89-3193
Friends of Earth v Laidlaw - Columbia SC - 7/95, DSC 3-92-1697-17
Friends of Earth v. Gaston Recycling 7/95, DSC 3-92-2574-0
PIRG v. Hercules - Camden NJ - 2/97, DNJ 89-2291
U.S. v. Rapanos et al. - Detroit MI - 10/2000, 94-CV-70788DT
PIRG v. Rahway - Rahway NJ - 4/2001, UNN-L-163-98


Deposition Testimony since 1/91

U.S. v. San Diego 1/91, 2/91, 88-1101-B(IEG)
SCLDF v. C&C Honolulu (Sand Island) 2/91, 90-00219 ACK
U.S. v. Louisiana Pacific & Simpson Paper 4/91, C-87-0567-MHP
PIRG v. Hercules 7/91, DNJ 89-2291
U.S. v. Corning 9/91, 3:CV-90-207

NRDC v. Total Petroleum 5/92
PIRG v. Witco Chem. 5/92, DNJ 89-3146
Hawaii's Thousand Friends v. C&C Honolulu (Honouliuli) 6/92, 90-00218-HMF
PIRG v. Circuit Foil 12/92, DNJ 89-5371

Arkansas Wildlife Fed. v. Hudson Food 5/93
U.S. v. Lawrence Cty. 5/93, C-1-91-302
PIRG v. Essex Cty. 6/93, DNJ 92-4465

TN. Enviro. Council v. Dana 4/94, 1-92-0074
Friends of the Earth v. Gaston Recycling 1/95, DSC 3-92-2574-0
Stevens v. McGinnis, Inc., et al. 2/95, C-1-93-442
Save Our Beaches v. C&C Honolulu (Kaneohe/Kailua) 3/95, 92-00263 DAE
City of Independence, Mo. v. Amoco 8/96
California Sportfishing Alliance v. El Dorado 8/96, CV-S-95-699
SF Baykeeper v. Dow Chemical Co., 9/98, C97-01988
American Canoe Association v. Green Valley-Greenwood PSD, City of St. Albans and Dunbar PSD, WVA. 10/98, 97-0949
Interfaith Community Organization v. Shinn et al, 2/00, 93-4774, 94-3434, 94-3793
U.S. v. Rapanos et al, 9/00, 94-CV-70788DT
American Littoral Society V. Rahway Valley Sewerage Authority 10/00, UNN-L-163-98
American Canoe Association v. WASA, 4/02, 1:99cv02798(HHK)
Sierra Club et al v. Hamilton County, 4/03 1-02-107

Attachment 2
Updated Laffey Matrix

| From to | 9/30/89 | 9/30/89 9/30/90 | 9/30/90 9/30/91 | 9/30/91 9/30/92 | 9/30/92 9/30/93 | 9/30/93 9/30/94 | 9/30/94 9/30/95 | 9/30/95 9/30/96 | 9/30/96 9/30/97 | 9/30/97 9/30/98 | 9/30/98 9/30/99 | 9/30/99 9/30/00 | 9/30/00 9/1/01 | 9/1/01 9/30/02 | 9/30/02 9/30/03 | 9/30/03 9/30/04 | 9/30/04 9/30/05 | 9/30/05 9/30/06 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Years from Law School | | | | | | | | | | | | | | | | | | |
| 20+ | 265 | 284 | 304 | 321 | 334 | 351 | 359 | 373 | 387 | 407 | 422 | 443 | 468 | 496 | 519 | 545 | 572 | 594 |
| 11 to 19 | 220 | 235 | 252 | 267 | 277 | 292 | 298 | 310 | 321 | 338 | 351 | 368 | 388 | 412 | 430 | 452 | 475 | 494 |
| 8 to 10 | 195 | 209 | 224 | 237 | 246 | 259 | 264 | 274 | 284 | 295 | 307 | 322 | 340 | 361 | 377 | 396 | 416 | 432 |
| 4 to 7 | 135 | 144 | 155 | 164 | 170 | 179 | 183 | 190 | 197 | 205 | 212 | 223 | 235 | 250 | 261 | 274 | 288 | 299 |
| 1 to 3 | 110 | 118 | 126 | 133 | 139 | 146 | 149 | 155 | 160 | 167 | 173 | 182 | 192 | 203 | 212 | 223 | 235 | 244 |
| para. | 60 | 64 | 69 | 73 | 76 | 80 | 81 | 84 | 88 | 91 | 94 | 99 | 105 | 111 | 116 | 122 | 128 | 133 |
| Adj. Factor | | 1.0700 | 1.0715 | 1.0579 | 1.0388 | 1.0527 | 1.0208 | 1.0395 | 1.0367 | 1.0518 | 1.0384 | 1.0497 | 1.0551 | 1.0611 | 1.0448 | 1.0509 | 1.0502 | 1.0388 |

Adj. Factor is the September to September lagged change in the Legal Services component of the Consumer Price Index produced by the Bureau of Labor Statistic of the U.S. Department of Labor