# EXHIBIT F

*To*

**Plaintiff's Memorandum in Support of Motion for Award of Attorneys' Fees and Costs**

*Ricks v. Barnes, et al.*, No. 05-1756 HHK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAFAYETTE RICKS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MPD OFFICER TOMMY BARNES ) | Civil Action No.: 05-1756 HHK |
| ) | |
| and ) | |
| ) | |
| THE DISTRICT OF COLUMBIA ) | |
| ) | |
| Defendants. ) | |

### DECLARATION OF JOHN MOUSTAKAS

I, John Moustakas, hereby declare as follows:

**Background of Declarant**

1. I am a partner at the law firm Goodwin Procter LLP, and the lead counsel at Goodwin Procter for the plaintiff in this case. In addition to my own work on this case, I have supervised the work of David P. Huitema, an associate who took the laboring oar on this case.

**Hours for Which Compensation Is Sought and Timekeeping Practices**

2. Goodwin Procter is seeking compensation for a total of 205 hours of time expended on this case. Plaintiff is seeking compensation at Goodwin Procter's standard hourly rates. The total fee request for Goodwin Procter attorneys and staff is $71,899.50.

3. Goodwin Procter timekeepers contemporaneously recorded their time at work and the nature of their activities on this case. Detailed, contemporaneous billing documentation reflecting the time spent by each attorney, law clerk, and paralegal for each task for which we are now seeking fees are presented in Exhibit G to Plaintiff's Motion for an Award of Fees and Costs.

4. The number of hours for which plaintiff seeks compensation is lower than the true number of hours spent on this case by Goodwin Procter attorneys and staff. Attorneys and staff routinely refrain from recording a portion of their work time in a direct exercise of billing discretion. Moreover, I have exercised billing discretion to "write off" some of

the time that was recorded by Goodwin Procter attorneys and staff. The value of that time, at our firm's standard billing rates, is $9,729.50.

### Expenses for Which Reimbursement Is Sought

5. In addition to his attorneys' fees, plaintiff seeks reimbursement for $786.50 in necessary costs and expenses. A detailed listing of those costs and expenses is included in Exhibit G to Plaintiff's Motion for an Award of Fees and Costs. The expenses for which plaintiff is seeking reimbursement in this case are limited to the cost of filing the lawsuit and serving the Complaint on the District of Columbia and Officer Barnes.

### Overview of Legal Services Provided by Plaintiff's Legal Team at Goodwin Procter and the ACLU

6. Approximately 39 hours were spent investigating and developing the facts relevant to Mr. Ricks's claims. Plaintiff's legal team interviewed Mr. Ricks as well as witnesses such as Mr. Fedison and a minister's wife who presided over a clothing give-away at Dunbar Park immediately before Mr. Ricks was arrested. We requested records relating to Mr. Ricks's arrest and complaints against Officer Barnes from the Metropolitan Police Department and the Office of Citizen Review. Over half of this work was carried out by Ms. Langley, a paralegal with the ACLU. This factual investigation was important for at least two reasons. First, it ensured that Mr. Ricks's legal claims were well-founded and viable. Second, it developed evidence before too much time had passed after Mr. Ricks's illegal arrest.

7. Mr. Ricks's legal team spent approximately 113 hours researching and carefully crafting the novel complaint in this case. Though Officer Barnes's treatment of Mr. Ricks presented an egregious, but straightforward, false arrest case, we recognized an undercurrent of something more in Mr. Ricks's case. Generally aware of abuse of the post-and-forfeit procedures (whereby police can intentionally make illegitimate arrests without fear of detection) and the failure of police to offer citation release as an alternative, we concluded that the particular abuse of post-and-forfeit in Mr. Ricks's case evinced a particular animus towards the homeless that made this offense far more egregious. To litigate just a garden variety false arrest case in these circumstances would be to ignore the essence of this offense. But articulating the harm we perceived was no simple matter. It required research into numerous disparate areas and precluded the reliance on cookie-cutter allegations and pleading. It required completely novel and creative thinking, coupled with legal rigor. I am unaware of any other challenge to the use of post-and-forfeit involving the type of Fifth and Eighth Amendment claims Mr. Ricks pressed in this case. It took great care to draft those claims in the complaint in a way that ensured they would survive a motion to dismiss (which they did).

8. Only by including the post-and-forfeit claims was Mr. Ricks able in good faith to add the District of Columbia as a defendant against which municipal liability could be asserted. These claims were particularly apt in light of the evidence that the District has routinely failed to grapple with abuses in the post-and-forfeit system and also failed to train and supervise with regard to the proper implementation of post-and-forfeit. I believe that the

difficulty of these claims for the District played a significant role in inducing a quick and reasonable offer of judgment.

9. Mr. Ricks's legal team spent approximately 12.5 responding to the defendants' request for an extension of time in which they could answer the complaint. Defendants' request was untimely, and it misrepresented the efforts (or lack thereof) by the Office of the Attorney General to obtain plaintiff's consent before filing their request. If defendants had complied with the Rules of Civil Procedure, no response would have been called for. But plaintiff's legal team felt an obligation to set the record straight. Moreover, it was important as a prophylactic matter to send a clear signal to defendants that Mr. Ricks was prepared to litigate fairly and reasonably, but that he would not stand for dilatory and unprofessional tactics that increase the cost and aggravation of litigation. Responding to the District's affirmatively misleading motion was also intended to make clear that the District is not entitled to special treatment or to be excused from complying with rules and practices faithfully followed by ordinary litigants.

10. Plaintiff's response to the request for an extension was a success. In its order on the request for an extension, the Court chided defense counsel for not abiding by the local rules.

11. Plaintiff's legal team spent approximately 47 hours drafting an opposition to defendants' motion to dismiss. This time was necessary to fully research the case law related to plaintiff's Fifth and Eighth Amendment claims, and to carefully describe how the novel, creative challenges to the use of post-and-forfeit in this case were supported by existing legal doctrine. Plaintiff's opposition was successful; the Court denied the motion to dismiss in its entirety. And I note that within ten days of that order, the District made its offer of judgment.

12. Counsel spent approximately 67 hours attempting to negotiate a fee award with the District and then preparing this fee petition. In the spirit of the Supreme Court's admonition that a dispute over fees under § 1988 not become "a second major litigation," Goodwin Procter initiated negotiations with the District regarding fees. During the month of January, Goodwin Procter provided an initial demand along with a preliminary review of the time spent on the case, sent multiple letters, and placed multiple phone calls to the Office of the Attorney General. We also expressed a willingness to provide more detailed billing information if the District would then reciprocate with an offer for an appropriate fee award. Instead, the District refused to schedule a settlement conference and left many of our phone calls and correspondence unanswered. When the District indicated its intention to file a Notice that the offer of judgment had been accepted, we requested that they wait until the possibilities of negotiation had been exhausted. Ignoring that request, the District filed with the Court, "starting the clock" for filing a fee petition. We then sent one more letter to the Office of the Attorney General on February 6, 2006, once again opening the door for good-faith negotiations before we began the major work involved with preparing this fee petition. The District never responded to that communication.

13. If the District had been willing to negotiate the fees in this case, none of the additional work on the fee petition would have been necessary. Having been forced to prepare a fee petition because the District would not engage in such negotiations, the time spent was reasonable. It was necessary to conduct modest legal research, compile the billing records for both Goodwin Procter and the ACLU, review the bills for the purpose of exercising billing discretion, and draft the memorandum in support of the fee petition and the accompanying declarations. In order to keep the cost in check, we "borrowed" declarations and supporting materials from other recent fee petitions whenever possible.

I hereby declare, under penalty of perjury, that the foregoing is true and accurate.

Executed on February 27, 2006.

*[signature]*

John Moustakas
Goodwin Procter LLP
901 New York Ave., N.W.
Washington, D.C. 20001
Tel.: (202) 346-4000