UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

LAFAYETTE RICKS                          )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )
                                         )        Civil Action No.: 05-1756
MPD OFFICER TOMMY BARNES                 )        HHK/DAR
DISTRICT OF COLUMBIA                     )
                                         )
                    Defendants.          )
_____  )

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR AN
EXTENSION OF TIME FOR RESPONDING TO FEE PETITION**

# EXHIBIT 1

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAFAYETTE RICKS<br><br>   Plaintiff,<br><br>  v.<br><br>MPD OFFICER TOMMY BARNES<br>DISTRICT OF COLUMBIA<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.: 05-1756<br>) HHK/DAR<br>)<br>)<br>)<br>) |

## DECLARATION OF DAVID P. HUITEMA

David P. Huitema declares as follows:

  1.  I am an attorney at the law firm of Goodwin Procter, with offices at 901 New York Avenue, NW, Washington DC 20001.  I am one of the attorneys representing the plaintiff, Lafayette Ricks, in this matter.  The facts set forth in this declaration are based on my personal knowledge, and if called as a witness in this matter, I could and would testify to their truth.

  2.  After serving the District of Columbia ("the District") with notice that plaintiff would accept the District's Offer of Judgment, I contacted Ms. Urenthea McQuinn in the Office of the Attorney General ("OAG") to initiate negotiation of a fee award.  Ms. McQuinn insisted that I put a fee demand in writing for the District to consider before any substantive conversations on a settlement could ensue.

  3.  In response to Ms. McQuinn's request, I sent OAG a letter on January 17, 2006 that set out our initial estimates of the amount of time spent on the various tasks and functions involved in representing Mr. Ricks in this case.  The letter also included a settlement demand that was lower than the total value of fees incurred at that point.  A true and correct copy of the January 17, 2006 letter is attached as exhibit A.

1

4.    After I sent the January 17, 2006 letter, Ms. McQuinn told me she would arrange for a conference call that included her superiors at the OAG to discuss the fee award in this case. Ms. McQuinn reneged on that commitment, and did not even let me know until after we were to have had the conference call. Only at that point, in response to multiple voice mail messages that I had left for her, did Ms. McQuinn leave a message for me. In that voice mail, Ms. McQuinn simply rejected plaintiff's fee demand; the District made no counter-proposal, offered no substantive critique, and did not invite further discussion.

5.    Ms. McQuinn also e-mailed a short letter to me at 7:20 P.M. on Friday, January 27, 2006 that documented the District's rejection of plaintiff's fee demand, requested that we furnish a detailed billing statement, and requested that we file a notice with the Court by February 1 indicating that the offer of judgment had been accepted. A true and correct copy of the January 27, 2006 letter is attached as Exhibit B.

6.    In response to the Friday evening letter, I called Ms. McQuinn on Tuesday morning, January 31 and left a voice mail message for her. I indicated that we would begin to organize our billing records for the matter. I also noted that, while we had complied with the District's request and sent a letter with our demand on January 17, the District still had not engaged in a discussion concerning the fee award. I indicated that we would not file a Notice of Acceptance with the Court at that time, because we preferred to exhaust the possibility of settlement before beginning to work on a fee petition. Finally, I requested that Ms. McQuinn call me back to discuss these matters. Later that day, I followed up on the voice mail with a lengthy letter making the same points. A true and correct copy of the January 31, 2006 letter is attached as Exhibit C.

2

7.     Ms. McQuinn did not return my January 31 phone call.  Instead, the District simply went ahead and unilaterally filed a notice with the Court on February 1, despite the knowledge that plaintiff objected to that course of action.

8.     Sixteen minutes before receiving electronic notification of the District's filing, I received an e-mailed letter from Ms. McQuinn.  Although the letter was dated January 31 and indicates that it was written the same day as my voice mail message, the letter was not sent to me until 7:32 P.M. on February 1.  The letter purports to give advance warning that "Defendant intends to file notice to the court of the acceptance of the Offer of Judgment shortly," but as noted, the court filing itself occurred only sixteen minutes later.  A true and correct copy of the letter dated January 31, 2006 (and sent to plaintiff's counsel the following day) is attached as Exhibit D.

9.     Even after the District went against our expressed wishes and unilaterally filed the notice that the Offer of Judgment had been accepted, plaintiff's counsel reached out one more time in an effort to see whether the District was actually willing to engage in a good faith discussion of the fee award for this case.  Mr. Moustakas, a colleague at Goodwin Procter who also is involved in this case, sent Ms. McQuinn a letter on February 6, 2006.  In that letter, we noted that "Mr. Ricks accepted the District's Offer of Judgment, among other reasons, to avoid the inconvenience and disruptions associated with protracted litigation," and that "we are not looking to invite on the backend the very delays we settled the case to avoid in the first place." Therefore, we indicated that "we need to know how quickly the District will respond with an offer if we provide [our] billing information, and we also need to better understand the District's current thinking about what a reasonable fee award would be in this case."  We further indicated that if the District responded to those two questions promptly, "we are prepared to agree to a

modest, one-time extension that would result in avoiding litigation over fees." Finally, we noted

that, if we did not hear back from the District, "we [would] have no choice but to turn

immediately to preparing our Fee Petition.   And if we do, we will expect the District's response

to be promptly filed thereafter." A true and correct copy of the February 6, 2006 letter is

attached as Exhibit E.

10.     The District never responded to our February 6, 2006 letter.  Nor did the District

attempt to meet and confer after we filed plaintiff's fee petition.  In fact, we did not hear from the

OAG again until the belated request for an extension for their opposition.  Despite our overtures,

the District has *never* engaged in a substantive discussion of the fee award for this case.

11.     The day before the deadline for responding to plaintiff's fee petition, I received an

e-mail message from Ms. McQuinn that asked:  "May we have your consent to our motion to

respond to your fee petition by March 29, 2006?"  The message offered no explanation for why

an extension was needed.  A true and correct copy of this March 9, 2006 e-mail message is

attached hereto as Exhibit F.

12.     I promptly responded by e-mail, asking that Ms. McQuinn call me so that we

could discuss why the District needed an extension.   When Ms. McQuinn called me later that

afternoon, I noted that we had put the District on notice in our February 6, 2006 letter that if we

could not agree to put off *all* briefing related to the fee petition to allow for further negotiation,

then we would file our motion for fees on time, and we would expect the District's response to

be filed promptly as well.  Therefore, I told Ms. McQuinn that we would consent to an extension

if there were a legitimate reason why the District had not been able to prepare a response by the

deadline, but that we could not consent to an extension with no good-faith rationale.  Ms.

McQuinn explained that the reasons the District wanted an extension were that she would be out

of the office for a number of days later in March, and that plaintiff's fee petition was long. I

asked Ms. McQuinn if she could offer any more detail, and she declined. Ms. McQuinn could

not explain what was complicated or difficult about our fee petition that would require additional

time for a thoughtful response. In fact, it was not at all clear that the District had even begun to

consider its response to plaintiff's fee petition. Nor did Ms. McQuinn indicate that conflicts or

time commitments prevented the OAG from addressing the fee petition in the eleven days after it

was filed. Because Ms. McQuinn could not offer any detail at all as to why the District had not

been able to address our fee petition by March 10, I did not consent to the District's request for

an extension.

13.    On Thursday, March 16, 2006 Ms. McQuinn called again to advise me that she

planned to file a motion asking the Court to reconsider its order denying the District's request for

an extension, and she wanted to meet and confer prior to filing that motion. I asked whether she

could offer any additional reasons why the District had been unable to respond to the fee petition

prior to the March 10 deadline, but she could not. The only new detail that she added was that

the reason she would be out of the office later in March was to attend to health concerns. I

indicated that plaintiff would probably not oppose the *length* of the extension that the District

requested, but that Ms. McQuinn's explanation did not address the District's failure to respond to

the fee petition or meet and confer in a meaningful way prior to March 10. I asked Ms.

McQuinn if the District now was willing to meet and confer on the substance of plaintiff's fee

request. I noted that if we could negotiate a fee award, then the District would not have to

respond to the fee petition at all. Ms. McQuinn acknowledged that point, but was not prepared to

negotiate or to discuss the substantive aspects of plaintiff's fee petition. Therefore, because the

District still had no reason for needing an extension, and because the District did not attempt to

narrow the issues in dispute between the parties, I indicated that plaintiff would still oppose the

District's request for additional time.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on March 24, 2006.

David P. Huitema

# HUITEMA DECLARATION

# EXHIBIT A

GOODWIN | PROCTER

David P. Huitema
202.346.4129
dhuitema@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
901 New York Avenue, N.W.
Washington, D.C. 20001
T: 202.346.4000
F: 202.346.4444

January 17, 2006

**By Facsimile & Regular Mail**

Ms. Urenthea McQuinn
Assistant Attorney General
441 Fourth Street, NW, 6th floor south
Washington, DC 20001

   Re: *Ricks v. Barnes & District of Columbia*, No. 05-1756 (D.D.C. 2005)

Dear Ms. McQuinn:

   I am following up on our phone conversation last Friday with regard to Mr. Ricks's fees and costs. The District made an Offer of Judgment that acknowledged Mr. Ricks's entitlement to fees and costs under 42 U.S.C. § 1988, and Mr. Ricks has accepted that offer. In order to avoid the waste of time and expense litigating a fee petition, I hope that we can include an agreed-upon amount for fees and costs when requesting a judgment from the court.

   Attorneys and paralegals from Goodwin Procter and the ACLU spent a total of 239 hours working on the *Ricks* case prior to the District's Offer of Judgment. This time can be put into four basic categories:

   &bull; **Factual Investigation and Development:** Approximately 41 hours were spent initiating our representation of Mr. Ricks, interviewing him to learn the facts surrounding his illegal arrest, interviewing other witnesses, investigating the Metropolitan Police Department's use of the post-and-forfeit procedure, and investigating Officer Barnes's history of abusive behavior.

   &bull; **Legal Research and Drafting Complaint:** Counsel spent approximately 137 hours researching legal theories relating to the use of post-and-forfeit and carefully drafting the complaint.

   &bull; **Litigating Defendants' Untimely Filings:** Counsel spent approximately 13 hours responding to defendants' untimely motion for an extension of the deadline for filing an answer.

GOODWIN | PROCTER

Ms. Urenthea McQuinn
January 17, 2006
Page 2

• **Opposing Motion to Dismiss:** Responding to defendants' motion to dismiss took approximately 46 hours of counsel's time.

All of these efforts were important for achieving a successful resolution of Mr. Ricks's claims, and they were carried out as efficiently as possible. The factual investigation was essential, both to ensure that Mr. Ricks had a viable case and to develop the evidence supporting his claims. To the extent possible, this work was carried out by a paralegal. A great deal of legal research and analysis was required to expand the scope of Mr. Ricks's false arrest case and add the District as a defendant by pressing a challenge to the use of post-and-forfeit. The fifth and eighth amendment claims we developed were novel, and they had to be drafted very carefully to ensure that they stated a claim without calling into question the constitutionality of post-and-forfeit in every circumstance. Plaintiff's motions practice was limited—we only responded to defendants' filings, and we achieved positive results in each instance. The Court's order on the motion for an extension of time noted that defense counsel had not abided by the local rules, and we were able to overcome the motion to dismiss.

The total fees for these efforts amount to $67,976. In addition, Goodwin Procter and the ACLU have incurred approximately $400 in costs. We would be willing to reduce that figure by 10% and accept $61,538 to resolve Mr. Ricks's claim for fees and costs.

We make this proposal in the interest of reaching a quick agreement, but if the District is unwilling to make a prompt and adequate offer, we will ask the clerk to enter judgment and proceed with our fee petition. Litigating a fee petition would, in all likelihood, result in a larger award than a negotiated resolution. Mr. Ricks may be able to recover the costs incurred pursuing the fee award, and we are confident that the court would find our petition to be reasonable.

Sincerely,

David P. Huitema

# HUITEMA DECLARATION

# EXHIBIT B

### GOVERNMENT OF THE DISTRICT OF COLUMBIA
#### Office of the Attorney General

**Civil Litigation Division**
**General Litigation, Section II**



January 25, 2006

[Sent via E mail:
dhuitema@goodwinprocter.com]

David P. Huitema
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001

Re: *Ricks v. District of Columbia, et al.,* 05-1756

Dear Mr. Huitema:

In response to your correspondence of January 17, 2006, in which plaintiffs seek $61,538.00 in attorney's fees,

defendants request a copy of your itemized bill of costs for this litigation. We are willing to discuss fees further if

you will provide this information.   In addition, please file plaintiff's acceptance of the Offer of Judgment by next

Wednesday, February 1, 2006.

Sincerely,

Robert J. Spagnoletti
Attorney General for the District of Columbia

By:  Urenthea McQuinn
     Assistant Attorney General, D.C.

# HUITEMA DECLARATION

# EXHIBIT C

GOODWIN | PROCTER

David P. Huitema
202.346.4129
dhuitema@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
901 New York Avenue, N.W.
Washington, D.C. 20001
T: 202.346.4000
F: 202.346.4444

January 31, 2006

**By Facsimile**

Ms. Urenthea McQuinn
Assistant Attorney General
441 Fourth Street, NW, 6th floor south
Washington, DC 20001

Re: *Ricks v. Barnes & District of Columbia*, No. 05-1756 (D.D.C. 2005)

Dear Ms. McQuinn:

I left a voice mail message for you this morning, and I am writing to further clarify our current position with regard to fees and costs in the *Ricks* case.

At your request, I sent you a letter on January 17, 2006 in which I explained that our total fees and costs were approximately $68,376 and that we would accept $61,538. I further documented the number of hours spent on different aspects of the case—factual investigation, legal research and drafting the complaint, litigating the District's untimely request for an extension of time to answer the complaint, and opposing the motion to dismiss. I called your office on Friday, January 20 and Monday, January 23 in an attempt to follow-up on my letter. On Tuesday, January 24, you returned my calls and indicated that you would set up a conference call that someone else at the Attorney General's office would also join on either Thursday, January 26 or Friday, January 27. Having not heard back from you regarding the proposed conference call, I left you a voice mail message on Friday, January 27. You returned my call and also faxed a short letter later on Friday.

In your phone communication, you indicated that the District would not agree to pay $61,538 in fees and costs, but you did not make an alternative offer or explain what the District believed to be unreasonable about our demand. In your letter, you requested that we furnish a detailed billing statement and that we file the Offer of Judgment and Mr. Ricks's Acceptance by this Wednesday, February 1.

If we are convinced that the District is serious about trying to reach agreement on our reasonable fees and costs, then we would be willing to provide a detailed billing statement. We will immediately begin to prepare such a statement, but it will take some time. We also will file

GOODWIN | PROCTER

Ms. Urenthea McQuinn
January 31, 2006
Page 2

the Offer and Acceptance of Judgment when we either have an agreement with the District on
fees or conclude that such an agreement is unlikely.  Once the court enters a judgment in the
case, we will immediately have to turn to finalizing a fee petition.  The entire purpose of
attempting to reach agreement with the District was to avoid the waste of time and resources that
comes from litigating a fee petition.  The courts have long admonished that parties should
resolve fee awards consensually, and that fee disputes "should not result in a second major
litigation." *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (quoting
*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).  We note that if the District will not agree to a
reasonable fee award, we will attempt to recover the costs of litigating such an award from the
court.

Thus, the next step is to have the conference call that you said you would arrange last
week.  We need to have a substantive discussion.  If we are convinced that the District is
negotiating in good faith, and that a review of our detailed billing records is necessary to reach a
final agreement on our fees, then we will provide that information.  And if we are convinced
instead that the District is either stalling or unwilling to consent to a reasonable fee award, then
we will file for a judgment with the court and file a fee petition.

Please contact me so that we can arrange a more substantive discussion of our fees and
costs as soon as possible.

Sincerely,

David P. Huitema

# HUITEMA DECLARATION

# EXHIBIT D

# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## Office of the Attorney General

**Civil Litigation Division**
**General Litigation, Section II**



January 31, 2006

[Sent via E mail & the U.S. mail]

David P. Huitema
Goodwin Procter, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001

Re: *Ricks v. District of Columbia, et al.,* 05-1756

Dear Mr. Huitema:

I am responding to your voice mail message to me earlier today. You stated that you will forward plaintiff's bill of costs for this case, but that it might take some time to do so. You understand, of course, that the only way the defendant can assess whether or not your requested fees and costs of $68, 376.00 are reasonable is for us to see the breakdown of those items. The defendant's initial assessment is that this fee is too high given the early resolution of this case at the complaint stage. The defendant must know must know the number of hours spent on the items listed and the hourly rate applied. Also, please delineate whether or not paralegals or office secretarial staff worked on particular items.    Include the hourly rate applied for each person. Also, please provide the resume of the attorneys who worked on the items listed, and the hourly rate applied for each.

Defendant intends to file notice to the court of the acceptance of the Offer of Judgment shortly as plaintiff accepted the Offer of Judgment on December 15, 2005. The court can then take any upcoming deadlines off of its hearings calendar.

I look forward to receiving plaintiff's bill of costs and a speedy resolution of this matter. Thank you for your attention to this.

Sincerely,

Robert J. Spagnoletti
Attorney General for the District of Columbia

/s/

By: Urenthea McQuinn
      Assistant Attorney General, D.C.

# HUITEMA DECLARATION

# EXHIBIT E

GOODWIN | PROCTER

John Moustakas
202.346.4236
jmoustakas@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
901 New York Avenue, N.W.
Washington, D.C. 20001
T: 202.346.4000
F: 202.346.4444

February 6, 2006

Urenthea McQuinn
Assistant Attorney General
for the District of Columbia
441 4th Street, N.W.
Washington, D.C. 20001

Re:     *Ricks v. District of Columbia, et al.*

Dear Ms. McQuinn:

It was with both surprise and disappointment that I received electronic notification of the District's *Notice to the Court of Plaintiff's Acceptance of Defendant's Offer of Judgment* ("*Notice of Acceptance*") last Thursday.  Because it ordinarily results in a prompt entry of judgment that triggers the 14-day deadline for filing a fee petition under Fed. R. Civ. P. 54(d), we informed you orally and in writing that we did not want the *Notice of Acceptance* filed until the parties had some time to discuss settlement – just as the courts have admonished us to do. Ignoring a simple request aimed at facilitating compromise is not only evidence of the District's tin ear, but reconfirms the District's mystifying penchant for unnecessary conflict.

Since extensions of time are routinely granted to permit the parties to negotiate over fees, little was gained by filing the *Notice of Acceptance*.  But something significant was lost.  Insisting on unilaterally imposing its will, the District telegraphs that the likelihood of *any* compromise – however small – is not great.  If the District cannot even be persuaded to respect Mr. Ricks' wishes where to do so would cost it nothing, how can he have faith in the District to make the kind of compromises that really matter?

That is the nub of the problem I have previously identified in this case and have repeatedly seen in litigating against the District of Columbia.  The District routinely cuts off its nose to spite its face.  Thus, to win some petty (and fleeting) debater's point – like proving it could frustrate our effort to delay the entry of judgment – the District poisons the chance for the kind of goodwill and trust that is essential reaching compromise.  Antagonism may occasionally be a by-product of litigation, but it should never be the goal.  Yet that is the way it often seems when litigating against the District.  As a lawyer for the District, your behavior matters.  It largely dictates how the District will be regarded in this and future cases.  In neither case does it augur well for the prospects of compromise.

GOODWIN | PROCTER

Urenthea McQuinn
February 6, 2006
Page 2

You may have disagreed (perhaps even legitimately) with our desire to delay the entry of judgment and, more importantly, the filing of a fee petition. We don't know because you refused to talk about it before acting. And when you refuse to subject your opposing views to the give-and-take of a full and fair discussion, only two conclusions can be drawn – both of them bad. Either it betrays acknowledgment that your views cannot withstand probing scrutiny or it conveys disrespect and contempt.

Here, the case is worse still because you attempted to create a paper record inconsistent with the true state of affairs. Thus, you sent a backdated letter purporting to notify counsel of your intent to file the *Notice of Acceptance* a day before the filing when, in fact, the letter was sent less than 15 minutes before the very *Notice* it purported to warn of was, itself, publicly filed. Sending it well after the close of business, you doubly insured that even in the short time it took you to get your *Notice of Acceptance* on file, Mr. Ricks would have no meaningful opportunity to respond. Since giving us notice of your *intent to file* only minutes before you *actually filed* could not have been intended to give meaningful notice, its inclusion in your backdated letter seems deceptive. And in so doing it harkens back to similar conduct earlier in this case.

Your conduct has forced our hand. We must either begin preparing a fee petition with the knowledge that its expense will be yours to bear or we must file a motion to extend the time in which to file a fee petition, work also chargeable to the District. See, *e.g.*, *Noxell Corp.* v. *Firehouse No. 1 Bar-B-Que Restaurant*, 771 F.2d 521, 528 (D.C. Cir. 1985). We are interested in a prompt resolution of this matter, not unending delay. After all, Mr. Ricks accepted the District's Offer of Judgment, among other reasons, to avoid the inconvenience and disruptions associated with protracted litigation. Therefore, we are not looking to invite on the backend the very delays we settled the case to avoid in the first place. Thus, we are only inclined to seek an extension aimed at giving time for fee negotiation if the District intends to act in good faith and not merely to create further delay.

We have already provided a breakdown of the amount of time spent on each phase of the litigation to date, and as previously indicated, we are pulling together our billing records in this matter. To get a sense of whether any compromise is possible, we need to know how quickly the District will respond with an offer if we provide that billing information, and we also need to better understand the District's current thinking about what a reasonable fee award would be in

GOODWIN | PROCTER

Urenthea McQuinn
February 6, 2006
Page 3

this case. (That you do not yet have our time records will not be an acceptable excuse for failure to do either of these things since you know what we have done and how much time was spent by category.) If you can provide that information by this Friday, February 10, we are prepared to agree to a modest, one-time extension that would result in avoiding litigation over fees. Otherwise, we will have no choice but to turn immediately to preparing our fee petition. And if we do, we will expect the District's response to be promptly filed thereafter.

Sincerely,

John Moustakas

cc:    Arthur B. Spitzer

# HUITEMA DECLARATION

# EXHIBIT F

## Huitema, David P

**From:** McQuinn, Urenthea (OAG) [urenthea.mcquinn@dc.gov]
**Sent:** Thursday, March 09, 2006 12:04 PM
**To:** Huitema, David P
**Subject:** Ricks, Lafayette v. DC, 05-1756

May we have your consent to our motion to respond to your fee petition by March 29, 2006?

URENTHEA McQUINN
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6646

*Confidentiality Notice*
This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.