IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAFAYETTE RICKS,<br>          Plaintiff,<br><br>          v.<br><br>DISTRICT OF COLUMBIA, and<br>MPD OFFICER TOMMY BARNES,<br>          Defendants. | Civil Action No. 05-1756<br>HHK/DAR |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS

Pursuant to Fed. R. Civ. P. 6(b), defendants District of Columbia and D.C. Metropolitan Police Officer Tommy Barnes hereby file this Opposition to Plaintiff's Motion for an Award of Attorney's Fees and Costs Pursuant to Fed. R. Civ. P. 54(d) and 42 U.S.C. §1988. Please see the accompanying Memorandum of Points and Authorities in support of this motion, and proposed Order (**Attachment 1**).

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

     /s/
NICOLE L. LYNCH [D.C. Bar #471953]
Chief, General Litigation, Section II

     /s/
URENTHEA McQUINN [D.C. Bar #182253]
Assistant Attorney General
441 4th Street, N.W.

Sixth Floor South
Washington, D.C.  20001
(202) 724-6646
(202) 727-0431 (Fax)
urenthea.mcquinn@dc.gov

March 29, 2006

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LAFAYETTE RICKS,**<br>　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**DISTRICT OF COLUMBIA, and<br>MPD OFFICER TOMMY BARNES,**<br>　　　　**Defendants.** | Civil Action No. 05-1756 HHK |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN AWARD
OF ATTORNEY'S FEES AND COSTS**

Plaintiff filed a Motion for an Award of Attorney's Fees and Costs Pursuant to Fed. R. Civ. P. 54(d) and 42 U.S.C. § 1988. Defendant opposes that motion because (1) plaintiff's counsel have not substantiated that they are entitled to the hourly rates sought, and (2) plaintiff's counsel have not justified the high number of hours expended on this case, in which they did little more than file the Complaint on September 2, 2005, a Notice that the Offer of Judgment had been accepted on December 15, 2005, the Motion for Attorney's Fees on February 27, 2006, and engage in a limited number of telephone calls and correspondence. As such, plaintiff's attorney's fees of $84,002.50 are unreasonable. Consequently, defendants request that plaintiff's motion be denied in part. See the accompanying Memorandum of Points and Authorities in support of this Opposition and defendants' proposed Order.

*Background Facts*

This case arises out of an incident that allegedly occurred on September 4, 2004, (Complaint, ¶8.), while plaintiff was in a District of Columbia park and told to leave by the

3

District of Columbia Metropolitan Police. (Complaint, ¶13.) According to plaintiff's allegations, after his refusal to leave the park when instructed by Metropolitan Police Officer Tommy Barnes, Officer Barnes placed him under arrest. (Complaint, ¶21.) Plaintiff admits that Officer Barnes told him that he could pay $25.00 to "post and forfeit collateral," which plaintiff did. As such, plaintiff was not held in jail. (Complaint, ¶¶29 & 30.) Plaintiff's complaint alleged false arrest, assault and battery and violation of 42 U.S.C. §1983.

### *Legal Framework*

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. §1988 provides as follows:

> In any action or proceeding to enforce a provision of section 1981, 1982, 1983, 1985, and 1986 of this title ... the court in its discretion may allow the prevailing party.... a reasonable attorney's fee as part of the costs.

Thus, the plaintiff first must be a "prevailing party" to recover an attorney's fee under § *1988*. *Hensley v. Eckerhart,* 461 U.S. 424 (1983). To qualify as a prevailing party, a civil rights plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought. *Farrar v. Hubby,* 506 U.S. 163, 111 (1992). Once a party is deemed to have prevailed, the court's task is to calculate a reasonable award. In calculating such an award, the "lodestar," or the number of hours reasonably expended is determined, then multiplied by a reasonable hourly rate. *See Blum v. Stenson,* 465 U.S. 886, 888 (1984); *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C. Cir. 1980); *Clark v. Marsh,* 609 F. Supp. 1028, 1031 (D.D.C. 1985). A reasonable fee is one that is "adequate to attract competent counsel, but which does not produce windfalls to attorneys." See *Blum, supra.,* at 893-94, (quoting S. Rep. No. 1011, p.6 (1976)); *see also Farrar v. Hobby, supra.*, at 113-15.

While the court is expressly empowered to exercise its discretion in determining the amount of the fee award, the plaintiff still bears the burden of establishing all requisite elements of the claimed fee award, including entitlement to an award, the documentation of appropriate hours and justification of the reasonableness of their rates. *See 42* U.S.C. § 1988(b), *Blum, supra.*, at 896 n. 11; *Hensley, supra.,* at 437. *In Hensley,* the Supreme Court made it clear that the party seeking to collect attorney's fees bears the burden of proof as to the reasonableness of the claimed amount stating: "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, *supra.*, at 433. Thus, the fee movant bears the burden of establishing the hours claimed and submitting adequate evidence to support this claim. *Id.; see also Covington v. District of Columbia, 57* F.3d 1101, 1107 (D.C. Cir. 1995). Accordingly, the burden of production, as well as the burden of persuasion, related to the reasonableness of the amount of hours billed always rests upon the claimant. See *American Petroleum Institute v. EPA,* 72 F.3d 907, 915 (D.C. Cir. 1996); *Covington, supra.,* at 1109.

Additionally, as articulated by the Court in *Hensley,* counsel for a prevailing party must demonstrate that they have exercised "billing judgment:"

> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." *** Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a request hours that are excessive, redundant or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, "billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

5

*Hensley*, *supra*., at 434, quoting *Copeland v. Marshall, supra*., at 891, (*en banc*). Attorneys who have exercised billing judgment must specifically identify any hours that were excluded from a fee petition and indicate the tasks to which those hours were devoted. *Cook v. Block,* 608 F. Supp. 1036, 1041 (D.D.C. 1985).

*Argument*

I. **ALTHOUGH THE ITEMS LISTED BY PLAINTIFFS FALL WITHIN THE LEGAL DEFINITION OF RECOVERABLE ATTORNEYS FEES, THE HOURLY RATE AND THE NUMBER OF HOURS LISTED BY PLAINTIFFS ARE NOT REASONABLE**

**Method of Calculating Attorneys' Fees**

The basis of a fee award is the lodestar, the number of hours reasonably expended multiplied by the applicable hourly market rate for legal services. *Hensley v. Eckerhart*, *supra*., at 434. Reasonable fees are "calculated according to the prevailing market rates in the relevant community" and the applicant must "produce satisfactory evidence -- in addition to the attorney's own affidavit -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *In re Meese*, 907 F.2d 1192 (D.C. Cir. 1990). "The §1988 fee applicant bears the burden of establishing the reasonableness of the hourly rates requested. Specifically, the applicant must produce specific evidence of the "prevailing market rates in the relevant community" for the type of work for which he seeks an award. *Blum v. Stenson*, *supra*., at 895-96 & n.11 (1984); *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1325 (D.C. Cir. 1982). The prevailing market rate may be established through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market. *National Association of*

6

*Concerned Veterans*, 675 F.2d at 1325-26; *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983)."
*Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987).

    **A.    Plaintiff's Counsel Have Not Applied a Reasonable Hourly Rate.**

Plaintiff's have failed to justify their counsel's hourly rate of $475.00 for Mr. Moustakas and $365.00 per hour for Mr. Huitema.[1] Plaintiff's counsel should be held to the United States Attorney's Office *Laffey* Matrix, which is attached hereto (**Attachment 2**). The *Laffey* hourly rate for attorneys with 1-3 years' experience in an area of law for the years 2005 through 2006 is $195.00 per hour. Mr. Moustakas and Mr. Huitema should be held to this hourly rate.

Plaintiff presents an updated *Laffey* matrix in Exhibit E, Attachments 1 and 2 of their fee petition. The reasonable rate is determined by reference to the marketplace. *Missouri v. Jenkins*, *id.*, at 285 (1989).[2] Reasonable fees are "calculated according to the prevailing market rates in the relevant community" and the applicant must "produce satisfactory evidence -- in addition to the attorney's own affidavit -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *In re Donovan,* 877 F.2d 990, at 992, & n.19 (quoting *Blum v. Stenson*, *supra*., at 895, 896 n.11; see also *In re Olson,* 884 F. 2d 1422, at 1423. *In re Meese*, 907 F.2d 1192 (D.C. Cir. 1990).

Although an attorney's customary billing rate is the usual starting point for calculating fees, it is not conclusive. *Kelley v. Metro County Brd of Educ*., 773 F. 2d 677, 683 (6th Cir. 1985), (*en banc*), *cert. denied*, 474 U.S. 1083 (1986). Some courts base an award on an hourly rate even lower than the attorney's usual rate where the attorney is litigating outside of his usual field of practice, as here. *In re Meese*, supra., at 1192). Plaintiff's counsel should be held to the United States

---

[1] The hourly rates of the attorney's were increased during the less than one year pendency of this case.
[2] Hirsh, Alan & Sheehey, Diane, Awarding Attorneys' Fees and Managing Fee Litigation, pg. 25 (Federal Judicial Center, 2nd Ed. 2005).

Attorney's Office *Laffey* Matrix, which is attached hereto. The *Laffey* hourly rate for attorneys with 1-3 years' experience in an area of law for the years 2005 through 2006 is $195.00 per hour. Mr. Moustakas and Mr. Huitema should be held to this hourly rate.

### 1. This Area of Law Is Outside of Plaintiff's Counsel's Usual Field of Practice and Therefore Does Not Justify Their High Hourly Rate

In determining an appropriate hourly rate, courts reviewing a § 1988 fee petition utilize a "market rate" analysis. Reasonable fees under § 1988 are to be calculated according to the prevailing market rate in the relevant community. *Blum v. Stenson,* supra., at 895. Thus, prevailing parties must offer evidence to demonstrate "their attorney's experience, skill, reputation and the complexity of the case" and "must produce data concerning the prevailing market rate in the relevant community for attorneys of reasonably comparably skill, experience and reputation." *Covington v. District of Columbia, supra.*, at 1108 (D.C. Cir. 1995).

In *Kattan,* a prevailing plaintiff in a case brought pursuant to the Education for All Handicapped Children Act (EHC) appealed the trial court's reduction of the hourly fee claimed by plaintiff's counsel in the fee petition. In affirming the hourly rate reduction, the court noted with approval that the trial court's setting of an appropriate hourly rate was based in part upon "reports of similar cases in which fees were awarded for similar work." *Kattan, supra.*, at 278. In other words, in setting an hourly rate, the court required information as to the hourly rate approved in other EHC cases. *See also Save Our Cumberland Mountains Inca v. Hodel, supra*, at 1521 (D.C. Cir. 1988) (fee award should compensate attorneys at rates commensurate with attorneys doing the same sort of work in same area).

In *Buffington v. Baltimore County,* 913 F.2d 113 (4th Cir. 1990), a prevailing party in a

8

§ 1983 case provided the trial court with information regarding the market rates that its attorneys charged private clients as well as the hourly rates charged by other large firms in the city of Baltimore. On appeal, the court held that such information did not provide the court below with sufficient information to set an hourly rate, because plaintiff had not provided the court with specific information as to the rates charged and ultimately approved in other § 1983 cases. *Id.* at 129. *See also Beard v. Teska,* 31 F.3d 942 (10$^t$h Cir. 1994) (market rate in IDEA case is the market rate in IDEA cases not what attorney charged in other types of cases).

Plaintiff's fee petition attempts to establish a market rate for what it terms "complex federal litigation." Plaintiff's methodology for establishing such rates is to inform the court of the fees that it charges for "litigation" and also provide the court with information as to the general hourly fees charged by a number of large law firms in the District of Columbia. Such a methodology is too broad and should have been far more refined to include information as to hourly fees that have been claimed in § 1983 cases *See Kattan v. District of Columbia,* 995 F.2d 274 (D.C. Cir. 1993). Moreover, although this fact is glossed over by plaintiff, John Moustakas, lead counsel in this case, had little or no civil litigation experience before commencing the litigation of the case at bar. Mr. Moustakas has not been involved in civil litigation in this courthouse. Mr. Moustakas lacks civil experience; he has spent most of his career in criminal law.

The issue before that court is the appropriate level of compensation in this particular § 1988 case. *See*, e.g., *Buffington v. Baltimore County,* 913 F.2d 113 (4t$^h$ Cir. 1990) (issue is not general experience and skill of counsel but rather particular experience of counsel in civil rights cases); *Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir. 1983) (hourly rate in §1983 case should be based upon lawyer's experience in civil rights or analogous cases).

9

### 2. At a Minimum, the Plaintiff's Attorney's Fees Should Be Reduced to the *Laffey* Matrix.

Given that plaintiff has not provided the court with information concerning the hourly rates awarded in § 1983 cases, the court should utilize the *Laffey* Matrix in establishing an hourly rate for plaintiff's counsel.[5] *District of Columbia v. R.R.* 2005 WL 2461899 (D.D.C. Oct. 6, 2005) (court relies upon *Laffey* Matrix as prevailing community rate and reduces requested hourly rate to that level); *Watkins v. Vance,* 328 F.Supp.2d 23 (D.D.C. 2004) (prevailing market rate is *Laffey* rate and any request in excess of that amount will be reduced accordingly); *Blackman v. District of Columbia,* 59 F.Supp.2d 37 (D.D.C. 1999) (same).

Plaintiff's counsel should be held to the *Laffey* matrix. They have not justified why, given the facts of this case, they should be allowed to bill higher. The *Laffey* rate is $195 per hour for both Mr. Moustakas and Mr. Huitema, whereas their requested rate is $365.00 for Mr. Huitema and $475.00 for Mr. Moustakas. They have not presented any set of facts which justify a higher rate for them.

### B. The Number of Hours Billed by Plaintiff's Counsel, Paralegals and Law Clerks on Each Item Is Excessive

Plaintiff's counsel have provided an excessive number of hours per each item given the experience they claim to have. Further, the total number of hours spent on this case by plaintiff's attorney's is incredible given how little written work was actually done.

These records on pages 1 and 2 of Exhibit G reveal excessive billing regarding the issue of post and forfeit:

- Mr. Huitema's billing on the sole issue of "post and forfeit" for the dates June 2, 3, 5, 6, 8, 9, 16, 21 and 23, 2005 and July 1, 2005 total 30.6 hours for a total billing of $9,164.50.

- Mr. Moustakas claims for June 6, and 16, 2005, .9 hours for a total of $409.50 on this same issue of post and forfeit.

- Ms. Yeh also claims for the July 1, 2005, 6 hours for a total of $1,110.00 for the post and forfeit issue.

Thus, for a firm claiming to have so much experience in this area that they can command an over the top hourly rate, it took them 37.5 hours regarding the issue of post and forfeit for a total billing of $10, 684.00.  Defendant asks that this amount be reduced by two thirds given the prior experience claimed for a total of $3,546.66.

Another example of plaintiff's excessive billing in this case involves the Offer of Judgment of November 21, 2005.  Plaintiff's counsel claims 8.4 hours regarding this one page, one paragraph document for a total of $3,275.00.  See page 5 of plaintiff's Exhibit G to the fee petition.  Within that amount, plaintiff's counsel claims that 2 hours were spent on the drafting and serving of Notice of the Acceptance of the Offer of Judgment for a total of $730.00.  This is a 1 page document with 3 sentences.  Defendant, therefore asks that the total bill of $3,275.00 regarding the Offer of Judgment be reduced by two thirds for a more reasonable total of $1,091.66.

**II.  THE REQUESTED AWARD MUST BE REDUCED BECAUSE PLAINTIFF'S DOCUMENTATION OF THE WORK PERFORMED IS INADEQUATE**

Fee requests are to include "contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work with supporting documents, if any." *In re Donovan, supra*, at 994 (emphasis added). Where there is inadequate documentation for the work performed during the time billed the award must be reduced accordingly. *Id*. Additionally, hours must be "excluded from a fee request . . . that are excessive, redundant or otherwise unnecessary." In re Olson, supra, at 1428 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433-34

11

(1983)). Adequate documentation is necessary for the court to satisfy its review requirement. *In re Meese*, 907 F.2d 1192, at 1203 & 1204 (D.C. Cir. 1990).

Many of plaintiff's expenses and billing entries appear excessive or unnecessary, and plaintiff has failed to produce adequate documentation of the work performed. The lengthiness of plaintiff's brief emphasizes the hourly rate, rather than the actual work done. This is because plaintiff filed only two documents in this case before its resolution instances where the billing entries are not adequately documented. There are instances where the time records maintained by the attorneys, paralegals and law clerks do not mention the subject matter of a meeting, telephone conference or the work performed during hours billed. As such it is "impossible for the court to verify the reasonableness of the billings, either as to the necessity of the particular service or the [total] amount of time expended on a given task." *In re Sealed Case*, 890 F.2d 451, at 455 (D.C. Cir. 1989). *In re Meese*, *id*., at 1204. Defendant asks that all inadequately supported billing be reduced by ten percent of the remaining billings after improper items have been deducted, as in the *Meese* case, because it is impossible for the Court to determine which of them is reasonable.

### A. Plaintiffs Fee Request for Preparation of the Fee Petition Should be Substantially Reduced.

Defendant concedes that plaintiff is entitled to fees for hours reasonably expended in the preparation of the fee petition. Nevertheless, defendant takes exception to the number of hours and amount billed by plaintiff for the fee petition. Plaintiff's Goodwin Procter billing records of plaintiff are contained in plaintiff's Exhibit G of plaintiff's fee petition.

Plaintiff's claims for attorney's fees regarding the attorney's fees petition contains numerous excessive billings:

- Plaintiff claims a total of 51 hours and $19,381.00 regarding the attorney's fees petition. Taking this inordinate amount of time for telephone calls, repetitious letters that

recite the entire history of the case, meetings, and research that result in a 13 page brief with exhibits similar to one that plaintiffs counsel only recently drafted in a case, which they are fond of quoting herein, the *Heard* case, is hardly what one would expect from attorneys who seek rates higher that the *Laffey* rates.

- The fee petition brief itself is 13 pages long. It does not contain anything that can be described as complex legal analysis or discussion. A majority of the cases that it cites can be found in the footnotes contained in the *Laffey* Matrix. The remaining citations are to the leading cases in this jurisdiction as to fee petitions; cases that are familiar to any practitioner experienced in § 1988 litigation. Further, information as to the billing rates of major law firms is readily available.

- Plaintiff's counsel claims to have spent 2.7 hours and billed $1,548.00 for E-mailing and reviewing the time records, and 2.3 hours and billed $839.50 for researching the legal issues relevant to a fee petition, and 25.6 hours and billed $8,981.55 for drafting discussing and meeting regarding the fee petition. The entire amount of 2.3 hours and billing of $839.50 for researching the legal issues relevant to a fee petition should be disallowed. Plaintiff's counsel by their own admission had just filed such a petition in the *Heard* case. At the very least, only half that amount should be permitted if plaintiffs are going to rely on their prior experience as a basis for higher rates per hour. The $8,981.55 is an astronomical amount for a resultant 13 page brief, which does little more than recite existing law. The billing for such a brief should be one third of that amount, $2,993.85.

Several billing entries should be disallowed altogether because they have no factual basis for being a part of this case, and appear to be an effort to create fees where none exist:

13

- The February 2, 2006 entry of $1,330.00 for John Moustakas of 2.8 hours, "Review prior history around false assertions concerning motion for extension (2); begin draft letter to opposing counsel (.8)" should be disallowed because any alleged false assertions as to why the undersigned or any other attorney needed additional time to file a pleading were figments of Mr. Moustakas' imagination without any basis in fact. There is no mention of what he reviewed and given that this is the undersigned's first dealings with him, this entry should be disallowed in its entirety, as there is no "prior history" between plaintiff's counsel and the undersigned.

B.  **The Fee Petition Should Be Reduced as a Result of Improper Block Billing on the Part of Plaintiff's Counsel**

In the *Hensley* case, the Supreme Court made it clear that the party seeking to collect attorney's fees bears the burden of proving that the requested fee is reasonable by submitting evidence supporting the hours worked and rates claimed. *Hensley,* 461 U.S. at 433. Thus, the fee movant bears the burden of establishing the hours claimed and submitting adequate evidence to support this claim. *Id.* Our circuit has approached inadequately documented time requests in several ways. In cases where attorneys failed to submit contemporaneous time records, engaged in block billing, or included inadequately detailed descriptions, courts have reduced the fee award by a certain percentage, or disallowed some hours billed. E.g., *Role Models, Inc. v. Brownlee,* 353 F.3d 962 (D.C. Cir. 2004).

With respect to the issue block billing, in the case of *Jane L. v. Bangerter, 61* F.3d 1505 (10th Cir. 1995), the Tenth Circuit upheld a 35 percent reduction of the plaintiff's requested hours because the plaintiffs counsel listed "imprecise time records [which] failed to document adequately how plaintiff's attorneys utilized large blocks of time." *Id.* at 1510. Tasks included in these blocks of time included "unspecified or inadequately specified

`review' time, excessive travel time, unnecessary and duplicative time spent in conference calls, meetings, and hearings, non-compensable public relations time, non-compensable time expended after the judgment was rendered, and non-compensable clerical or `overhead' time." *Id.*

Similarly, courts in this jurisdiction have disapproved of block billing and ordered significant cuts in the fee petition For example, in *Role Models* the court objected to records which lumped together multiple tasks. The court gave one example of one entry that indicated that "on September 17 Role Model's lead lawyer spent 10.25 hours performing the following six tasks: 'Telecon[ference] with R. Alexander; conference with J. Port, K. Dodd, C. Bonat regarding research; review research; draft brief; review bankruptcy materials; revise brief."' *Role Models* 353 F.3d at 971. The court emphasized that "when an attorney bill[s] for more than one task in a day, the court is left to approximate the amount of time which should be allocated to each task. With such inadequate descriptions the court cannot determine with a high degree of certainty, as it must, that the billings are reasonable." *Id. (citing In re Olson,* 884 F.2d 1415, 1428 (D.C. Cir. 1989) *(per curiam).* The court concluded that the time records submitted by the fee applicants failed to offer this high degree of certainty, specifically finding that this practice of block billing "made it impossible to evaluate their reasonableness." *Id.* at 970-71. Due to inadequate documentation, and a number of other flaws including failure to justify the number of hours claimed, inconsistencies and improper billing entries, the court reduced the award by fifty percent. *Id.* at 973.

In this case, plaintiff's legal bills are replete with block billing. The block billing include various meetings which do not indicate the subject matter and or the participants. These billing entries simply are woefully inadequate and not in compliance with legally

recognized billing practices. The District of Columbia should not be required to compensate plaintiff's lawyers for tasks when it is impossible to discern the reasonableness of the time spent. Accordingly, the defendant requests that the court reduce the amount of requested fees by all amounts presented in this fashion.

    C.    **The Fee Petition is Replete with Vague Entries**

        **1.    The Description of Many of the Legal Services Provided Is Inadequate to Determine the Nature of the Service and Whether the Service Was Actually Necessary**

Courts require that time records submitted contain adequate detail and it goes without saying that documentation must adequately describe the legal work for which a client is being billed. *In re Sealed Case,* 890 F.2d 451, 455 (D.C. Cir. 1989) *(per curiam).* In *Sealed Case,* the court reduced the award of attorney's fees due to insufficient specification of tasks. *Id.* The court noted that there were numerous instances of documentation that did not adequately describe the legal work for which the client was being billed. *Id.* For example, the court mentioned numerous instances in the records where the subject matter of a telephone call was not mentioned. *Id.* The court found that vague descriptions made it "impossible for the court to verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given legal task." *Id.* Although the court stated that this item could be denied in its entirety on this ground, it recognized that some telephone calls were necessary and merely reduced the amount requested. *Id.*

Similarly, in *In re Meese,* 907 F.2d 1192 (D.C. Cir. 1990), the court reduced an award by ten percent because the time records maintained by the fee applicants were "replete with instances where no mention was made of the subject matter of a meeting, telephone conference or the work performed during hours billed." *Id.* at 1204.

16

In the more recent case of *Role Models* discussed *supra,* the court also allowed the reduction of the award based upon lack of adequate detail in the time records. *Role Models,* 353 F.3d at 971. One task description form complained of was an identical one-line entry, entered on eight consecutive days, stating "research and writing for appellate brief." *Id.* Another task description found inadequate was numerous entries in which attorneys billed simply for "research" and "writing," or for time spent in teleconferences or meetings-over one hundred in total-without providing any purposes. *Id.* The court stated that "such generic entries" were inadequate to meet a fee applicant's heavy obligation to present well-documented claims. *Id.* As indicated above, vague documentation, as well as a number of other flaws, resulted in the reduction of the award by fifty percent. *Id.* at 973.

Here, there are numerous examples of billing of meetings with no indication as to the substance or the participants, as well as letters and telephone conversations with no indication of purpose or subject matter. As indicated in the comments section of the chart, there simply is no way for defendant to discern the nature of these charges. The District, therefore requests that the fee petition be reduced by an appropriate amount to reflect the noted deficiencies.

2. **The Fee Petition Contains Numerous Internal "Meetings" Where All Participants Do Not Bill**

A prerequisite to any successful claim is that detailed, task-specific records must be kept by counsel and other staff contemporaneously with the time expended. The time documentation "must be of sufficient detail and probative value to enable the court to determine *with a high degree of certainty* that such hours were actually and *reasonably expended.* "*In Re Olson,* 884 F.2d 1415, 1428 (D.C. Cir. 1989), (emphasis added) (citations omitted. Properly documented time records are only the starting place for determining the hours reasonably expended and eligible for inclusion in the lodestar calculation. As previously discussed, counsel seeking a fee award must exercise billing judgment and exclude from their

claim the hours which were not reasonably expended. *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C. Cir. 1980)(*en banc*).

In this case, the billing records of plaintiff's counsels contain numerous references of an internal meeting with another member of the firm where the other member of the firm does not also document the meeting. Attorneys who have exercise billing judgment must specifically identify any hours that were excluded from a fee petition and indicate the tasks to which those hours were devoted. *Concerned Veterans,*, 675 F.2d at 1327-28, 1334-35; *Cook,* 609 F. Supp., at 1041. Counsel has attempted to demonstrate this billing judgment in their fee petition; therefore, there can be no excuse for the numerous entries of "internal meetings" of one. See Role Models 353 F.3d at 972 (entries of internal meetings of one is a defect warranting fee reduction).

The District also takes issue with the amount of internal meetings in general. Judge Charles R. Richey opined that it was improper for a defendant to "have to pay the double hourly rates for conferences between the senior and junior attorneys." *Parker v. Matthews,* 411 F. Supp. 1059, 1067 (D.D.C. 1976). The court concluded that a twenty percent across-the-board reduction of the fee award was appropriate to balance the "unexplained and apparently excessive time spent as well as for the overlapping of conference time between senior and junior attorneys." *Id.*

Similarly, in this case, not only is the District faced with numerous billing entries for "telephone conferences" with no indication as to the topic discussed, there was a great deal of internal meeting time overall. As already discussed, much of this meeting time is facially invalid, as there is a great deal of inconsistency among the timekeepers as to attendance at the meetings. However, in addition to receiving a reduction for billing related to internal meetings of one, the District submits it should not be double-billed for the meetings between senior counsel and the more junior attorneys and summer associates.

### 3. The District Is Entitled to a Reduction in the Fee Petition for Excessive Billing for Ministerial and/or Administrative Tasks

The District does not dispute that Plaintiff's counsel is entitled to compensation for legal services they provided to plaintiff; however, those fees must be reasonable to the type of work performed. As courts have recognized, "[a] claim by a lawyer for maximum rates for telephone calls with a client, legal research, a letter concerning a discovery request, the drafting of a brief, and trial time in court is neither fair nor reasonable." *Loughner v. University of Pittsburgh,* 260 F.3d 173, 180 (3rd Cir. 2001). This is because "[m]any of these tasks are effectively performed by administrative assistants, paralegals, or secretaries. As such, to claim the same high reimbursement rate for the wide range of tasks performed is unreasonable." *Id.*

Courts have found it "appropriate" when analyzing a fee petition, "to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics, and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Johnson v. Georgia Hwy Express, Inc.,* 488 F.2d 714, 717 (5th Cir. 1974).

## IV. CONCLUSION

For all of the foregoing reasons, plaintiff's Motion for an Award of Attorney's Fees and Costs should be reduced as requested by defendants..

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

   /s/
NICOLE L. LYNCH [D.C. Bar #471953]

19

>Chief, General Litigation, Section II
>General Litigation, Section II
>
>　　　　/s/
>URENTHEA McQUINN [D.C. Bar #182253]
>Assistant Attorney General
>441 4th Street, N.W.
> Sixth Floor South
>Washington, D.C.  20001
>(202) 724-6646
>(202) 727-0431 (FAX)
>urenthea.mcquinn@dc.gov

March 29, 2006