UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAFAYETTE RICKS | ) |
| Plaintiff, | ) |
| v. | ) |
| MPD OFFICER TOMMY BARNES | ) Civil Action No.: 05-1756 HHK/DAR |
| *and* | ) |
| THE DISTRICT OF COLUMBIA | ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS'
FEES AND COSTS PURSUANT TO FED. R. CIV. P. 54(d)**

Plaintiff Lafayette Ricks, through counsel, hereby files this reply in further support of his motion for an award of $84,002.50 in attorneys' fees and costs pursuant to Fed. R. Civ. P. 54(d) and 42 U.S.C. § 1988. With his opening motion, plaintiff submitted a memorandum of points and authorities and exhibits that thoroughly and methodically reviewed the activities (and achievements) of counsel in this case, along with the reasonableness of both Goodwin Procter's usual and customary rates and the rates requested by the ACLU. Nothing in the District's Opposition warrants any reduction in plaintiff's fee request.[1]

Seeking an extension of time to file its Opposition on the ground that "plaintiff's brief is quite lengthy and will require more than the usual eleven days to respond" and because of its

---

[1] We also note that, while judgment for $32,000 was entered in favor of Mr. Ricks on February 13, more than seven weeks ago, the District still has not satisfied that judgment and has not responded to recent inquiries as to when payment would be made.

professed "importance," the District would have been expected a produce a thorough and well-documented brief with ample factual and legal support. Instead, with the 30 days it was given to respond, the District did little more than change the caption on a brief it had previously filed in another fee case, repeating boilerplate criticisms that are utterly inapplicable to the current case. While the brief comes loaded with hyperbole and *ad hominem* attacks, it includes very little analysis of this plaintiff's actual fee petition, or the supporting billing records and exhibits. This irresponsible approach is an example of how the District's own conduct increases the expense of litigation.

As we show presently, the poor fit of its boilerplate opposition to the actual facts of this case is readily apparent. First, the District does not challenge, and thus has conceded, a number of significant points raised in plaintiff's motion. In fact, unable to muster a meaningful response, the District completely ignores some of plaintiff's arguments. Second, while the District sets out a laundry list of problems that hypothetically can arise in fee petitions, it fails to establish that any of them *did* arise in this one. Without identifying specific problems with plaintiff's counsel's billing, those arguments provide no basis for reducing the fee request. Finally, in the few instances where the District has raised issues specific to this case, the District's objections are baseless and rife with factual errors.

### I.   The District Concedes Much of Mr. Ricks's Fee Petition

Before turning to the objections that the District *does* raise in its opposition, we note some of the significant points it has conceded.

- The District concedes that the judgment in this case constitutes a full and significant success for Mr. Ricks.

- The District concedes that plaintiff is entitled to recover attorneys' fees and costs, including those incurred litigating the fee petition.

- The District does not dispute that the claims challenging the use of post-and-forfeit in this case were novel, creative, and significant.

- The District does not dispute any aspect of the ACLU's fee request—including all of the time spent by the ACLU attorneys and paralegal, or the rates requested by the ACLU.

- The District does not dispute that the Goodwin Procter attorneys, Mr. Moustakas and Mr. Huitema, are qualified and experienced with regard to complex federal litigation.

- The District concedes that Goodwin Procter's billing rates are in line with other, competing D.C. law firms.

- The District does not dispute the reasonableness of any of the time spent on factual investigation and development, drafting the complaint, responding to defendants' untimely request for any extension for filing an answer, or opposing the defendants' motion to dismiss the post-and-forfeit claims.

The District also acknowledges that the basis for determining the fee award for the Goodwin Procter attorneys is to calculate a "lodestar," see *Blanchard* v. *Bergeron*, 489 U.S. 87, 94-95 (1989), but the District takes issue with both the number of hours Goodwin Procter spent vindicating Mr. Ricks's rights and the rates billed for that time. As we show in Sections II and III below, plaintiff's fee petition is reasonable with regard to both.

## II. The District Fails to Identify Excessive Time Spent on the Fee Petition

### A. The District's Boilerplate Assertions of Billing Inadequacies are False.

The District devotes the lion's share of its argument (at 11-19) to the contention that "plaintiff's documentation of the work performed is inadequate," but the District *fails to identify a single example* of any professed inadequacy. As a legal matter, conclusory, unsubstantiated arguments provide no basis for reducing a fee award. As a practical matter, the District provides no guidance to the Court on which billing entries should be reduced or rejected. Consequently, the District is entitled to no relief. But lest there be any doubt, the District's assertions also fail because the are demonstrably untrue.

3

- The District devotes two pages (14-16) to an attack on "improper block billing" and baldly asserts (at 15) that "plaintiff's legal bills are replete with block billing," but it cites no examples of that practice from plaintiff's fee petition. Nor could it, since there were no block-billed entries in this case. Contrary to the District's unsubstantiated, boilerplate assertions, the time spent on each task is separately noted in Mr. Ricks's fee petition.

- Similarly, the District objects (at 16-18) to "inadequate" descriptions of the legal services provided by plaintiff's counsel, but points to no descriptions from plaintiff's billing records that are too vague or incomplete for the Court to evaluate.

- Next, it objects (at 17-18) to the number of meetings by plaintiff's counsel, asserting that in "numerous" instances not all participants billed for attending a meeting. Not one of these "numerous" instances is cited in the Districts' brief, and the District fails to identify a single meeting that was superfluous.

- Finally, the District objects (at 19) to lawyers billing for excessive amounts of administrative or investigative work that could be done less expensively by non-lawyers, but it does not actually discuss any of the administrative or investigative tasks carried out in this case, let alone offer any support for the contention that too much of that work was done by attorneys. In fact, a paralegal at the ACLU handled most of the factual investigation in this case, and paralegals at Goodwin Procter handled most of the subsequent administrative tasks such as court filings and cite-checking briefs.

The District's arguments about block billing, vagueness, internal meetings, and administrative/clerical work were all lifted virtually verbatim from an opposition in an unrelated case without any regard for their lack of factual support in this case. Compare pages 14-19 of the Opposition in this case with pages 13-21 of Exhibit A to this Reply, the fee opposition in *Heard* v. *District of Columbia*, Civ. Action No. 02-0296 (CKK) (Docket # 168). ***Fourteen paragraphs in the District's Opposition in this case are lifted word-for-word from the brief in the unrelated Heard case.*** The only portions of the *Heard* brief which were not pasted into the Opposition here were the passages that identified purported examples of block billing, vagueness, internal meetings, and administrative tasks in *Heard*. But while the District excised the examples from the fee records in *Heard*, it failed to replace them with any examples of the

4

shortcomings alleged in this case, even though the District had 30 days to do so. In other words, what was present in the *Heard* brief, but is missing in the Opposition filed in this case, is ***analysis***. The reason: There was no block billing in this case, the entries are clear, the meeting time was wholly proper, and administrative tasks were not improperly performed by lawyers.

In short, the District's attack on the documentation of Mr. Ricks's fee request are a waste of time for both Mr. Ricks's counsel and the Court. Because the District has not identified any charges that should be denied or reduced for the reasons discussed here, there is no way for Mr. Ricks to defend counsel's billing practices or their staffing and handling of the litigation nor for the Court to grant relief. But no relief would be warranted in any event, because Mr. Ricks's fee petition was properly and responsibly documented and fairly seeks compensation for the work it took to achieve the demonstrably excellent results in this case.

As a legal matter, the District's unsubstantiated attacks on the adequacy of the billing records provide no grounds for reducing the fee award in this case. It is well-settled that conclusory and unsubstantiated attacks on fee petitions are improper and ineffectual:

> When opposing the amount of the fee, ***specific evidence*** should be offered to combat the amount claimed. Conclusory statements that the fee movant's claimed hours or rates are simply 'too high' cannot be a basis on which a court reduces a fee, nor can they preserve the issue for appeal. Instead, the fee opponent must offer ***specific factual allegations*** that either challenge the claimed hours or show that the prevailing rate is lower than that claimed by the fee movant.

10 James Wm. Moore *et al.*, Moore's Federal Practice § 54.155[2], at 234-35 (3d ed. 2005) (emphasis added). Thus, this Circuit has held that once the plaintiff has substantiated his fee request with billing records and other evidentiary support, "the burden . . . then shifts to the party opposing the fee award, who must submit the facts and detailed affidavits to show why [the fee] request should be reduced or denied." *Nat'l Ass'n of Concerned Veterans* v. *Sec'y. of Def.*, 675

5

F.2d 1319, 1337-1338 (D.C. Cir. 1982) (Tamm, J., concurring); see also *Lucas* v. *White*, 63 F. Supp. 2d 1046, 1057 (N.D. Cal. 1999) ("The party opposing the fee application 'has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits'"). Generic objections and conclusory assertions do not satisfy that burden. See *NACV*, 675 F.2d at 1338 ("Just as the applicant cannot submit a conclusory application, an opposing party does not meet his burden merely by asserting broad challenges to the application"); *Holbrook* v. *District of Columbia*, 305 F. Supp. 2d 41, 46 (D.D.C. 2004); *Lucas*, 63 F. Supp. 2d at 1057-58 ("Conclusory and unsubstantiated objections are not sufficient to warrant a reduction in fees."). Therefore, the objections raised by the District in Section II of their argument should be rejected out of hand.

     Moreover, by submitting its Opposition, the District has certified that its factual contentions have evidentiary support, when in fact they do not. For example, there is ***no*** block billing, let alone the pervasive block billing the District alleges. These and other assertions were made with the benefit of extra time to thoroughly assess plaintiff's fee petition. The Court may, and should, issue an order to show cause why these assertions did not violate Fed. R. Civ. P. 11(b)(3). The District already will be penalized, because it will have to pay the fees incurred by plaintiff's counsel responding to baseless, unsupported arguments. But that has not stopped the District from filing an indiscriminate, unsupported opposition in this case. An additional sanction is plainly needed to "deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2).

B.  **The District's Specific Objections to the Time Spent by Goodwin Procter Litigating Mr. Rick's Case Are Without Merit.**

In the few instances where the District actually does address their arguments to the fee petition in this case, the arguments are without merit and the facts marshaled to support them are often simply wrong. As we now show, all of the time spent vindicating Mr. Ricks's rights was reasonable.

For all the Opposition's bluster, there are only four aspects of counsel's work in this case for which the District seeks a reduction. All are examples of the sort of nit-picking and second-guessing that the D.C. Circuit and this Court have rejected. See *NACV*, 675 F.2d at 1338 ("nit-picking claims by the Government should [not] be countenanced"); *Holbrook*, 305 F. Supp. 2d at 46 ("Defendant's objections are simply conclusory assertions regarding the amount of time that defendant thinks plaintiff's counsel 'should have spent' on certain documents and litigation tasks. It is neither practical nor desirable to expect the trial court judge to [review] each paper . . . to decide, for example, whether a particular motion could be been done in 9.6 hours instead of 14.3 hours."); *Lucas*, 63 F. Supp. 2d at 1057-58.

First, the District argues (at 10-11) that compensation for 37.5 hours spent researching possible legal challenges to the use of post-and-forfeit in this case should be reduced by two-thirds. The District remarks that this amount of legal research is excessive "for a firm claiming to have so much experience in this area." But of course, counsel does ***not*** claim expertise in the arcane post-and-forfeit regime. ***No one*** has that expertise, because no one (to our knowledge) has challenged the use of post-and-forfeit in the type of circumstances involved in this case. Indeed, as we point out in the next section, the value added by sophisticated counsel in this case was raising novel legal claims that might have otherwise gone unnoticed and researching them thoroughly enough to ensure that they were viable before including them in a pleading, as

7

required by the ethical rules guiding lawyers' conduct.  The District does not dispute that Mr. Ricks's Fifth and Eighth Amendment claims were novel and colorable, and 37.5 hours is a reasonable—and responsible—amount of time to spend researching under-developed strands of constitutional law (such as the excessive fines and bail clauses of the Eighth Amendment) and tailoring legal claims to vindicate those little-explored constitutional rights.  See *Lucas*, 63 F. Supp. 2d at 1058-59 (holding that "time reasonably spent on pre-complaint investigation legal research, and informal discovery relevant to developing the theory of the case is properly recoverable . . . .  Indeed, Fed. R. Civ. P. 11 *requires* that counsel undertake sufficient pre-complaint investigation such that they can properly represent that all claims asserted are 'warranted by existing law or a nonfrivolous argument for [its extension or modification]' . . . .").[2]

Second, the District argues (at 11) that the 8.4 hours spent considering the District's Offer of Judgment, conferring on whether to accept the Offer, evaluating the alternatives, and drafting the Notice of Acceptance should be reduced by two thirds.  The District takes particular umbrage at the two hours spent drafting the Notice of Acceptance.  While it may indeed have been possible to draft an effective Notice of Acceptance in less time, quibbling over this modest amount is just the sort of "'nit-picking' variety [of criticism] which this Circuit has warned against."  *Holbrook*, 305 F. Supp. 2d at 46.  Moreover, assessing an offer of judgment from the District carefully and from all angles is a requirement of competent representation.

Third, the District takes issue with the amount of time spent on the fee petition.  In support of a request to cut two thirds of the fee associated with preparing the fee petition, the

---

[2]  Indeed, the evident reason why the District was quick to make an offer of $32,000 plus attorneys' fees to settle what it now seeks to characterize as a petty false arrest case is that it wished to avoid litigating the systemic challenge Mr. Ricks had mounted to the use of post-and-forfeit.  The District achieved that goal.  It now seeks to avoid paying for what it received.

District contends that the brief is short and "does not contain anything that can be described as complex legal analysis or discussion." Indeed, it asks (at 13) that all of the modest 2.3 hours spent on legal research be cut. Having indiscriminately cribbed from prior briefs without stopping to analyze whether the borrowed material even applies to this case, it is not surprising that the District should find it hard to understand that independent and substantive legal analysis takes more than just cutting and pasting.

      The District knows better. Indeed, in its request for an extension of time to file its opposition, it represented to the Court that the fee petition was sufficiently detailed and substantial so as to require almost *three times* the normal number of days to respond.[3] The District cannot have it both ways. If it required an extraordinary amount of time to oppose, the fee petition cannot have been generated with minimal effort as the District suggests. Mr. Ricks maintains that 25.6 hours is not "an astronomical amount for a resultant 13 page brief," as the District puts it (at 13), but in any event there was far more involved than simply drafting the brief itself. As the District told the Court before, there were 115 pages of significant exhibits attached to the fee petition. Plaintiff's counsel organized those exhibits, drafted multiple declarations, reviewed the billing records and decided which time to "cut" from the fee petition in an exercise of billing judgment.

---

[3] See Mem. of P. & A. in Supp. of Defs.' Mot. for an Extension of Time for Defs. to File a Resp. to Pls.' Mot. for an Award of Att'ys Fees & Costs at 1 ("[T]he plaintiff's brief is quite lengthy and will require more than the usual eleven days within which to respond. The brief itself consists of 13 pages, but the entire document with exhibits is approximately 115 pages."); Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. for an Extension of Time to File a Resp. to Pl.'s Mot. for an Award of Att'ys Fees & Costs at 1-2 ("Plaintiff's brief with exhibits was approximately 115 pages. It is indisputable that this is lengthy. The exhibits were important and had to be read as well as the 13 page brief. Given the importance of the brief and other deadlines, more than the usual 11 days was needed to respond.")

Finally, the District seeks to disallow 2.8 hours of Mr. Moustakas's time on February 2 that was spent "review[ing] prior history around false assertions concerning motion for extension" and then using that information to begin drafting a letter to defense counsel. Defense counsel asserts (at 14) that "this is the undersigned's first dealings with [Mr. Moustakas]," and that the entry should therefore be disallowed "as there is no 'prior history' between plaintiff's counsel and the undersigned." Defense counsel further asserts that "any alleged false assertions . . . were figments of Mr. Moustakas' imagination without any basis in fact." Each of these assertions is wrong.

Defendants' very first filing in this case was a motion for an extension of time in which to file an answer. Assistant Attorney General Urenthea McQuinn certified in that filing that she had "telephoned plaintiff's counsel, John Moustakis [sic] on the late evening . . . and left a detailed voice mail message that [the] motion would be filed." As counsel noted in Mr. Ricks's response, "[t]here was no voice mail message left on either counsel's office voicemail or in the voicemail box for the firm's main number." Moreover, while defendants subsequently maintained to the Court that the complaint had been served on September 8, the process servers' affidavits show that service occurred on September 7. The end result of these filings was an order from the Court allowing defendants more time to answer, but chastising the OAG for waiting until just before filing its motion, late in the evening, before even attempting to meet and confer with Mr. Ricks's counsel. See Order Granting Extension of Time (Oct. 18, 2005). The point here is not to belabor the early history of this litigation. But it is plainly the case that Ms. McQuinn *has* dealt with Mr. Moustakas, there *is* a "prior history around false assertions concerning motion for extension," and Ms. McQuinn *knows* it. It is precisely because the District's representations are untrustworthy that opposing counsel has spent the time to carefully

10

document each interaction with the OAG. Moreover, it was quite reasonable to refer to that history of belated and inadequate communication from the OAG when drafting a letter in response to *another* episode in which the OAG provided only moments notice of its intent to file a motion with the Court, and did so in the form of a backdated letter.[4]

### III. The District Has Failed To Justify Reducing Goodwin Procter's Usual and Customary Billing Rates

The District does not dispute that attorneys in private practice normally are entitled to compensation under § 1988 at the usual rate that they charge paying clients – a rate which is presumed to be reasonable.[5] The purpose of § 1988, after all, was to eliminate disincentives for representing victims of civil rights abuses by ensuring that the fees available in civil rights cases are sufficient to attract dedicated, skilled, and sophisticated counsel. See *City of Riverside* v. *Rivera*, 477 U.S. 561, 574-80 (1986) (discussing need to attract counsel to vindicate important constitutional rights); S. Rep. No. 94-1011, at 6 (1976) (showing Congress's intent that fee awards be "adequate to attract competent counsel"). Accordingly, courts "'must avoid . . . decreasing reasonable fees because the attorneys conducted the litigation more as an act of pro bono publico than as an effort at securing a large monetary return.'" *Blum* v. *Stenson*, 465 U.S. 886, 895 (1984) (quoting *Stanford Daily* v. *Zurcher*, 64 F.R.D. 680, 681 (N.D. Cal. 1974)).

The District's sole argument for *not* allowing Goodwin Procter's customary rates is its false assertion that the relevant market is not complex federal litigation, in which Mr. Moustakas

---

[4] See Pls. Opp. to Defs.' Renewed Mot. For an Extension of Time for Resp. to Fee Petition at 3-4 7 Ex. E (concerning the letter Mr. Moustakas was drafting in this time entry).

[5] See, *e.g.*, *Save Our Cumberland Mountains, Inc.* v. *Hodel*, 857 F.2d 1516, 1521, 1524 (D.C. Cir. 1988) (*en banc*); *Kattan ex rel. Thomas* v. *District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) ("[A]n attorney's usual billing rate is presumptively the reasonable rate."); *Nat'l Ass'n of Concerned Veterans* v. *Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982) ("*NACV*") ("[T]he actual rate that applicant's counsel can command in the market is itself highly relevant proof of the prevailing community rate."). See, *e.g., Bolden* v. *J & R Inc.*, 135 F. Supp. 2d 177,

and Mr. Huitema indisputably have ample experience, but only § 1983 cases.[6] In the absence of any information about what the prevailing rate is within that purported sub-market, the District then proposes that the Court resort to use of the *Laffey* matrix created by the U.S. Attorney's Office as a default basis for establishing an hourly rate. Finally, the District makes the preposterous suggestion that both Mr. Moustakas and Mr. Huitema be compensated as first year associates.[7] Each link in this chain of argument is flawed.

First, as the District knows, our Circuit rejected the very same argument it made in *Covington*. There the Court held that "***complex federal litigation*** was the relevant market for purposes of establishing the prevailing market rates" for civil rights cases in the District of Columbia. *Covington* v. *District of Columbia*, 57 F.3d 1101, 1103 (D.C. Cir. 1995) (emphasis in original). Following successful civil rights litigation, the plaintiffs in *Covington* sought to recover attorneys fees from the District under § 1988, and they "submitted evidence of the prevailing market rates for complex federal litigation," *id.*, just as Mr. Ricks does here. As in this case, "the District argue[d] that the court should define the relevant market, for purposes of determining the prevailing market rates, narrowly, as including only plaintiff attorneys in civil rights, employment, or discrimination actions." *Id.* at 1111. The District Court rejected that

---

179-80 (D.D.C. 2001) (awarding Crowell & Moring its customary hourly rates for work done for paying clients).

[6]   The District does not dispute that the rates requested for Goodwin Procter attorneys are consistent with the prevailing market rate for complex federal litigation. Nor could it: plaintiff submitted detailed declarations and market surveys with his fee petition demonstrating that the rates requested here are Goodwin Procter's usual and customary rates, and that they are in line with the rates charged by comparable firms for litigation work in this market.

[7]   Not even the District believes this. While it wrongly sought to impose *Laffey* rates on the same foreclosed basis in another recent civil rights case, the District at least conceded in that case that Mr. Moustakas should be treated as a lawyer with 16 years experience and another lawyer in Mr. Huitema's graduating year should be treated as a 6-year lawyer. See Exhibits 2 and 9 to the District's Fee Opposition in *Heard* v. *District of Columbia*, No. 02-0296 (CKK) (Document #168).

12

argument, and the Circuit affirmed.  Thus, in this case, the District is doing nothing more than trying to resurrect an argument decided against it a decade ago. [8]

The benefit of having counsel experienced in complex litigation is evident in this case.  It would have been very easy to view Mr. Ricks's case as presenting nothing more than a standard false arrest claim.  It was only by taking a step back and evaluating each aspect of the police department's conduct that the use of post-and-forfeit emerged as a distinct issue.  And it was only by following up with thorough factual investigation that counsel was able to confirm that the improper use of post-and-forfeit is a widespread problem in the District of Columbia.  Finally, it took creative legal thinking and thorough legal research to craft constitutional challenges to the use of post-and-forfeit.  No one has ever successfully challenged post-and-forfeit under the Fifth and Eighth Amendment theories pressed by Mr. Ricks – nor does the District state otherwise.  And though the District ignored Mr. Ricks's Opposition to its motion to dismiss when reciting the work done by counsel in this case, the District cannot dispute that Mr.

---

[8] Moreover, in suggesting its application here, the District misapprehends the purpose of the *Laffey* matrix, which was developed as one way to determine reasonable hourly rates for attorneys doing public interest work who either do not charge any hourly rate, or who serve underrepresented clients at below market rates.  It was not intended to replace the usual and customary rates of lawyers in private practice, as long as those rates are in line with the prevailing market rates for complex federal litigation.  See *Martini* v. *Fed. Nat'l Mortgage Ass'n*, 977 F. Supp. 482, 485 (D.D.C. 1997).  And while the *Laffey* matrix sets out one hourly rate that the federal government will presumptively agree is reasonable, firms that regularly bill clients at a different rate are still able to recoup their standard charges if they can demonstrate—as plaintiff did in this case—that those rates are in line with the market.  See *Adolph Coors Co.* v. *Truck Ins. Exch.*, 383 F. Supp. 2d  93, 97-98 (D.D.C. 2005).  Indeed, when settling cases, the District routinely pays public interest or non-profit lawyers using the *Laffey* matrix, while paying lawyers in private practice at their standard billing rates.  See Declaration of Arthur B. Spitzer ¶ 10 (Ex. E to Mr. Ricks's fee petition).  Finally, if the Court were to consider the use of a matrix to calculate the Goodwin Procter fees (which we believe would be improper), the version of the *Laffey* matrix updated by Dr. Michael Kavanaugh is a more precise reflection of prevailing market rates than the U.S. Attorney's Office matrix, and should therefore be used for the reasons set forth in our opening brief (at 7 & n.8).  The District has conceded as much in failing to respond to that argument and in accepting the ACLU's rates, which were calculated under Dr. Kavanaugh's update of *Laffey*.

Ricks overcame that motion because the post-and-forfeit claims had been researched thoroughly and drafted carefully.

The post-and-forfeit claims contributed both to the size of Mr. Ricks's monetary recovery and to the overall societal benefit of this lawsuit. If the case had been limited to Mr. Ricks's false arrest, his damages could have been significantly minimized since he was released after only an hour or two in custody. By pursuing claims that the police violated Mr. Ricks's constitutional rights even in the way they handled his release, and that the District has a pervasive problem with using post-and-forfeit to sweep baseless arrests under the rug and to either extract money or incarcerate indigent citizens, counsel significantly increased the value of Mr. Ricks's case. The post-and-forfeit claims also increased the broader, societal benefits of this lawsuit by challenging not just the misconduct of a single police officer, but also a widespread problem with disorderly conduct arrests and the misapplication of post-and-forfeit that the District government has failed to address. Mr. Ricks hopes this will protect other similarly situated citizens in the future.

In an attempt to bolster its argument that Goodwin Procter's regular billing rates for complex federal litigation should not apply in this case, the District also takes pot-shots at the qualifications of Mr. Moustakas and further argues that both he and Mr. Huitema should be compensated as if they were first year associates. The District's assertions with regard to Mr. Moustakas's experience are simply wrong. While the District indicates (at 9) that "Mr. Moustakas has not been involved in civil litigation in this courthouse," he litigated a § 1983 action against the District and other defendants that resulted in a recovery of $1.75 million (exclusive of fees and costs) just last year. See Declaration of John D. Aldock, ¶ 15 (Exhibit D to Mr. Ricks's fee petition). And while the District asserts that Mr. Moustakas "had little or no

14

civil litigation experience before commencing the litigation of the case at bar," it ignores the detailed description of ***numerous*** civil lawsuits that Mr. Moustakas has successfully litigated. Nor can the District explain why Mr. Moustakas's extensive trial work, or his experience in complex public corruption and civil rights litigation, including more than 30 jury trials, should be ignored in considering his experience.  See Declaration of Michele A. Roberts, filed in *Heard* v. *District of Columbia*, Civ. Action No. 02-0296 (CKK) (Docket # 173) (Exhibit B hereto).  Mr. Ricks's fee petition established that both Mr. Moustakas and Mr. Huitema are highly qualified lawyers, with excellent credentials and relevant experience.  The District offers no reason for ignoring that experience, and compensating counsel as if they were first year associates rather than the veteran partner and senior associate that they actually are.

## CONCLUSION

For the reasons set forth above, Mr. Ricks respectfully requests that this Court grant his motion for fees and costs in full, awarding reasonable attorneys' fees in the amount of $83,216, and reasonable costs in the amount of $786.50.

Respectfully submitted,

/s/
John Moustakas (DC Bar # 422076)
David Huitema (DC Bar # 475082)
Goodwin | Procter LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 346-4000
(202) 346-4444 (fax)

Arthur B. Spitzer (DC Bar #235960)
Frederick V. Mulhauser, (DC Bar # 455377)
American Civil Liberties Union
   of the National Capital Area
1400 20th St., NW, Suite 119
Washington, DC 20036
(202) 457-0800

(202) 452-1868 (fax)

Attorneys for Lafayette Ricks

April 6, 2006