UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAFAYETTE RICKS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 05-1756 |
| ) | HHK/DAR |
| MPD OFFICER TOMMY BARNES ) | |
| DISTRICT OF COLUMBIA ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ATTORNEY'S FEES**

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH H. HEARD ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 02-0296 (CKK) |
| v. ) | |
| ) | |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

Defendant District of Columbia, through counsel, hereby opposes plaintiff's petition for attorney's fees as follows:

## I. CASE BACKGROUND

On November 15, 1998, Joseph Heard, an individual who suffers from a number of physical and mental disabilities, was arrested and charged with disorderly conduct in the Superior Court of the District of Columbia. Mr. Heard spent the next 11 months in St. Elizabeth's Hospital because his competency was at issue. On November 15, 1999, the criminal charge against him was dismissed and the court ordered him released from custody. Rather than be released, Mr. Heard was sent to the District of Columbia Central Detention Facility where he spent the next 22 months incarcerated.

Following his release from jail, Mr. Heard came to be represented by attorneys Othello G. Jones and W. Thomas Stoval who ultimately filed suit on his behalf. In response to defendant's motion to dismiss the court dismissed all of the common law claims in the case against the District of Columbia. In late December of 2003, it appears that attorneys Stoval and Jones were terminated from the case. They were replaced at that time by the law firm of

the activity or stage of the case. *See American Civil Liberties Union v. Barnes*, 168 F.3d. 423 (11th Cir. 1999) (well prepared fee petition includes a summary of the work activity by category).

Furthermore, it is unclear as to why preparation of the fee petition required over 40 hours of conference time. Although affidavits and declarations are important to the presentation of a fee petition, it would be giving counsel the benefit of the doubt to state that the preparation of any particular affidavit in support of a fee petition should not require more than two days of work. Mr. Moustakas expended far more than two days to prepare his declaration.

Given the above-described excesses, defendant submits that preparation of the fee petition should have been accomplished within 120 hours. Accordingly, defendant proposes that the amount awarded for preparation of the fee petition be reduced to $56,500.00

### D. The Fee Petition should be Reduced as a Result of Improper Block Billing on the Part of Plaintiff's Counsel

In the *Hensley* case, the Supreme Court made it clear that the party seeking to collect attorney's fees bears the burden of proving that the requested fee is reasonable by submiting evidence supporting the hours worked and rates claimed. *Hensley*, 461 U.S. at 433. Thus, the fee movant bears the burden of establishing the hours claimed and submitting adequate evidence to support this claim. *Id.* Our circuit has approached inadequately documented time requests in several ways. In cases where attorneys failed to submit contemporaneous time records, engaged in block billing, or included inadequately detailed descriptions, courts have reduced the fee award by a certain percentage, or disallowed some hours billed. *E.g., Role Models, Inc. v. Brownlee*, 353 F.3d 962 (D.C. Cir. 2004

With respect to the issue block billing, in the case of *Jane L. v. Bangerter*, 61 F.3d 1505 (10th Cir. 1995), the Tenth Circuit upheld a 35 percent reduction of the plaintiff's requested

13

hours because the plaintiff's counsel listed "imprecise time records [which] failed to document adequately how plaintiff's attorneys utilized large blocks of time." *Id.* at 1510. Tasks included in these blocks of time included "unspecified or inadequately specified 'review' time, excessive travel time, unnecessary and duplicative time spent in conference calls, meetings, and hearings, noncompensable public relations time, noncompensable time expended after the judgement was rendered, and noncompensable clerical or 'overhead' time." *Id.*

Similarly, courts in this jurisdiction have disapproved of block billing and ordered significant cuts in the fee petition  For example, in *Role Models* the court objected to records which lumped together multiple tasks.  The court gave one example of one entry that indicated that "on September 17 Role Model's lead lawyer spent 10.25 hours performing the following six tasks: 'Telecon[ference] with R. Alexander; conference with J. Port, K. Dodd, C. Bonat regarding research; review research; draft brief; review bankruptcy materials; revise brief.'" *Role Models* 353 F.3d at 971.  The court emphasized that "when an attorney bill[s] for more than one task in a day, the court is left to approximate the amount of time which should be allocated to each task. With such inadequate descriptions the court cannot determine with a high degree of certainty, as it must, that the billings are reasonable." *Id. (citing In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) *(per curiam)*.  The court concluded that the time records submitted by the fee applicants failed to offer this high degree of certainty, specifically finding that this practice of block billing "made it impossible to evaluate their reasonableness." *Id.* at 970-71.  Due to inadequate documentation, and a number of other flaws including failure to justify the number of hours claimed, inconsistencies and improper billing entries, the court reduced the award by fifty percent. *Id.* at 973.

14

In this case, Mr. Heard's legal bills are replete with block billing. Most troubling – and most burdensome for the District of Columbia – is the fact that the attorneys with the highest billing rates, Paul Friedman and John Moustakas, are the most egregious violators of this standard. Attached hereto as Exhibit 4 is a chart delineating the block billing that has occurred in this case. All told, the block billing totals $295,094.25. Some highlights include:

| | | | | | |
|---|---|---|---|---|---|
| 08/03/04 | Friedman, Paul | 8.5 | 485.00 | 4,122.50 | Review first part of excel-based detailed chronology from St. Es records prepared by AJL; conf/w AJL re priorities for this task and on integrating St. Es info with court and jail info; conf/w JM re master chronology and bates stamping issues; draft and send letters to possible experts; review email; review separate skeletal chronology from AJL; legal research on DOJ consent decrees/orders re deaf accommodations and case law re undue burden and program disruption to determine what expert testimony may be required; Conf/w DMB re same. |
| 08/19/04 | Friedman, Paul | 9.50 | 485.00 | 4,607.50 | Make arrangements for evaluations of Mr. Heard; arrange with Sandra Hayes to get Heard to the airport for his trip to Washington and for Tom Stovall to meet him; edit motion for extension of time to file expert reports under rule 26; extended teleconf w/Dr. Vernon to discuss various aspects of his opinions; review draft report from Dr. Vernon and discuss report w/him; conf w/paralegal re scanning and |

15

| | | | | | |
|---|---|---|---|---|---|
| | | | | | summarizing various records with attention to key issues. |
| 09/07/04 | Friedman, Paul | 6.50 | 485.00 | 3,152.50 | T/w Sandra Hayes, T. Stovall to confirm that Hurricane Frances did not prevent JH leaving Florida as scheduled to meet with consultant; multiple calls w/Gallaudet interpreter services to arrange for serving as interpreters for meeting of JH w/counsel during his evaluation visit; revise meeting schedule to accommodate interpreters and advise all concerned; conf/w Anne Lee re annotation of medical records in Paperport and spreadsheet analysis of St. Es records; t/w JM re logistics with previous counsel; review records post jail and St. Es records to prepare for meeting with Mr. Heard and consultant. |
| 09/08/04 | Moustakas, John | 7.00 | 420.00 | 2,940.00 | Review letter to Rezneck; meeting re: deposition dates; meeting w/T. Stovall; meeting w/interpreters; Meeting w/client and interpreters; Meeting; Work on tolling agreement brief. |
| 01/21/05 | Moustakas, John | 4.70 | 455.00 | 2,138.50 | Review correspondence file regarding length of time for examination of Mr. Heard; telephonic hearing with Court; call to Judge Kotelly's chambers with opposing counsel; telephone conference with District regarding dispute over terms and conditions of IME; drafting letter to opposing counsel; review written terms and conditions for IME; telephone conferences with Mr. |

| | | | | | Friedman; telephone conference with opposing counsel regarding timing of IME. |
|---|---|---|---|---|---|

These examples exemplify the difficulty the District faces. In the first example, Mr. Friedman bills eight tasks over 8.5 hours, at an average of 1.06 hours, and $515.31, per task. These tasks include discussions of bates-stamping, and reviewing chronologies and emails. It is impossible to tell whether any of these tasks were billed fairly due to the block billing. Similarly, with the second example, Mr. Friedman bills six tasks over 9.5 hours, at an average of 1.58 hours and $767.92 per task. The tasks for this day include ministerial phone calls and discussions about scanning documents. Mr. Moustakas's bills suffer similarly. In one of the above examples, Mr. Moustakas bills seven tasks over seven hours. These tasks include various meetings which do not indicate the subject matter, and, in one case, neither the subject nor the participants. These billing entries simply are woefully inadequate and not in compliance with legally recognized billing practices. The District of Columbia should not be required to compensate plaintiff's lawyers for tasks when it is impossible to discern the reasonableness of the time spent. Accordingly, the defendant requests that the court reduce the amount of requested fees by the amount that has been blocked billed.

### E. The Fee Petition is Replete with Vague Entries

1. **The description of many of the legal services provided is inadequate to determine the nature of the service and whether the service was actually necessary**

Courts require that time records submitted contain adequate detail and it goes without saying that documentation must adequately describe the legal work for which a client is being billed. *In re Sealed Case*, 890 F.2d 451, 455 (D.C. Cir. 1989) (*per curiam*). In *Sealed Case*, the

17

court reduced the award of attorney's fees due to insufficient specification of tasks. *Id.* The court noted that there were numerous instances of documentation that did not adequately describe the legal work for which the client was being billed. *Id.* For example, the court mentioned numerous instances in the records where the subject matter of a telephone call was not mentioned. *Id.* The court found that vague descriptions made it "impossible for the court to verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given legal task." *Id.* Although the court stated that this item could be denied in its entirety on this ground, it recognized that some telephone calls were necessary and merely reduced the amount requested. *Id.*

Similarly, in *In re Meese*, 907 F.2d 1192 (D.C. Cir. 1990), the court reduced an award by ten percent because the time records maintained by the fee applicants were "replete with instances where no mention was made of the subject matter of a meeting, telephone conference or the work performed during hours billed." *Id.* at 1204.

In the more recent case of *Role Models* discussed *supra,* the court also allowed the reduction of the award based upon lack of adequate detail in the time records. *Role Models,* 353 F.3d at 971. One task description form complained of was an identical one-line entry, entered on eight consecutive days, stating "research and writing for appellate brief." *Id.* Another task description found inadequate was numerous entries in which attorneys billed simply for "research" and "writing," or for time spent in teleconferences or meetings—over one hundred in total—without providing any purposes. *Id.* The court stated that "such generic entries" were inadequate to meet a fee applicant's heavy obligation to present well-documented claims. *Id.* As indicated above, vague documentation, as well as a number of other flaws, resulted in the reduction of the award by fifty percent. *Id.* at 973.

Here, as demonstrated in Exhibit 5, there are numerous examples of billing of meetings with no indication as to the substance or the participants, as well as letters and phone conversations with no indication of purpose or subject matter. As indicated in the comments section of the chart, there simply is no way for defendant to discern the nature of these charges. The District, therefore requests that the fee petition be reduced by an appropriate amount to reflect the noted deficiencies.

### 2. The Fee Petition Contains Numerous Internal "Meetings" Where All Participants Do Not Bill

A prerequisite to any successful claim is that detailed, task-specific records must be kept by counsel and other staff contemporaneously with the time expended. The time documentation "must be of sufficient detail and probative value to enable the court to determine *with a high degree of certainty* that such hours were actually and *reasonably expended." In Re Olson,* 884 F.2d 1415, 1428 (D.C. Cir. 1989), (emphasis added) (citations omitted . Properly documented time records are only the starting place for determining the hours reasonably expended and eligible for inclusion in the lodestar calculation. As previously discussed,counsel seeking a fee award must exercise billing judgment and exclude from their claim the hours which were not reasonably expended. *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C. Cir. 1980)(en banc).

In this case, as demonstrated in Exhibit 6, the billing records of plaintiff's counsels contain numerous references of an internal meeting with another member of the firm where the other member of the firm does not also document the meeting. Attorneys who have exercise billing judgment must specifically identify any hours that were excluded from a fee petition and indicate the tasks to which those hours were devoted. *Concerned Veterans,,* 675

19

F.2d at 1327-28, 1334-35; *Cook,* 609 F.Supp at1041. Counsel has attempted to demonstrate this billing judgment in their fee petition; therefore, there can be no excuse for the numerous entries of "internal meetings" of one. See Role Models 353 F.3d at 972 (entries of internal meetings of one is a defect warranting fee reduction).

The District also takes issue with the amount of internal meetings in general. Judge Charles R. Richey opined that it was improper for a defendant to "have to pay the double hourly rates for conferences between the senior and junior attorneys." *Parker v. Matthews,* 411 F. Supp. 1059, 1067 (D.D.C. 1976). The court concluded that a twenty percent across-the-board reduction of the fee award was apropriate to balance the "unexplained and apparently excessive time spent as well as for the overlapping of conference time between senior and junior attorneys." *Id.*

Similarly, in this case, not only is the District faced with numerous billing entries for "telephone conferences" with no indication as to the topic discussed, there was a great deal of internal meeting time overall. As already discussed, much of this meeting time is facially invalid, as there is a great deal of inconsistency among the timekeepers as to attendance at the meetings. However, in addition to receiving a reduction for billing related to internal meetings of one, the District submits it should not be double-billed for the meetings between senior counsel and the more junior attorneys and summer associates.

3. **District Is Entitled To a Reduction In The Fee Petition For Excessive Billing For Ministerial And/Or Administrative Tasks**

The District does not dispute that Plaintiff's counsel is entitled to compensation for legal services they provided to Plaintiff; however, those fees must be reasonable to the type of work performed. As courts have recognized, "[a] claim by a lawyer for maximum rates for

20

telephone calls with a client, legal research, a letter concerning a discovery request, the drafting of a brief, and trial time in court is neither fair nor reasonable." *Loughner v. University of Pittsburgh*, 260 F.3d 173, 180 (3rd Cir. 2001). This is because "[m]any of these tasks are effectively performed by administrative assistants, paralegals, or secretaries. As such, to claim the same high reimbursement rate for the wide range of tasks performed is unreasonable." *Id.*

Courts have found it "appropriate" when analyzing a fee petition, "to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics, and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Johnson v. Georgia Hwy Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974).

In this case, it is clear that Goodwin Proctor has plenty of clerical, secretarial, and paralegal assistance. Yet, for some reason, one of its highest timekeepers, Paul Friedman, has performed tasks such as the following:[7]

- 7/23/04: Research to locate Rebecca Troth (former DOJ OCR) and Bernie Arons (NIMH mental health expert) (left telephone voice mail messages re request for consultation) (2.3 hours, $1,131.67).

- 7/26/04: Research on legal organizations providing assistance in deaf cases (2.1 hours, $1030.65)

---

[7] The District has provided a complete breakdown of Mr. Friedman's bill at Exhibit 7. noted that most of the examples cited below are block billed, so the District has no idea how much time Mr. Friedman really spent on some of these non-legal tasks.

21