# EXHIBIT 1

## Identity of Legal Arguments
## Regarding Hourly Rates in
## *Ricks* and *Heard*

**Excerpt from**
**District's Fee Opposition**
**In *Ricks* Regarding**
**Goodwin Procter's Hourly Rates**

Attorney's Office *Laffey* Matrix, which is attached hereto. The *Laffey* hourly rate for attorneys with 1-3 years' experience in an area of law for the years 2005 through 2006 is $195.00 per hour. Mr. Moustakas and Mr. Huitema should be held to this hourly rate.

### 1. This Area of Law Is Outside of Plaintiff's Counsel's Usual Field of Practice and Therefore Does Not Justify Their High Hourly Rate

In determining an appropriate hourly rate, courts reviewing a § 1988 fee petition utilize a "market rate" analysis. Reasonable fees under § 1988 are to be calculated according to the prevailing market rate in the relevant community. *Blum v. Stenson,* supra., at 895. Thus, prevailing parties must offer evidence to demonstrate "their attorney's experience, skill, reputation and the complexity of the case" and "must produce data concerning the prevailing market rate in the relevant community for attorneys of reasonably comparably skill, experience and reputation." *Covington v. District of Columbia, supra.*, at 1108 (D.C. Cir. 1995).

In *Kattan,* a prevailing plaintiff in a case brought pursuant to the Education for All Handicapped Children Act (EHC) appealed the trial court's reduction of the hourly fee claimed by plaintiff's counsel in the fee petition. In affirming the hourly rate reduction, the court noted with approval that the trial court's setting of an appropriate hourly rate was based in part upon "reports of similar cases in which fees were awarded for similar work." *Kattan, supra.*, at 278. In other words, in setting an hourly rate, the court required information as to the hourly rate approved in other EHC cases. *See also Save Our Cumberland Mountains Inca v. Hodel, supra,* at 1521 (D.C. Cir. 1988) (fee award should compensate attorneys at rates commensurate with attorneys doing the same sort of work in same area).

In *Buffington v. Baltimore County,* 913 F.2d 113 (4th Cir. 1990), a prevailing party in a

§ 1983 case provided the trial court with information regarding the market rates that its attorneys charged private clients as well as the hourly rates charged by other large firms in the city of Baltimore. On appeal, the court held that such information did not provide the court below with sufficient information to set an hourly rate, because plaintiff had not provided the court with specific information as to the rates charged and ultimately approved in other § 1983 cases. *Id.* at 129. *See also Beard v. Teska,* 31 F.3d 942 (10th Cir. 1994) (market rate in IDEA case is the market rate in IDEA cases not what attorney charged in other types of cases).

Plaintiff's fee petition attempts to establish a market rate for what it terms "complex federal litigation." Plaintiff's methodology for establishing such rates is to inform the court of the fees that it charges for "litigation" and also provide the court with information as to the general hourly fees charged by a number of large law firms in the District of Columbia. Such a methodology is too broad and should have been far more refined to include information as to hourly fees that have been claimed in § 1983 cases *See Kattan v. District of Columbia,* 995 F.2d 274 (D.C. Cir. 1993). Moreover, although this fact is glossed over by plaintiff, John Moustakas, lead counsel in this case, had little or no civil litigation experience before commencing the litigation of the case at bar. Mr. Moustakas has not been involved in civil litigation in this courthouse. Mr. Moustakas lacks civil experience; he has spent most of his career in criminal law.

The issue before that court is the appropriate level of compensation in this particular § 1988 case. *See,* e.g., *Buffington v. Baltimore County,* 913 F.2d 113 (4t$^{\text{h}}$ Cir. 1990) (issue is not general experience and skill of counsel but rather particular experience of counsel in civil rights cases); *Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir. 1983) (hourly rate in §1983 case should be based upon lawyer's experience in civil rights or analogous cases).

### 2. At a Minimum, the Plaintiff's Attorney's Fees Should Be Reduced to the *Laffey* Matrix.

Given that plaintiff has not provided the court with information concerning the hourly rates awarded in § 1983 cases, the court should utilize the *Laffey* Matrix in establishing an hourly rate for plaintiff's counsel.[5] *District of Columbia v. R.R.* 2005 WL 2461899 (D.D.C. Oct. 6, 2005) (court relies upon *Laffey* Matrix as prevailing community rate and reduces requested hourly rate to that level); *Watkins v. Vance,* 328 F.Supp.2d 23 (D.D.C. 2004) (prevailing market rate is *Laffey* rate and any request in excess of that amount will be reduced accordingly); *Blackman v. District of Columbia,* 59 F.Supp.2d 37 (D.D.C. 1999) (same).

Plaintiff's counsel should be held to the *Laffey* matrix. They have not justified why, given the facts of this case, they should be allowed to bill higher. The *Laffey* rate is $195 per hour for both Mr. Moustakas and Mr. Huitema, whereas their requested rate is $365.00 for Mr. Huitema and $475.00 for Mr. Moustakas. They have not presented any set of facts which justify a higher rate for them.

### B. The Number of Hours Billed by Plaintiff's Counsel, Paralegals and Law Clerks on Each Item Is Excessive

Plaintiff's counsel have provided an excessive number of hours per each item given the experience they claim to have. Further, the total number of hours spent on this case by plaintiff's attorney's is incredible given how little written work was actually done.

These records on pages 1 and 2 of Exhibit G reveal excessive billing regarding the issue of post and forfeit:

- Mr. Huitema's billing on the sole issue of "post and forfeit" for the dates June 2, 3, 5, 6, 8, 9, 16, 21 and 23, 2005 and July 1, 2005 total 30.6 hours for a total billing of $9,164.50.

**Excerpt from**
**District's Fee Opposition**
**In *Heard* Regarding**
**Goodwin Procter's Hourly Rates**

In the case at bar, the affidavits provided by attorneys Stoval and Jones are utterly lacking in any detail from which the court could conclude that the hours that they expended are reasonable. The affidavits are devoid of such basic information as the subject matter of research, the identities of persons who were interviewed and the amount of time that was allegedly spent on each task. Consequently, the court lacks sufficient information from which it could conclude with the necessary "high degree of certainty" that the request is reasonable. *See In re Donovan*, 877 F.2d 982, 995 (D.C. Cir. 1989)

More importantly, it is a dubious proposition that any of the alleged research, document review and investigation conducted by attorneys Stoval and Jones had any value to the case. It is evident from a review of the fee petition that the firm of Goodwin and Proctor essentially started from square one upon entering the case. There is absolutely no indication that any of the alleged research, document review or interviews purportedly conducted by attorneys Smith and Jones were somehow incorporated into the efforts of Goodwin and Proctor. See Moustakas Declaration ¶132. It would be manifestly unjust to require the District of Columbia to compensate attorneys Stoval and Jones for work that never advanced the litigation of this case.[1]

### The Hourly Rate of Goodwin and Proctor Attorneys, Paralegals and Law Clerks should be Reduced to the Rates of the Laffey Matrix

In determining an appropriate hourly rate, courts reviewing a §1988 fee petition utilize a "market rate" analysis. Reasonable fees under §1988 are to be calculated according to the prevailing market rate in the relevant community. *Blum v. Stenson,* 465 U.S. 886, 895 (1984). Thus, prevailing parties must offer evidence to demonstrate "their attorney's experience,

---

[1] If the court is of a mind to award a reduced amount to the terminated attorneys, defendant suggests that the award be limited to a total amount of $16,000 to be divided by the attorneys based upon 20 hours to file the complaint, 20 hours to file an opposition, 20 hours to review records and 20 hours of interviews at $200.00 per hour. Even this limited amount is overly generous because the attorneys have not demonstrated entitlement to fees at all.

skill, reputation and the complexity of the case" and "must produce data concerning the prevailing market rate in the relevant community for attorneys of reasonably comparably skill, experience and reputation." *Covington v. District of Columbia 57* F.3d 1101, 1108 (D.C. Cir. 1995).

Plaintiff's fee petition attempts to establish a market rate for what it terms "complex federal litigation." Fee petition p.4. Plaintiff's methodology for establishing such rates is to inform the court of the fees that it charges for "litigation" and also provide the court with information as to the general hourly fees charged by a number of large law firms in the District of Columbia. Such a methodology is too broad and should have been far more refined to include information as to hourly fees that have been claimed in § 1983 cases *See Kattan v. District of Columbia,* 995 F.2d 274 (D.C. Cir. 1993).

In *Kattan*, a prevailing plaintiff in a case brought pursuant to the Education for All Handicapped Children Act (EHC) appealed the trial court's reduction of the hourly fee claimed by plaintiff's counsel in the fee petition. In affirming the hourly rate reduction, the court noted with approval that the trial court's setting of an appropriate hourly rate was based in part upon "reports of similar cases in which fees were awarded for similar work." *Kattan,* 995 F.2d at 278. In other words, in setting an hourly rate, the court required information as to the hourly rate approved in other EHC cases. *See also Save Our Cumberland Mountains Inc. v. Hodel*, 857 F.2d 1516, 1521 (D.C. Cir. 1988) (fee award should compensate attorneys at rates commensurate with attorneys doing the same sort of work in same area).

In *Buffington v. Baltimore County*, 913 F.2d 113 (4th Cir. 1990), a prevailing party in a §1983 case provided the trial court with information regarding the market rates that its attorneys charged private clients as well as the hourly rates charged by other large firms in the city of

9

Baltimore. On appeal, the court held that such information did not provide the court below with sufficient information to set an hourly rate, because plaintiff had not provided the court with specific information as to the rates charged and ultimately approved in other §1983 cases. *Id.* at 129. *See also Beard v. Teska*, 31 F.3d 942 (10th Cir. 1994) (market rate in IDEA case is the market rate in IDEA cases not what attorney charged in other types of cases).

Moreover, although this fact is glossed over by plaintiff, John Moustakas, lead counsel in this case, had little or no civil litigation experience before commencing the litigation of the case at bar.[2] One of the initial time entries in the invoice of Goodwin and Proctor is an entry on Jan. 2, 2004, for time expended in obtaining an "ECF" registration for Mr. Moustakas that would allow him to file documents electronically in this court. Evidently, prior to that date, Mr. Moustakas had not been involved in civil litigation in this courthouse.[3]

Similarly, the §1983 experience of Adam Chud is unclear. It is claimed that he has "experience" in civil rights litigation. Aldock Declaration ¶ 27. However, specifics as to this experience are noticeably absent. On the same note, there is no doubt that Paul Friedman is an outstanding member of the bar but as discussed below the tasks that he covered in this particular case are not on a par with his accomplishments in other cases. As argued below, many of his tasks in this particular case simply do not command the premium billing rate that he requests. See Section E.3 *infra.*

The District of Columbia in no way means to imply that Goodwin Proctor attorneys are anything other than first rate attorneys. The issue before that court, however, is not whether

---

[2] Lack of civil experience on the part of Mr. Moustakas who has spent most of his career in criminal law may well be the reason that plaintiff attempts to define the relevant market as "federal litigation" as opposed to "federal civil litigation."

[3] This may explain why it took 45 minutes on 12/31/03 for his firm to file electronically a notice of appearance on his behalf, an event that should have taken no more than two minutes to accomplish.

counsel are first rate but what is the appropriate level of compensation in this particular case. *See Buffington v. Baltimore County*, 913 F.2d 113 (4th Cir. 1990) (issue is not general experience and skill of counsel but rather particular experience of counsel in civil rights cases); *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983) (hourly rate in §1983 case should be based upon lawyer's experience in civil rights or analogous cases).

Given that plaintiff has not provided the court with information concerning the hourly rates awarded in § 1983 cases, the court should utilize the Laffey Matrix[4] in establishing an hourly rate for plaintiff's counsel.[5] *District of Columbia v. R.R.* 2005 WL 2461899 (D.D.C. Oct. 6, 2005) (court relies upon Laffey Matrix as prevailing community rate and reduces requested hourly rate to that level); *Watkins v. Vance*, 328 F.Supp.2d 23 (D.D.C. 2004) (prevailing market rate is Laffey rate and any request in excess of that amount will be reduced accordingly); *Blackman v. District of Columbia,* 59 F.Supp.2d 37 (D.D.C. 1999) (same).

Defendant has recalculated Goodwin and Proctor's fee utilizing the Laffey Matrix. See Exhibit 2.

---

[4] The use of the Laffey Matrix in fee litigation in the District of Columbia can be traced to the case of *Laffey v. Northwest Airlines, Inc.,* 572 F. Supp. 354 (D.D.C. 1983) aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir 1984) cert. denied 472 U.S. 1021 (1985), In *Laffey,* the court recognized that the matrix was developed to reflect rates charged by attorneys with exceptional experience, expertise and reputations. The court stated that the matrix developed in that case was designed to reflect rates paid to attorneys of prominence and ability in premier firms. *Laffey,* 572 F. Supp. at 372. Since 1983, the Civil Division of the United States Attorney's Office for the District of Columbia has updated the matrix to reflect increases in the cost of living. The current Laffey Matrix is provided to the court as Exhibit 9.

[5] Although plaintiff is entitled to bill time for law clerks and paralegals, plaintiff has not provided any justification for billing them out at rates in excess of the Laffey Matrix.