UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAFAYETTE RICKS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MPD OFFICER TOMMY BARNES ) | Civil Action No.: 05-1756 HHK/DAR |
| ) | |
| *and* ) | |
| ) | |
| THE DISTRICT OF COLUMBIA ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS SUPPLEMENTAL MOTION
FOR AN AWARD OF ATTORNEYS' FEES AND POST-JUDGMENT INTEREST**

Ignoring its own responsibility for the amount of fees incurred in this case, Defendant District of Columbia once again asks this Court to relieve it of the consequences of its obdurate and dilatory litigation conduct and to shift the very real costs of that conduct to those forced to persistently battle against it: Mr. Ricks' lawyers. Specifically, the District complains about the hourly rates of the Goodwin Procter lawyers who opposed it and the number of hours they spent doing so. Because both the rates and number of hours spent were reasonable under the circumstances, the Supplemental Fee Petition should be granted in full.

**A.  Goodwin Procter's Usual and Customary Hourly Billing Rates are Reasonable**

In connection with the Fee Petition we have established, by means dictated by Circuit precedent, that (1) the rates charged in this case are Goodwin Procter's usual and customary rates; (2) counsel engaged in the representation of Mr. Ricks were skilled, experienced, and

enjoyed a good reputation; and (3) the billing rates for the Goodwin Procter lawyers who represented Mr. Ricks were in line with, or lower than, the billing rates of attorneys at comparable District of Columbia law firms engaged in similar caliber practices. Nothing about that showing has changed. As it initially failed to do, the District once again has failed to cast any doubt on these facts.

What *has* changed is that the District is now collaterally estopped from arguing that the Goodwin Procter lawyers are not entitled to their usual and customary hourly rates for federal civil rights cases because that issue has been actually litigated by the District and decided against it. Both in *Heard* and in this case, the District contested those hourly rates on two grounds: (1) that Mr. Moustakas' legal experience was criminal and not primarily civil (or rooted in civil rights litigation); and (2) that the relevant legal market is not complex federal litigation, but only § 1983 (or federal civil rights) cases. In other words, in both cases the District took the position that, although the Goodwin Procter lawyers who handled these cases were entitled to their usual and customary hourly rates in cases involving complex federal litigation, they were not entitled to those same rates in federal civil rights cases as to which they did not separately establish sufficient expertise. See Exhibit 1.[1]

It is well-settled that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies." *Montana* v. *United States*, 440 U.S. 147, 153 (1979). The District plainly put a question or fact distinctly in issue when it asked the Court to rule that

---

[1] Exhibit 1 constitutes excerpts from the District's Fee Oppositions in both *Ricks* and *Heard* respectively. Almost entirely verbatim copies of one another, each excerpt is taken from the District's arguments that the Goodwin Procter lawyers are not entitled to their usual and customary hourly rates because their expertise is in **complex federal litigation,** but not *federal civil rights litigation.* For the Court's convenience, the verbatim (or nearly verbatim) passages are bracketed and numerically correlated to demonstrate the identity of arguments made in both cases.

the Goodwin Procter lawyers' expertise in complex federal litigation did not qualify them for full-rate fees as to federal civil rights litigation. That argument was rejected and the Goodwin Procter lawyers were entitled to receive their usual and customary rates without regard to any failure to establish an expertise in federal civil rights litigation. Moreover, that question was not only resolved by a court of competent jurisdiction, it was resolved by this very Court.[2] Since Goodwin Procter is not only its clients' "privy" and agent, but also the real party-in-interest in the subsequent fee litigation, the *Heard* Court's rejection of the District's argument for denying Goodwin Procter its hourly rates cannot be disputed by the District in this case.[3] Even if it were not collaterally estopped, the rejection of the District's same argument in *Covington* v. *District of Columbia*, 57 F.3d 1101, 1103 (D.C. Cir. 1995) would, as a matter of legal precedent, compel the same result in this case that the *Heard* court reached.

Recognizing that the identity of its legal arguments on hourly rates in *Heard* and *Ricks* is fatal, the District attempts to recast that argument in its Opposition to the Supplemental Fee Petition. But no amount of creative re-writing can hide the undeniable fact – powerfully illustrated in Exhibit 1 hereto – that the District's arguments in both cases were identical. The District's self-serving attempt to distinguish *Heard* from *Ricks* by re-labeling the former a "complex federal constitutional case" and the latter "a simple false arrest case" is nothing more than that.

*Heard*, according to the District's lawyers in that case, was a regrettable, but simple, overdetention case. In fact, both cases are federal constitutional cases and both involved

---

[2] By failing to object to the Magistrate's ruling in this regard, it not only became part of the District Court's ruling, but it became entirely insulated from appeal. As such, it also has the requisite finality essential to preclusion.

[3] Given the Supreme Court's recognition of offensive collateral estoppel, even if Goodwin Procter was not its clients' privy it could invoke the *Heard* decision to preclude the District's hourly rate argument in this case. See *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 331 (1979).

sufficient analytical nuances to qualify them as far from run-of-the-mill. Indeed, the federal claims in *Ricks* are considerably more novel and creative than the those made in *Heard*. As we noted in the initial Fee Petition, this appears to be the very first Fifth and Eighth Amendment challenge to the MPD's implementation of "post and forfeit" regime. Thus, there is no legitimate basis for recharacterizing these cases as simple now.

### B.  The Number of Hours Spent by the Goodwin Procter Lawyers was Reasonable

The District intemperately attacks the hours claimed in the Supplemental Fee Petition as "exaggerated," "blatantly excessive," "outrageous," "another gross exaggeration," "exorbitant, " and a "preposterous amount." Baseless and incendiary, these labels are meant to be a substitute for the substance that the District's position lacks. In short, they are simply designed to distort and conceal the inexorable truth that it is the District's own obdurate litigation conduct that is responsible for the amount of fees incurred in this case. Playing fast and loose with the facts, the District implies that counsel merely filed three documents in this case, despite its knowledge that triple the number of filings were made by plaintiff in this case, including a complaint asserting containing novel constitutional claims on which plaintiff ultimately prevailed, an entirely successful Opposition to the District's Motion to Dismiss,  a 115-page, detailed fee petition, a detailed Fee Reply, responding to each and every argument conjured up by the District, a Supplemental Fee Petition, and now a Supplemental Fee Reply.

The District takes exception to the time counsel spent on three (3) separate briefs:  (1) 20.5 hours on one day on Fee Petition (rather than the 10.25 it deems reasonable); (2) 8.8 hours on the 6-page Opposition to Defendant's Motion for Extension of Time (rather than the roughly 2.9 it deems reasonable); and (3) 30.9 hours on the 15-page Reply to the District's Opposition to the Fee Petition (rather than the roughly 7.75 hours it deems reasonable). As we have previously

4

indicated, once plaintiff has substantiated his fee request with billing records and other evidentiary support, "the burden . . . then shifts to the party opposing the fee award, who must submit the facts and detailed affidavits to show why [the fee] request should be reduced or denied." *Nat'l Ass'n of Concerned Veterans* ("*NACV*"), 675 F.2d 1319, 1337-1338 (D.C. Cir. 1982) (Tamm, J., concurring); *Lucas* v. *White*, 63 F.Supp. 2d 1046, 1057 (N.D. Cal. 1999)(fee opponent has "burden of rebuttal" to submit evidence challenging "accuracy and reasonableness of the hours charged" or the facts asserted by prevailing party ).  Moreover, our courts and others have made clear that generic objections and conclusory allegations do not warrant a reduction in fees.  See *NACV*, 675 F.2d at 1338 ("[A]n opposing party does not meet his burden merely by asserting broad challenges to the application."); *Holbrook* v. *District of Columbia*, 305 F. Supp. 2d 41, 46 (D.D.C. 2004); *Lucas*, 63 F. Supp.2d at 1057-58.

      The District's conclusory allegations come nowhere close to meeting this standard.  It makes no effort whatever to indicate what portions of these motions were unnecessary, overwritten, or gratuitous.  Nor does it point to any authority supporting its position that the amount of time spent by counsel on these motions or opposition was unreasonable.  We, on the other hand, have cited Judge Kotelly's recent decision in *Heard* rejecting the notion that similar expenditures of time drafting briefs were reasonable.

      There is nothing surprising about two lawyers working on a 115-page Fee Petition and attachments on the day of its filing.  There is simply no basis to believe that this detailed and crucial filing could have been done in half the time.  Exhorted by the caselaw to provide robust detail and explanation and to categorize hours by task, counsel should not be punished for working diligently to meet that standard.

Nor was it unreasonable to spend 8.8 hours on an opposition to a late-filed motion for extension to respond to the Fee Petition.[4] Although the District misleadingly refers to the opposition as 6 pages long, it also contained a 6-page declaration that recounted a long chronology. It attached many letters which established that chronology, all of which had to be carefully reviewed. In any case, since preventing the District from lodging an out-of-time opposition to the Fee Petition would have avoided the need to file a Fee Reply and would have significantly truncated the Supplemental Fee Petition, the time spent on that filing was manifestly appropriate. The notion that this could have been accomplished in less than three hours is nonsense. That may be how the District prepares its cases, but not how careful counsel diligently protecting a client's interests and seeking to vindicate his constitutional right ought to behave.

Finally, there is nothing untoward about spending 30.9 hours on a 15-page Fee Reply and preparing and/or editing the attached exhibits. The assertion that this brief could have been drafted and edited in less than 8 hours is utterly specious. The Fee Reply was plaintiff's first opportunity to respond to the District's newly-revealed arguments for slashing legal fees. Attempting to generate a quality piece of legal writing that persuasively addresses all of these new arguments in less than a business day is unimaginable. Indeed, the District's need for more than triple the allotted time to prepare its opposition – its response to plaintiff's fee arguments –

---

[4] The District also claims that counsel spent an additional 14.8 hours considering the District's motion to extend the time for filing an opposition to the Fee Petition. The District has wrongly included time counsel spent on investigating the possibility of seeking a default judgment against the District, communicating with Mr. Ricks, meeting and conferring with District counsel, and working on the Opposition itself. By our account, the number is about 9.3 hours. Moreover, the District ignores the fact that some of that time was spent drafting an opposition to the initial request for an extension that was mooted by the Magistrate's *sua sponte* denial of the request.

demonstrates the hypocrisy of the District's position that our reply could have been completed in less than 8 hours.[5]

The District also attacks 3.4 hours spent researching and conferring about how to enforce the judgment in this case, curiously contending that "there was no indication 15 days after the judgment that plaintiff would have to move to enforce the judgment." This attack also corresponds to the District's argument that, since it had no deadline by which to pay the judgment in this case, any delay alleged by plaintiff is "imaginary." Consistently forced to respond to utterly specious claims, it is no wonder that the fees in this case weren't considerably higher. Under Fed. R. Civ. P. 62(a), a party has 10 days to pay a judgment, presumably unless the parties agree that more time will be given. In the absence of any such agreement in this case, it is indisputable that the District's payment was delinquent by February 23, 2006. Thus, a *de minimis* amount of time investigating the possibility of seeking to enforce that delinquent judgment on February 28, 2006 was plainly proper – especially where counsel failed to return several calls as to the whereabouts of the judgment and plaintiff was in dire financial straits. To the extent that opposing counsel's failure to return calls is at the heart of why additional fees were incurred, it will not have been the first time that happened and it is plainly a problem of the District's own making.

---

[5] Assuming that we professionals are doing more than paying lip service when we acknowledge the dedication, patience and hard work that producing quality legal briefs and other work takes, it is surely in the District's interest to create incentives for the lawyers to fall short. The more careless our work, the more likely our opponent is to prevail. But that is not in our client's interest; nor is that the law. We are expected to treat *pro bono* clients no differently than our own paying clients. And fee opponents are not permitted to hold counsel to the minimal standard of competence necessary to get by so that they avoid paying for any unnecessary expenditures of effort; after all, they (not we) are the adjudged wrongdoers and civil rights violators. As one court aptly put it, "[w]hile hindsight may demonstrate that victory could have been achieved with somewhat less preparation, it should not be used to unfairly second-guess a prudent attorney taking reasonable steps to assure success of a strong case. There are many potential mishaps that can occur and undermine even a strong and simple case. I find that plaintiff's extensive efforts were reasonable." *Burlingame* v. *Sears, Roebuck & Co.*, 1997 U.S. Dist. LEXIS 16229, at *27 (E.D. Mich. 1997).

The District objects to 10.4 hours spent arranging for financing for Mr. Ricks to replace the judgment that the District illegally withheld from him for some 7 months. We have recently learned that the professed inability of the District to pay this judgment because of a depletion of the judgment fund was overstated. A senior OAG official has recently conceded that a depletion of the judgment fund does not prevent the District from paying its judgment as the Mayor is authorized to take available money from other sources to pay judgments. If this is incorrect, the District should put in an affidavit saying so. Moreover, for the reasons we previously stated, we believe that any depletion was the result of counsel's own negligent failure to arrange for prompt payment. Fees incurred working to collect fees are plainly recoverable under § 1988. Since litigating the issue of the defaulted judgment would have cost the District far more and since the need to intervene in Mr. Ricks' situation to keep him financially afloat was caused by the District's conduct, it, not counsel, should bear the expenses it caused to be incurred.

The fees in this case are not a function of overlitigation. Goodwin Procter's fee-paying clients – who are by and large sophisticated consumers of legal services – routinely pay more than 99% of the actual hours it bills. See Fee Reply in *Heard* v. *District of Columbia, et al.*, Civ. No. 02-296 (CKK), [Docket No. 173], Exhibit R at ¶ 13. As such, it belies any inference that the firm's lawyers do not bill their time for legal services appropriately. Instead, the amount of fees in this case was largely a function of the way the District chose to litigate the case. It was the District's insatiable appetite for extensions of time to which Mr. Ricks objected that compelled us to respond. It was the District's specious claims that required us to correct the record. It was the District's failure to timely satisfy the judgment against it – exacerbated by counsel's refusal to respond to calls to explain the failure – that caused counsel to incur fees weighing Mr. Ricks options when he faced return to the streets.

This conduct adds to the expense, and candidly to the unpleasantness, of litigation. Full fee awards are necessary to bring home to civil rights violators the entire social costs of their unconstitutional conduct and the litigation tactics they employ to defend them. As Congress has recognized, "if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must recover what it costs to vindicate these rights in court. S. Rep. No. 94-1011, at 2 (1976). That is all we seek here. Despite implying that Mr. Ricks' case was insignificant, its Offer of Judgment tells a very different story. In relative terms, the District settled this case for a very high-dollar value. That value was derived from the diligent means by which the case was litigated. For that, we respectfully submit, counsel is entitled to the entire fee (already reduced by an exercise of billing discretion) claimed.

        Respectfully submitted,

        /s/
        John Moustakas (DC Bar # 422076)
        Miriam Cho (DC Bar # 495136)
        Goodwin | Procter LLP
        901 New York Avenue, NW
        Washington, DC 20001
        (202) 346-4000
        (202) 346-4444 (fax)

        Arthur B. Spitzer (DC Bar #235960)
        Frederick V. Mulhauser, (DC Bar # 455377)
        American Civil Liberties Union
          of the National Capital Area
        1400 20th St., NW, Suite 119
        Washington, DC 20036
        (202) 457-0800
        (202) 452-1868 (fax)

        Attorneys for Lafayette Ricks

October 13, 2006