UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAFAYETTE RICKS, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 05-1756 (HHK) |
| ) | |
| v. ) | |
| ) | |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT DISTRICT OF COLUMBIA'S OBJECTION TO THE REPORT
AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Defendant District of Columbia ("District"), by and through its undersigned counsel, respectfully requests *de novo* review, pursuant to Fed. R. Civ. P. 72 and LCvR 72.3, of Magistrate Judge Robinson's Report and Recommendation regarding Plaintiff's Motion for Attorney's Fees. The District submits that the Magistrate Judge's recommendation that the Court award attorneys' fees and costs in the amount of $130,721.90 is clearly erroneous in that Plaintiff's counsel's hourly rates are excessive and not in conformance with the rates typically awarded in this jurisdiction for similar work, and that the amount awarded is not justified by the work performed in this case.

**I.    PROCEDURAL BACKGROUND**

On September 2, 2005, Plaintiff filed a Complaint against the District and Metropolitan Police Department Officer Tommy Barnes alleging false arrest, assault and battery, and violation of 42 U.S.C. § 1983, generating from Plaintiff's arrest for disorderly conduct. *See generally* Compl. On September 28, 2005, the District moved the Court for additional time to file a response to the Complaint, which the Court granted

over Plaintiff's objection. Defendants filed an Answer and Partial Motion to Dismiss on October 28, 2005. Plaintiff filed an Opposition to the Motion on November 8, 2005. On November 21, 2005, the Court denied Defendants' Motion. Defendants thereafter filed their Answer to the remaining counts. On December 22, 2005 the Court set an Initial Scheduling Conference for April 12, 2006.

On December 2, 2005, the District served an Offer of Judgment on Plaintiff, which Plaintiff accepted on December 15, 2005, before either party had engaged in any discovery at all. On February 1, 2006, the District filed a Notice of Acceptance of an Offer of Judgment in the amount of $32,000, and judgment in that amount was entered against the District in favor of Plaintiff on February 13, 2006.

On February 27, 2006, Plaintiff filed a Motion for Attorney Fees requesting $84,002.50 in attorneys' fees and costs for the work described above: essentially, the filing and serving of a Complaint, drafting a brief opposition to a motion to dismiss, and accepting an offer of judgment. *See* Pl.'s Mot. for Award of Attorneys' Fees & Costs Pursuant to Fed. R. Civ. P. 54(d) ("Pl.'s Mot."). The Court referred Plaintiff's fee request to Magistrate Judge Robinson. Plaintiff thereafter filed a Supplemental Motion for Award of Attorneys' Fees and Costs Pursuant to Fed. R. Civ. P. 54(d) and Post-Judgment Interest Under 28 U.S.C. § 1961 ("Pl.'s Supp. Mot."), requesting an additional $50,638.78 in attorneys' fees and costs primarily relating to counsel's fee petition, and post-judgment interest. This brought the total fee request to $134,641.28 – over $100,000 the actual judgment to Plaintiff.

Judge Robinson issued a Report and Recommendation, recommending that the Court award Plaintiff $130,721.90 in attorneys' fees and costs and post-judgment interest.

The District submits that the magistrate judge's recommended amount is excessive for work that comprised drafting only a complaint, one substantive opposition memoranda, and a fee petition. Moreover, counsel's requested hourly rates are in excess of rates typically awarded for similar work in this jurisdiction.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 72(b) permits a party to "serve and file specific, written objections to the proposed findings and recommendations" of a magistrate judge. Fed. R. Civ. P. 72(b). When encountering such an objection, "[t]he district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made . . ." *Id.*

The Civil Rights Attorney's Fee Awards Act of 1976 provides, in pertinent part, that "[i]n any action or proceeding to enforce a provision of section 1981, 1982, 1983, 1985, and 1986 of this title . . . a court in its discretion may allow the prevailing party . . . a *reasonable* attorney's fee as part of the costs." 42 U.S.C. § 1988 (emphasis added). Once a party is determined to qualify as a prevailing party, courts employ the lodestar method of calculating a reasonable fee award by determining the number of hours reasonably expended and multiplying such hours by a reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980). The district court . . . should exclude from this initial fee calculation hours that were not 'reasonably expended' on this litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

A reasonable fee "is one that is 'adequate to attract competent counsel, but . . . [that does] not produce windfalls to attorneys.'" *Blum,* 465 U.S. at 897, quoting S. Rep. No. 94-1011, p. 6 (1976). Indeed, Courts have an "obligation to scrutinize the hours spent preparing the fee petitions to insure that the total is reasonable and that it does not represent a windfall for the attorneys." *Farris v. Cox*, 508 F. Supp. 222, 226 (N.D. Cal. 1981).

Here, the District does not dispute that Plaintiff is a prevailing party under § 1988. The District does contest Plaintiff's position that his counsel's rates are reasonable and that the number of hours counsel devoted to this case are reasonable.

### III.   ARGUMENT

#### A.  Counsel's Hourly Rates Are Not Reasonable

Plaintiff's counsel have submitted a fee request that seeks compensation at an hourly rate well above that which is typically awarded to counsel in similar types of litigation. The District requests that the Court reduce Plaintiff's counsel's hourly rate to conform to precedent in this jurisdiction.

##### 1.   The United States Attorney's Office *Laffey* Matrix Should Set the Rates for Most Professionals in This Case[1]

Magistrate Judge Robinson erred in finding Goodwin Proctor's customary hourly rates reasonable, and in awarding ACLU counsel rates in accordance with a matrix developed by Ohio economist Michael Kavanaugh ("Kavanaugh Matrix"). Report & Recommendation ("R&R") at 9-10. Rather, all of Plaintiff's professionals, with the exception of Ms. Cho, should be awarded fees in accordance with the United States

---

[1] The District excludes fees for Ms. Cho from this argument as Plaintiff has failed to make the requisite showing that Ms. Cho should be compensated at Laffey rates as explained below in Section III.A.2.

4

Attorney's Office Matrix ("USAO Matrix"), last updated on April 13, 2007 and attached hereto as Exhibit 1.

Plaintiff submits that the Court should apply the Kavanaugh Matrix to set the fees for ACLU lawyers Arthur Spitzer and Fritz Mulhauser, and for ACLU paralegal Jessica Langley, arguing that courts in this jurisdiction have accepted the Kavanaugh Matrix "as the correct current measure of prevailing market rates in the market for complex federal litigation." Pl.'s Mot., Mem. in Supp. at 7. Plaintiff asserts that the Kavanaugh Matrix "is a superior measure of the appropriate billing rate for the ACLU lawyers because it is based on the legal services component of the Consumer Price Index, rather than the more generalized, over-inclusive "other goods and services" category in the Consumer Price Index." *Id.* at 7 n.8. In further support of the Kavanaugh Matrix, Plaintiff offers a declaration prepared by the Matrix's author attesting to why he believes his matrix is superior to the USAO Matrix. *See* Pl.'s Mot., Spitzer Decl. Ex. 1.

The D.C. Circuit, sitting *en banc,* has recognized the USAO Matrix as evidence of the prevailing market rate for attorney's fees in the Washington, D.C. metropolitan area. *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). Plaintiff cites to only three district court decisions in this jurisdiction where judges apparently have applied the Kavanaugh Matrix. *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 14 (D.D.C. 2000) (Kessler, J.); *Muldrow v. Re-Direct, Inc.*, 397 F. Supp. 2d 1, 3 n.3 (D.D.C. 2005) (Huvelle, J.); *Brown v. Barnhart,* 2005 U.S. Dist. LEXIS 23212 (D.D.C. Oct. 12, 2005) (Sullivan, J.). However, even these cases did not result in the windfall Plaintiff seeks here. In *Brown*, while Judge Sullivan cited to *Salazar,* Judge Sullivan approved a rate of $75 per hour for student work, which falls well within the

guidelines of the USAO Matrix. Additionally, in *Muldrow*, Judge Huvelle reduced the rates set forth in the Kavanaugh Matrix by 25%, observing:

> a more troubling issue is whether these extreme high-end fees should apply in what is in essence a relatively straightforward negligence suit. Although plaintiff brought a § 1983 claim, as defendant points out (Opp'n at 3), plaintiff presented essentially the same evidence in support of her § 1983 and negligence claims. Furthermore, the case involved a single plaintiff and a single defendant; there were few pre-trial motions; the case was not vigorously litigated by defendant; and plaintiff's attorneys had already thoroughly investigated defendant in a prior case that raised similar issues. These factors all distinguish this lawsuit from the type of case in which *Laffey* fees are typically awarded.

*Muldrow*, 397 F. Supp. 2d at 4. Indeed, Judge Huvelle's analysis bears striking similarities to this case presently before the Court.

Thus, courts in this jurisdiction have approved the use of the USAO Matrix "as the benchmark for 'reasonable fees.'" *Id*. at 3. Plaintiff's counsel should be denied the significant premium over the USAO Matrix that they seek because the decisions, which permitted the rates from the Kavanaugh Matrix, were based on significant evidentiary records. The parties in those cases presented the court with an evidentiary basis for awarding an hourly fee higher than that used in the USAO Matrix. In this case, we have only a complaint, an answer, a motion to dismiss, and an opposition to that motion. The Court, therefore, should rely upon the USAO Matrix. *See McDowell v. District of Columbia*, 2006 U.S. Dist. LEXIS 46371, 4-5 (D.D.C. 2006).

Moreover, unlike the Kavanaugh Matrix, the USAO Matrix has repeatedly and consistently been applied in the majority of fee petition cases before this Court. *See e.g. Interfaith Comty. Org. v. Honeywell Int'l*, 426 F.3d 694, 709 (3d Cir. 2005) (observing that "numerous courts in the District of Columbia have upheld the U.S. Attorney's Matrix as a reasonable measure of billing rates."); *Hansson v. Norton*, 411 F.3d 231, 236 (D.C.

6

Cir. 2005) ("[Appellant] acknowledges that the 'reasonable hourly rate' is guided by the Laffey matrix prepared by the U.S. Attorney's Office."); *Jane Does I, II, and III v. District of Columbia*, 448 F. Supp. 2d 137, 140 (D.D.C. 2006) (Urbina, J.) ("attorneys' fees in civil rights actions in this Circuit are reasonable if they conform to the *Laffey* Matrix created by the United States Attorneys' Office."); *University Legal Services Protection & Advocacy, Inc. v. Kinsley*, 2006 U.S. Dist. LEXIS 89140 (D.D.C. Dec. 11, 2006) (Walton, J.) ("courts in this jurisdiction typically use what is called the 'Laffey Matrix' as the basis for determining the reasonable hourly rate."); *District of Columbia v. R.R.,* 390 F. Supp. 2d 38, 41 (D.D.C. 2005) (Lamberth, J.) ("This Court relies upon the . . . "Laffey Matrix" . . . updated by the United States Attorney's Office for the District of Columbia, to determine the prevailing community rate."); *Watkins v. Vance*, 328 F. Supp. 2d 27, 31 n.3 (D.D.C. 2004) (Friedman, J.) ("The prevailing market rate can be determined by reference to the so-called Laffey matrix . . . *If the hourly rate requested is above what is allowed by the Laffey matrix, the rate will be reduced to the maximum hourly rate provided by the Laffey matrix*.") (emphasis added).

Indeed, as Magistrate Judge Facciola recently recognized, the authority for deviating from the USAO Matrix is underwhelming:

> it is certainly not the law of this Circuit that the more expensive Laffey rate must be used universally. To the contrary, all that can be said is that, since *Salazar*, a court, based on the record before it, found that (1) the use of the updated Laffey rate was not unreasonable or clearly erroneous and (2) the use of the updated Laffey rate was reasonable when the defendant did not object to its use. That scarce authority causes me to persist in the view that use of the updated Laffey rate must be justified by a significant evidentiary record that shows why its use is reasonable in a particular case. See *Yazdani v. Access ATM*, Civ. No. 06-639, 2007 U.S. Dist. LEXIS 11627, 2007 WL 5428062 at *4 (D.D.C. Feb. 21, 2007); *McDowell v. District of Columbia*, Civ. No. 02-1119, 2006 U.S. Dist. LEXIS 46371, 2006 WL 1933809 at *2 (D.D.C. Jul. 11, 2006). In this

7

> case, there is no record whatsoever on which to base the conclusions that (1) use of the updated Laffey rate is reasonable; (2) use of the traditional Laffey rate is unreasonable; and (3) without using the updated Laffey rate in this case as the Union lawyers request, there would be few lawyers, either public-spirited or otherwise motivated, who would come forward to represent labor unions.

*M.R.S. Enterprises*, 2007 U.S. Dist. LEXIS 22416 at *12-*13.

Moreover, although the Kavanaugh Matrix purports to be based upon the legal services component of the Consumer Price Index, it sets rates higher than a comparable matrix applied in this Court which also focuses on the legal services component of the Consumer Price Index. *Compare* Kavanaugh Aff. *with M.R.S. Enterprises, Inc. v. Sheet Metal Workers' Int'l Assoc., Local 40*, 2007 U.S. Dist. LEXIS 22416 * 10 (D.D.C. March 29, 2007) (juxtaposing the 2005-2006 USAO Matrix Rates with rates calculated using the legal services component of the Consumer Price Index).

In *M.R.S. Enterprises,* Judge Facciola compared the USAO Matrix with a matrix that focused on the legal services component of the Consumer Price Index and noted the following rates:[2]

| Years of Attorney Experience | Laffey Rate, as calculated by the U.S. Attorney's Office | Laffey Rate, as calculated using legal services component of Consumer Price Index |
|---|---|---|
| 20+ | 405 | 549 |
| 11-19 | 360 | 456 |
| 8-10 | 290 | 404 |
| 4-7 | 225 | 280 |

When comparing the Laffey rate calculated using the legal services component of the Consumer Price Index with the rates contained in the Kavanaugh Matrix, using the same component, the results are as follows:

---

[2] Judge Facciola's Memorandum Opinion and Order in the *M.R.S. Enterprises* case was issued on March 27, 2007. Thus, the rates applied in that case are contemporaneous with the rates sought in this case.

| Years of Attorney Experience | Laffey Rate, as calculated using legal services component of Consumer Price Index | Laffey rate contained in the Kavanaugh Matrix |
|---|---|---|
| 20+ | 549 | 594 |
| 11-19 | 456 | 494 |
| 8-10 | 404 | 432 |
| 4-7 | 280 | 299 |

Thus, Plaintiff is asserting entitlement to rates well-above even what is considered the premium in this jurisdiction. Additionally, the fact that different economists can develop different rates at different times even when focused on the same factor – the legal services component of the Consumer Price Index – cautions against the application of the Kavanaugh Matrix in favor of the USAO Matrix in order to provide consistency within the jurisdiction and to prevent various economists from coming to court with their own differing versions of what rates are dictated by the legal services component of the Consumer Price Index.

The USAO Matrix should also apply to Goodwin Proctor's professionals, rather than the customary hourly rates that firm bills their corporate clients. The USAO Matrix "is the preferred method for calculating the awardable fee used in this Circuit." *University Legal Services*, 2006 U.S. Dist. LEXIS 89140 at * 21. Our Circuit observed that a "highly paid commercial, for-profit law firm can receive awards equal to its usual handsome rates," "[p]rovided, of course, these do not exceed the *Laffey* brackets." *Save Our Cumberland Mountains,* 857 F.2d at 1520 n.2. Indeed, other judges have noted that rates claimed that are in excess of the Laffey rates should be reduced to conform with Laffey. *Watkins v. Vance*, 328 F. Supp. at 31 n.3.

9

Finally, the USAO Matrix provides Plaintiff's counsel compensation that is more than generous for their work in a case that basically boils down to a straightforward false arrest claim, coupled with a novel but untested constitutional claim. *See Muldrow*, 397 F. Supp. 2d at 4 (ordering a 25% decrease from the Kavanaugh Matrix in a "relatively straightforward negligence suit" containing a Section 1983 claim as well). In short, the USAO Matrix continues to be generally accepted in this jurisdiction as setting rates for quality legal services in the District of Columbia and should be applied to Plaintiff's counsel in this case. Accordingly, the District requests that Plaintiff's counsel's hourly rates be set as follows: John Moustakas, $375/hour; David Huitema, $245/hour; Arthur Spitzer, $425/hour; Fritz Mulhauser, $245/hour; Jessica Langley, $120/hour; and other clerks/paralegals, $120/hour.

> **2.    Plaintiff Has Not Provided Supporting Information to Justify Ms. Cho's Fees**

It is well-settled that Plaintiff bears the burden of establishing reasonable hourly rates. *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). In meeting this burden, Plaintiff must "produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similarly services by lawyers of reasonably comparable skill, experience and reputation." *Blum,* 465 U.S. at 896 n.11. Additionally, attorneys must demonstrate their federal court experience. *Covington*, 57 F.3d at 1108 n.17.

Plaintiff has produced no evidence to support his request that he be awarded fees for attorney Miriam Cho. Indeed, Plaintiff has not submitted an affidavit attesting to any legal experience that Ms. Cho has, let alone any federal court experience. Rather, Mr. Moustakas simply states in his declaration in support of supplemental fees that "Miriam

Cho, another associate at Goodwin Proctor, has taken Mr. Huitema's place working on Mr. Rick's case." Pl.'s Supp. Mot. (Moustakas Decl. at ¶ 1). Ms. Cho's page on Goodwin Proctor's website contains no indication as to any legal experience let alone any federal practice, and a LEXIS search of Ms. Cho's name in this jurisdiction reveals only one hit, which is to this case. *See Ricks v. Barnes*, 2007 U.S. Dist. LEXIS 22410 (D.D.C. Mar. 28, 2007). Goodwin Proctor's website further indicates that Ms. Cho graduated from law school in 2004 and therefore had been an attorney for a little over a year when she worked on this case.

Thus, Plaintiff has not met his burden to show that he should receive attorney's fees for Ms. Cho's work at even the USAO Laffey rates, let alone rates well above what has been recognized as standard in this Circuit. The District therefore submits that Plaintiff be awarded fees for Ms. Cho's time at a rate of $120 per hour, which is the Laffey rate for law clerks and paralegals. This is especially appropriate in light of the fact that most of the work Ms. Cho performed was essentially that of a paralegal. For example, Ms. Cho's time records contain bills for meeting with the Plaintiff to execute the release, mailing the release and W9 to the District's lawyer and Plaintiff, and corresponding with the District to inquire about the status of the settlement check. *See* Supp. Mot., Ex. to Moustakas Decl. Ms. Cho did not enter her appearance in this case until after the litigation ended and after Plaintiff filed his motion for attorneys' fees. *See* Docket Entry # 30.

Moreover, as recommended by Judge Robinson and conceded to by Plaintiff inasmuch as Plaintiff has not objected to the Report and Recommendation, Plaintiff should not receive an attorney's fee award for any time Ms. Cho, or any other counsel,

11

spent meeting and assisting Plaintiff with his financial issues. *See* R&R at 15-16. While Judge Robinson recommended that the fee award be reduced by her estimate of $3,000.00 for such charges, R&R at 15-16, the District submits that such amounts are actually closer to $4,000.00, as all charges between July 5, 2006 and July 10, 2006, which total $3,934.00, appear to relate to the financial advice Goodwin Proctor gave to Plaintiff. *See* Supp. Mot., Ex. to Moustakas Decl. Thus, the District requests that Plaintiff's fee award be reduced by $3,934.00.

### B. The Fee Petition Contains Excessive Charges

Judge Robinson erred when determining that Plaintiff's counsel have requested fees that were reasonably expended. *See* R&R at 13-16. In fact, the record demonstrates that Plaintiff seeks fees from the District for unnecessarily and unjustifiably over-litigating a case which did not proceed beyond filing a complaint and opposing a motion to dismiss.

First, Plaintiff seeks to charge the District for 113 hours for researching, drafting and filing his Complaint. Plaintiff's counsel contends that the development of his post-and-forfeit constitutional claims against the District "required research into numerous disparate areas" and "completely novel and creative thinking." Pl.'s Mot., Ex. F (Moustakas Decl. ¶ 7). Moreover, Plaintiff's counsel asserts that "[i]t took great care to draft those claims in the complaint in a way that ensured they would survive a motion to dismiss . . . ." *Id.*

Counsel further asserts, however, that once the District filed a motion to dismiss, "Plaintiff's legal team spent approximately [an additional] 47 hours drafting an opposition to defendants' motion to dismiss. This time was necessary to fully research

the case law related to Plaintiff's Fifth and Eighth Amendment claims, and to carefully describe how the novel, creative challenges to the use of post-and-forfeit in this case were supported by existing legal doctrine." *Id.* (Moustakas Decl. ¶ 11). Plaintiff seeks to recover 160 hours in total for researching and drafting his novel argument that the post and forfeit of $25 violates his Fifth and Eighth Amendment rights. It appears, however, that Plaintiff seeks to bill the District twice for the same work. Plaintiff cannot recover fees he claims were necessary prior to the filing of the complaint to ensure that the complaint would survive a motion to dismiss, and then again claim fees to research and draft his response to the motion to dismiss.

Moreover, as Plaintiff points out, his theory of the post-and-forfeit statute as creating a potential violation of the Eighth Amendment is indeed "novel." As stated above, Plaintiff seeks to bill the District 160 hours in research and writing on this issue, which is equivalent to one person spending eight hours per day for 20 days, or 4 work weeks. Undersigned counsel's research found that a Lexis search for "post and forfeit" in the District of Columbia generated nine hits to cases, including one to the Magistrate Judge Robinson's Report and Recommendation in this case. The District therefore questions counsel's need to expend a great deal of time researching a legal process that is unique to the District which has few reported cases analyzing its use.

Second, Plaintiff spent unnecessary time opposing, often by letter and by filing written oppositions, the District's three requests for extensions of time. For example, Plaintiff seeks to bill the District for 12.5 hours – or approximately 1½ days of one attorney's time - his counsel allegedly spent preparing a pedantic response to the District's request for an extension of time to file a response to the Complaint. *See* Pl.'s

13

Mot., Ex. F (Moustakas Decl. ¶ 9). Plaintiff also seeks fees for 25 hours, or three full days, purportedly spent opposing the District's request for additional time to oppose Plaintiff's fee petition. Pl.'s Supp., Moustakas Decl. ¶ 8. This includes 9.2 hours, or more than a full day's work amounting to charges of $3,402.00, on March 22 and 24, 2006, and 1.3 hours ($487.50) on March 21, 2006 for the drafting of a praecipe never filed with the Court. When reviewing the filings, it is clear that Plaintiff's counsel could have accomplished their litigation goals in far less time with much less rhetoric; indeed, a simple "Plaintiff does not consent" would have sufficed. In total, Plaintiff spent approximately 37.5 hours opposing the District's three requests for extensions of time, the majority of which contained unnecessary rhetoric and *ad hominem* attacks on counsel and the District. Moreover, inasmuch as the Court did grant the District's requests for additional time, Plaintiff's efforts in this regard were unsuccessful and the District should not be charged for Plaintiff's counsel's unnecessary behavior which was unwarranted in this litigation or any litigation.

Third, Plaintiff claims fees for approximately 132 hours of time associated with his attorney's fees. This would consist of over three weeks of work, five full days a week, exclusively on this project. Plaintiff's original fee petition asserts 67 hours of time Plaintiff claims his counsel spent trying to resolve the fee issue, including sending "multiple letters" and placing "multiple phone calls." Pl.'s Mot. Ex. F (Moustakas Decl. ¶ 12). Plaintiff claims that "the District refused to schedule a settlement conference and left many of our phone calls and correspondence unanswered." *Id.*[3] The charges for

---

[3] The District disputes Plaintiff's allegation in this regard. In fact, between December 15, 2005, when Plaintiff accepted the offer of judgment and February 1, 2006, when the notice of acceptance was filed, the District did attempt to settle the attorneys' fees. However, Plaintiff's attorneys never provided their

14

Plaintiff's "efforts" are indeed excessive and unwarranted. For example, Plaintiff's counsel claims to have spent 3.1 hours, or $1,131.50 on the attached January 17, 2006 letter to counsel for the District, which is a little over a page long. *See* Ex. 2 (Jan. 17, 2006 Letter from D. Huitema to U. McQuinn).

Also included among Plaintiff's supposed efforts to settle this matter is Mr. Moustakas's February 6, 2006 letter to counsel for the District, attached hereto as Exhibit 3. Plaintiff seeks to charge the District for 5.8 hours of attorney time, or $2,343.30, for the preparation and discussion of this condescending letter, which clearly states that while compromise is unlikely, the parties should discuss it anyway.[4] Indeed, as Plaintiff's billing records demonstrate, this letter is particularly disingenuous as Plaintiff's counsel had already begun drafting their fee petition weeks before the District filed the notice of acceptance. Thus, Plaintiff appears to have knowingly pursued – and now to bill the District – for fruitless efforts. In any event, if Plaintiff's counsel had been less obnoxious, he could have made his points in his letter much more expeditiously. The District should not be required to pay a premium to receive lectures from Mr. Moustakas and his *ad hominem* attacks against it.

Fourth, Plaintiff also seeks reimbursement for time that is clearly excessive for very basic, non-substantive legal work. For example, Plaintiff's counsel charged three

---

itemized bill of attorney's fees and costs, even though repeatedly requested by the District's attorney so that she would be able to properly assess the fees.

[4] Indeed, such insistence on cooperation from Mr. Moustakas seems truly odd in light of the contentious manner in which Plaintiff's lawyer pursued this case. One example of Mr. Moustakas's efforts are his billing entries of September 29, 2005 (1 hour, $455) and February 2, 2006 (2 hours, $950), devoted to attempting to discredit the District's counsel by researching her alleged "false assertions." Rather, Plaintiff's counsel's efforts after the acceptance of the Offer of Judgment appear to simply be a means of increasing his potential fee award, which is why the District eventually, after a reasonable settlement of the attorney's fees did not appear possible, filed the notice of acceptance. The District did not want to continue to be billed for unprofessional conversations and correspondence in which opposing counsel would berate the District and its attorneys when it was clear that Plaintiff was not willing to discuss a reasonable reduction in fees beyond the 10% reduction Plaintiff offered.

hours on November 9 and 18, 2005 ($1,095) for drafting and filing a proof of service. *See* Ex. 4 (Proof of Service). If Plaintiff truly felt the need to file this document, it certainly would not take an attorney three hours to draft it. Similarly, Plaintiff has charged two hours ($730) for drafting a one-page basic notice to counsel that he accepted the District's offer of judgment. *See* Ex. 5 (Notice That Offer of Judgment is Accepted). Plaintiff requests an additional $989.50 for work performed on January 3, 2006 for his response to the offer of judgment that was to be filed with the court. These basic filings simply do not warrant the kind of time Plaintiff's counsel expended.

The District disputes the overall amount of time Plaintiff's counsel devoted to preparing the fee petitions and supporting exhibits and memoranda. If counsel were recording their billing time as the litigation progressed, they would simply need to gather it for submission. Moreover, as Plaintiff's counsel has continuously reminded the District and the Court, he and his firm were involved in a recent fee petition dispute with the District in the *Heard* case. Not only would the relevant law be the same, but much of Plaintiff's counsel's work in preparing the fee petition in the case at bar is repetitive of work performed in the *Heard* case.

Fifth, the District also should not be required to pay attorney's rates for ministerial or administrative tasks performed by counsel.[5] *See Michigan v. EPA*, 254 F.3d 1087, 1095 (D.C. Cir. 2001) (excluding fees for clerical tasks such as filing, reproducing sending and obtaining documents); *American Petroleum Institute v. EPA*, 72 F.3d 907, 912-13 (D.C. Cir. 1996) (deducting time related to tasks such as filing of documents). As Judge Kotelly observed in the *Heard* case:

---

[5] While Plaintiff's counsel has billed some of Mr. Huitema's time at a paralegal rate, Plaintiff seeks compensation at counsel rates for other administrative/ministerial tasks performed by Mr. Huitema and other attorneys.

>Courts have often found it "appropriate" when analyzing a fee petition "to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics, and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it."

*Heard v. District of Columbia,* 2006 U.S. Dist. LEXIS 62912 *52-*52 (D.D.C. Sept. 5, 2006), quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989). In this case, the District should not be required to pay attorney's rates for the following non-legal work:

| Date | Timekeeper | Amount | Hours | Narrative |
|---|---|---|---|---|
| 4/13/05 | Mulhauser, F. | 149.50 | 0.5 | Calls to ministers and staff in churches in area of park where Ricks was arrested, to track down witness Mr. James Fedison, homeless but regular churchgoer or shelter user at Baptist church in area |
| 5/9/05 | Huitema, D. | 65.00 | 0.2 | E-mail with Mr. Mulhauser to obtain ACLU's existing files for Ricks |
| 5/16/05 | Mulhauser, F. | 149.50 | 0.5 | Gather examples of 42 USC 1983 police misconduct complaints, and draft by Mr. Zisser, send to Mr. Huitema |
| 6/30/05 | Huitema, D. | 97.50 | 0.3 | Call with Ms. Staudenmeier at homeless clinic regarding abuse of post & forfeit with the homeless |
| 9/6/05 | Huitema, D. | 162.50 | 0.5 | Arrange for service of complaint |
| 9/8/05 | Huitema, D. | 97.50 | 0.3 | Conference call with process server |
| 9/29/05 | Moustakas, J. | 455.00 | 1.0 | Attempt to verify allegations regarding efforts to obtain consent (.6); telephone conference with telecommunications department regarding tracing call (.4) |
| 10/7/05 | Huitema, D. | 255.50 | 0.7 | Prepare and file praecipe attaching Heard admonition against OAG office |
| 11/7/05 | Huitema, D. | 219.00 | 0.6 | Supervise cite check |
| 12/6/05 | Huitema, D. | 73.00 | 0.2 | Arrange time for conference call |
| 12/19/05 | Huitema, D. | 36.50 | 0.1 | Call ACLU regarding their fees |
| 12/22/05 | Mulhauser, F. | 299.00 | 1.0 | Review time data, consult with Ms. Langley and Mr. Spitzer on their time data, prepare summary Email for Mr. |

17

|        |              |        |     |                                                                                                                                                                      |
|--------|--------------|--------|-----|----------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|        |              |        |     | Huitema on ACLU time charges generally                                                                                                                               |
| 1/3/06 | Moustakas, J.| 47.50  | 0.1 | Request Mr. Chud to send Heard materials to assist Mr. Huitema more efficient prepare fee petition                                                                   |
| 1/10/06| Huitema, D.  | 36.50  | 0.1 | Obtain Heard fee petition                                                                                                                                            |
| 2/6/06 | Huitema, D.  | 36.50  | 0.1 | e-mail Mr. Mulhauser regarding need for ACLU time records                                                                                                            |
| 2/7/06 | Mulhauser, F.| 299.00 | 1.0 | Final review of time data, prepare and send detailed record to Mr. Huitema                                                                                           |
| 2/10/06| Huitema, D.  | 109.50 | 0.3 | Review time records                                                                                                                                                  |
| 2/13/06| Huitema, D.  | 547.50 | 1.2 | Review time records                                                                                                                                                  |
| 2/23/06| Moustakas, J.| 95.00  | 0.2 | Call Mr. Mulhauser re. ACLU hourly rate                                                                                                                              |
| 2/24/06| Moustakas, J.| 380.00 | 0.8 | Review time records                                                                                                                                                  |
| 3/30/06| Moustakas, J.| 142.50 | 0.3 | Several calls to OAG attorneys seeking to get one live in order to request faxing of opposition immediately as a means to determine whether misfiling was intentional or unintentional |
| 4/14/06| Huitema, D.  | 36.50  | 0.1 | Contact Mr. Ricks to confirm his phone number change                                                                                                                 |
| 4/28/06| Huitema, D.  | 255.50 | 0.7 | Meet with Mr. Ricks and sign W-9                                                                                                                                     |

The District respectfully requests that these charges be billed at the USAO Matrix rate of $120 per hour, for a total of $1,296.00, rather than the $4045.50 that Plaintiff requests.

## IV.   CONCLUSION

The District requests that counsel's rates be reduced to those set forth in the USAO Matrix as follows:

    John Moustakas:        $375/hour

    David Huitema:        $245/hour

    Arthur Spitzer:         $425/hour

    Fritz Mulhauser:       $245/hour

    Miriam Cho:           $120/hour

| | |
|---|---|
| Jessica Langley: | $120/hour |
| Other clerks/paralegals: | $120/hour |

The District further requests that, pursuant to Judge Robinson's recommendation, it not be required to pay any amounts Plaintiff's counsel expended in assisting Plaintiff with his financial issues, for a reduction of $3,934.00. Finally, the District requests that the Court order an overall 30% reduction in counsel's fees at the rates set by the USAO Matrix to deduct for excessive and unnecessary time expended by counsel in litigating this case as described *supra* in Section B of this Memorandum.

    Respectfully submitted,

    LINDA SINGER
    Attorney General for the District of Columbia

    GEORGE C. VALENTINE
    Deputy Attorney General
    Civil Litigation Division


    \_\_/s/  Nicole L. Lynch_____
    NICOLE L. LYNCH (471953)
    Chief, Section II


    \_\_\_/s/  Shana L. Frost_____
    SHANA L. FROST (458021)
    Assistant Attorney General
    441 4th Street, NW, 6th Floor South
    Washington, DC 20001
    (202) 724-6534
    Fax:  (202) 727-3625
    shana.frost@dc.gov