UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                             )
LAFAYETTE RICKS                              )
                                             )
                    Plaintiff,               )
                                             )
         v.                                  )
                                             )
MPD OFFICER TOMMY BARNES                     )         Civil Action No.: 05-1756
HHK                                          )
                                             )
*and*                                        )
                                             )
The District of Columbia                     )
                                             )
                    Defendants.              )
_____)

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' OBJECTION TO
MAGISTRATE JUDGE ROBINSON'S REPORT AND RECOMMENDATION**

In opposing Plaintiff's fee petition before Magistrate Judge Robinson, Defendant

attacked (1) the hourly rates of Plaintiff's Goodwin Procter lawyers; (2) the number of

hours they billed on specific tasks; and (3) the adequacy of billing records documenting

their time.  Familiar with the work performed by Plaintiff's counsel in this case,

Magistrate Judge Robinson rejected these attacks after careful consideration, finding that

the hourly rates of Goodwin Procter were reasonable and "in line with the market rates

for similarly skilled attorneys;" that the number of hours invested in the case was not

excessive; and that the firm's billing records were never shown to be inadequate in any

way.

Asking this Court to sit in judgment of Magistrate Judge Robinson's Report and

Recommendation, Defendant now raises a list of grievances ***different*** in many respects

from the list of grievances it put before Magistrate Judge Robinson.  Because Defendant

1

may only obtain this Court's *de novo* review of those specific findings and

determinations in Magistrate Robinson's Report and Recommendation that were properly

preserved,  it is crucial to distinguish between issues that have been waived and those that

have been preserved.  As we show below, of the issues Defendant has preserved for *de*

*novo* review by this Court, none of them alters Magistrate Judge Robinson's conclusion

that Plaintiff should be awarded attorneys' fees of $129,935.40, costs of $786.50, and

post-judgment interest.

## I.      Defendant Is Not Entitled To *De Novo Review* of Any Issues That Have Been Abandoned or Waived

Many of the arguments Defendant made before Magistrate Judge Robinson have

since been waived.  Several issues were waived by abandonment; Defendant pressed

them below, but has not chosen to contest Magistrate Judge Robinson's contrary ruling

on those issues before this Court.  As to certain other issues, Defendant's time has run out.

Issues never raised during the fee litigation before Magistrate Judge Robinson cannot be

raised before the District Court now.

In its Objection to the Report and Recommendation of the Magistrate Judge

("Defendant's Objection"), the District abandons four of the seven arguments it

previously raised in its Opposition to Plaintiff's Motion for an Award of Attorney's Fees

and Costs ("Fee Opposition").  Before Magistrate Judge Robinson, Defendant contended

that plaintiff's counsel (1) "failed to produce adequate documentation of the work

performed" (Fee Opposition at 12); (2) produced time records "replete with block billing"

(*id.* at 15); (3) produced time records "replete with vague entries" (*id*. at 16); and (4)

listed internal "meetings" for which each participant did not bill time (*id*. at 17-18).

In addition to abandoning previously raised arguments, Defendant's failure to appropriately raise certain issues before Magistrate Judge Robinson effected a waiver such that their untimely articulation is now foreclosed. Specifically, in his reply brief in support of the Fee Petition (at 2-3) Plaintiff identified a number of issues Defendant conceded. These included the novelty, creativity, and significance of Plaintiff's challenge to the police's use of post-and-forfeit procedures; the qualifications and experience of Messrs. Moustakas and Huitema with regard to complex federal litigation; the parity of Goodwin Procter's hourly rates with competing D.C. law firms; and all aspects of the ACLU's fee request, including hours spent, tasks billed, and hourly rates under the Kavanaugh updates to the *Laffey* matrix.

Similarly, Defendant's new challenge to the *de minimis* number of hours claimed by Goodwin Procter associate, Miriam Cho, has also been waived. For the very first time in its Objection, Defendant complains that Plaintiff failed to submit evidence to support an award of fees for time billed by Ms. Cho (Defendant's Objection at 10-11). In any case, there is sufficient evidence to support the rates of Ms. Cho. An examination of the exhibits in the fee litigation reveals that Plaintiff has not sought to bill for paralegal work, but rather for legal research and time spent meeting with the client. Such is the work of an attorney, not a paralegal. Moreover, contrary to Defendant's position, Ms. Cho has had ample federal court practice for her level of experience, working on cases pending in three other federal district courts. Decl. of Moustakas at ¶ 5. Moreover, as an associate attorney at a reputable national law firm, Ms. Cho consistently bills in excess of 1850 hours per year at an hourly rate of $315. *Id*. at ¶ 3. Her rate as a third-year associate are comparable to her peer group at competitive law firms. That she is consistently able to

fill her plate with fee-paying work at her current billing rate is powerful evidence that her rate is one and the same as the market rate for her services.

Having failed to preserve these issues, Defendant is not entitled to *de novo* review. If entitled to any review at all (and it should not be), it is entitled to nothing more than "clear error" review. See *Powell* v. *United State Bureau of Prisons*, 946 F.2d 1556 (D.C. Cir. 1991); *United States* v. *2121 E.30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996); *Stubbs* v. *DeSimone*, No. 04 Civ. 5755, 2005 WL 2429913 at *1 (S.D.N.Y. Sept. 30, 2005). *See also* LCvR 72.3.

Simply because these abandoned issues obviate the need for judicial review does not mean that they are irrelevant to the Court's consideration. To the contrary, in judging the *bona fides* of Defendant's Objection, the Court should carefully consider these abandoned issues for their bearing on the critical issue central to Defendant's Objection: the impact of Defendant's behavior on the cost of litigation. It is well-settled that a litigant cannot prolong or complicate the litigation and then "complain about the time necessarily spent by the plaintiff in response." See *City of Rivershide* v. *Rivera,* 477 U.S. 561, 580 n.11 (1986).[1] Yet complaining about the cost of a litigation that its own conduct consistently increased is at the heart of Defendant's Objection and its earlier unsuccessful Fee Opposition.

Simply put, Defendant thinks that Mr. Ricks's case should have cost less to litigate. Litigation cost is, of course, a function of two variables: the number of hours

---

[1]     See also *Copeland* v. *Marshall,* 641 F.2d 880, 904 (D.C. Cir. 1980) (*en banc*) ("The government's contentious litigation strategy forced the plaintiff to respond in kind."); *Rodriguez-Hernandez* v. *Miranda-Velez,* 132 F.3d 848, 860 (1st Cir. 1998) (recognizing that "a litigant's staffing needs and preparation time will often 'vary in direct proportion to the ferocity of her adversaries' handing of the case'"); *Perkins* v. *New Orleans Athletic Club,* 429 F. Supp. 661, 667 (E.D. La. 1976) ("Those who elect a militant defense [are responsible for] the time and effort they extract from their opponents."); *O 'Neill, Lysaght & Sun* v.

spent and the rate of pay for each of those hours.  In its effort to pay less, Defendant

challenges both these variables here.  It would have liked for Mr. Ricks to have been

represented by lawyers who cost less and worked less.  But counsel's rates and hours are

not the problem – the District's approach to litigation is.  Apart from the chronic delay

(and attendant cost increases) it brings to each case, some examples illustrate how fees

are increased by the District's litigation conduct.

      In its Fee Opposition, Defendant argued that Plaintiff's counsel should be

compensated at a rate of $195.00 per hour – the lowest rate on the lowest fee matrix; a

rate intended for the least experienced lawyers just out of school.  Defendant knew that

Plaintiff's counsel was not just out of law school and that he was not inexperienced.

Indeed, it knew that Plaintiff's counsel had graduated from law school some 16 years

earlier, has clerked for federal judges (trial and appellate) in busy jurisdictions with

sophisticated caseloads, had been associated with a reputable Washington, D.C. law firm,

had served as a federal prosecutor in Washington, D.C. for nearly seven years, and had

argued more than one dozen appeals and litigated over 30 jury trials.  Defendant even

knew that counsel had litigated another § 1983 civil rights case in this very courthouse,

winning nearly $3 million in damages and legal fees.  Yet, in the face of overwhelming

evidence that its position was unsupportable, Defendant persisted in maintaining that an

experienced lawyer who then commanded an hourly rate of nearly $500 per hour should

be paid as a brand new associate who had never seen the inside of a courtroom.

      This is not an isolated incident.  Another example from this case:  to avoid paying

big-firm lawyers experienced in complex federal litigation their market rates, the District

---

*DEA,* 951 F. Supp. 1413,1426 (C.D. Cal. 1996) ("The DEA cannot prolong the litigation through its own
obdurate behavior and then protest that [its opponent] has spent too much time prosecuting the action.").

argues that experience in complex federal litigation is not the appropriate unit for

measuring legal experience.  Rather, when prosecuting a federal civil rights claim, an

attorney's number of years litigating these types of cases is what matters.  Not only does

that wooden position make little practical sense, but it is not the law.  Defendant knew

that because more than a decade ago it made that same argument and the D.C. Circuit

rejected it in the *Covington* case.  To make matters worse, although Defendant cited

*Covington* repeatedly throughout this litigation for other purposes, it never disclosed to

Magistrate Judge Robinson (nor in other litigation against before Judge Kotelly) that

*Covington* precluded the very argument it was urging the lower court to adopt in violation

of Circuit law.

> A final example.  The District argued before Magistrate Judge Robinson that:

> "In this case, plaintiff's legal bills are replete with block billing.  The block billing include various meetings which do not indicate the subject matter and or the participants.  These billing entries simply are woefully inadequate and not in compliance with legally recognized billing practices.  The District of Columbia should not be required to compensate plaintiff's lawyers for tasks when it is impossible to discern the reasonableness of the time spent.  Accordingly, the defendant requests that the court reduce the amount of requested fees by all amounts presented in this fashion."

Fee Opposition at 15-16 (Docket #26).  This passage is false in every respect.  Most

significantly, there was ***no*** block billing whatsoever in this case, let alone that the bills

were "replete with block billing."   As Magistrate Judge Robinson concluded (R&R at

14), Defendant failed to identify a single billing entry that was block billed; nor could she

find a single block billed entry upon her own review of the fee petitions.[2]  For reasons

---

[2]      Charitably, the magistrate ignored the tell-tale evidence of Defendant's misleading self-plagiarism; the passage's final "request that the court reduced the amount of requested fees by all amount presented in this fashion" implies that Defendant identified the block-billed entries such that the Court could reduce fees by deducting the value of each such entry.  It did not.  And surely the law governing fee

unfathomable, this inapplicable passage was lifted – *nearly* verbatim – from the District's brief in an unrelated case.  See Plaintiff's Reply in Support of Motion for Award of Attorneys' Fees and Costs Pursuant to Fed. R. Civ. P. 54(d), Exhibit A at 17.  That the cutting and pasting from one brief to another was only *nearly* verbatim is significant; it betrays the intentional misstatement of fact in Defendant's Fee Opposition.  The original passage was not robotically, and unthinkingly, reproduced word-for-word, but instead was actively paraphrased and edited by a conscious and sentient writer/editor.[3]

For knowingly making these false statement to the Court, the District of Columbia and its counsel could have (and should have) been sanctioned.  But for present purposes, the point of these examples is to illustrate the impact of the described conduct on the nature of the litigation and the associated increase in costs.  As a practical matter, every false assertion, disingenuous argument, and baseless claim sends counsel on what amounts to a fool's errand to dispel the lingering and unfair odor of the wrongful assertion or argument on a claim.

Simply put, the District cannot expect to strike at diligent lawyer's client and expect not to have that lawyer strike back – especially when the latter uses fair blows to defend against foul ones issued by the former.  It is axiomatic that these responses take more time and that more time costs more money.  But, as the courts have recognized, the responsible actor has no one to blame but itself for the increased costs he must bear.

---

petitions does not permit fee opponents like the District to make assertions of fact and expect the Court to cast about for evidence to support them.

[3]       The same is true of Defendant's bald assertion that "the fee petition is replete with vague entries." Fee Opposition at 16.  The same textual comparisons between the briefs confirms the unattributed lifting of the earlier passage.  Again, Magistrate Judge Robinson noted the lack of evidence of any vagueness, which she corroborated by her own probing search of the record that revealed none.

But this litigation behavior has an even broader consequence. It erodes trust. String together enough of these false assertions, misleading citations, and refusals to play by the rules and from then on every claim has to be verified, every case read microscopically, every oral communication documented, and every false or mistaken assertion laid bare for the court. That is precisely what happened in this case. False claims, an insatiable appetite for delay, misleading citations and more created an atmosphere of mistrust for which Defendant was responsible. Plaintiff's efforts to counteract that behavior and obtain timely relief were well within his right to take. And for exercising that right, neither he nor his counsel should be punished.

## II. Magistrate Judge Robinson Did Not Err in Finding the Petitioned Attorneys' Fees Reasonable

The District's first argument has significantly changed in its Objection. Before the Magistrate, defendant conceded the reasonableness of both the ACLU lawyers hourly rates and number of hours billed. Now, however, the District argues (at 9) that, by seeking the Kavanaugh update of the *Laffey* Matrix, ACLU counsel are "asserting entitlement to rates well-above even what is considered the premium in this jurisdiction" – which the District worries opens the door for "various economist [to come] to court with their own differing version of what rates are dictated by the legal service." Apart from being entirely without support, this argument was waived and cannot be resurrected now. The District has continued to press one aspect of its argument about billing rates, however – its objection to Goodwin Procter's billing rates.[4] It contends that "the USAO

---

[4]      Curiously, however, even with respect to this central position, defendant has considerably changed its tune. Before Magistrate Judge Robinson, defendant insisted that plaintiff's fee petition bill Mr. Moustakas, who graduated from Cornell Law School in 1989,  out at the $195/hour rate reserved for the most junior lawyers. It took the same position with respect to Mr. Huitema, who graduated Stanford Law

Matrix should also apply to Goodwin Proct[e]r's (sic) professionals, rather than the customary rates that firm bills [its] corporate clients." Nonetheless, for the reasons discussed below, Defendant's argument fails.

### A.    The District is Collaterally Estopped From Arguing That Plaintiff's Counsel Can Not be Paid More than the *Laffey* Rates

The District's sole argument for *not* allowing Goodwin Procter's customary rates is its false assertion that the relevant market for determining relevant experience for federal civil rights cases is not complex federal litigation, and therefore, plaintiff's counsel cannot not be paid more than the *Laffey* rates. First, as the District knows, our Circuit rejected this very same argument in *Covington v. District of Columbia*, 57 F.3d 1101, 1103 (D.C. Cir. 1995). There, the Court held that "***complex federal litigation*** was the relevant market for purposes of establishing the prevailing market rates" for civil rights cases in the District of Columbia. 57 F.3d at 1103 (emphasis in original). As in this case, "the District [unsuccessfully] argue[d] that the court should define the relevant market, for purposes of determining the prevailing market rates, narrowly, as including only plaintiff attorneys in civil rights, employment, or discrimination actions." *Id.* at 1111.

Moreover, not only does *Covington* collaterally estop the District from arguing that plaintiff's counsel cannot be paid more than the *Laffey* rates, but this Court's rejection of the same argument in an unrelated case, *Heard v. District of Columbia*, Civ. Action No. 02-0296 (CKK) (Docket #189) does too. In *Heard*, the District contested Goodwin Procter's hourly rates on the ground that the relevant legal market is not complex federal litigation, but only federal civil rights cases. Indeed, the District

---

School in 1999. Now, before the District Court, defendant urges that Messrs. Moustakas and Huitema be compensated at an hourly rate of $375 and $245, respectively – a figure that appears in none of the several matrices cited by defendant and is not otherwise explained.

affirmatively asked the Court to rule that the Goodwin Procter lawyers' expertise in complex federal litigation did not qualify them for full-rate fees as to federal civil rights litigation. This very Court rejected that argument and granted the Goodwin Procter lawyers their usual and customary rates without regard to any failure to establish an expertise in federal civil rights litigation. Since Goodwin Procter is not only its clients' "privy" and agent, but also the real party-in-interest in this subsequent fee litigation, the *Heard* Court's rejection of the District's argument for denying Goodwin Procter its hourly rates cannot be disputed by the District in this case. See *Montana* v. *United States*, 440 U.S. 147, 153 (1979) (It is well-settled that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies.").

>   **B.     Courts in this District Have Rejected Limiting Private Firms to the So-called *Laffey* Rates**

Furthermore, the District is simply wrong in its contention that Magistrate Judge Robinson erred in finding Goodwin Procter's customary hourly rates reasonable and awarding ACLU counsel fees in accordance with the Laffey Matrix as modified by economist Dr. Michael Kavanaugh. By selective and misleading citation to cases, the District continues to press the notion that private law firms are limited to the so-called *Laffey* rates in connection with the recovery of legal fees under § 1988. To read the District's brief, one would assume that there is abundant authority for that proposition. But that assumption would be wrong; as the District knows, the courts in this district recognize that an attorney's usual and customary billing rates is generally deemed a reasonable rate for those services.

The District fails to cite a single case that actually holds that private law firms are limited to the *Laffey* rates or USAO Matrix because there is none. The *Laffey* rates exist to set the market rate for public interest lawyers who do not have customary, market billing rates. It was not intended to replace the usual and customary rates of lawyers in private practice, as long as those rates are in line with the prevailing market rates for complex federal litigation. See *Martini* v. *Fed. Nat'l Mortgage Ass'n*, 977 F. Supp. 482, 485 (D.D.C. 1997).[5]  Indeed, the District cites *Interfaith Community Org. ("ICO")*. v. *Honeywell Int'l*, 426 F.3d 694, 709 (3d Cir. 2005)(3d Cir. 2005) in support of using the "U.S. Attorney's Matrix as a reasonable measure of billing rates," over the Kavanaugh updated *Laffey* rates. ***But it fails to tell this Court that the ICO court affirmed the district court's adoption of the Kavanaugh updated Laffey rates over the standard Laffey rates or USAO matrix***.

The District's other cases confirm nothing more – and they certainly do not support the proposition that attorneys who ***actually have billing histories*** and for whom no proxy for the market rate is needed should be subject to the *Laffey* rates. Thus, in *ICO*, "a Washington, D.C. public-interest law firm" ***affirmatively sought*** *Laffey* rates. In *Hansson* v. *Norton*, 411 F.3d 3d 231 (D.C. Cir. 2005), once again, the plaintiff embraced the *Laffey* rates because they were actually higher than her counsel's actual billing rates. Ironically, just last year the Office of the Attorney General argued ***against*** application of the *Laffey* rates ***requested by plaintiffs*** in  *Jane Does I, II, and III* v. *District of Columbia*, 448 F. Supp. 2d 137, 140 (D.D.C. 2006).  None of the other cases fare better.

---

[5]    Indeed, when settling cases, the District routinely pays public interest or non-profit lawyers using the *Laffey* matrix, while paying lawyers in private practice at their standard billing rates. *See* Declaration of Arthur B. Spitzer ¶ 10 (Ex. E to Mr. Ricks's fee petition).

Nor does the District acknowledge anywhere in its brief that the well-settled test for whether a law firm may recover the rates billed on plaintiffs fee petition turns on three (3) issues: (1) whether the rates charged are the lawyers' usual and customary rates charged to paying client; (2) whether the lawyers' skill, reputation, and experience are commensurate with those rates; and (3) whether those rates are consistent with the prevailing market rates in the relevant legal community. Mr. Ricks's Fee Petition passed this test with flying colors. As we established before Magistrate Judge Robinson – without any meaningful opposition from the District – the hourly rates charged to the District for the Goodwin Procter lawyers' time are supported by counsel's skill, reputation and experience and are lower than or equal to comparable District of Columbia law firms. *See* Plaintiff's Motion for an Award of Attorneys Fees and Costs Pursuant to Fed. R. Civ. P. 54(d). (Docket # 19) at 4-7.

> **C.** **The District's Attempt to Reduce Plaintiff's Attorneys Fees is Inconsistent with the Promise and Purpose of §1988**

By repeating its mantra that fee awards should "not produce windfalls to attorneys," the District betrays its misunderstanding, if not obfuscation, of the goals of § 1988 and its remedial nature. "In computing the fees, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.4 (1983) (citing S. Rep. No. 94-1011, p.6 (1976)). Counsel regarded Mr. Ricks's case as it would the most important matter of any fee-paying client. Having treated him with all the solicitude we show our fee-paying clients – and then some – it has been our reciprocal

expectation, in light of *Hensley*'s admonition, that we would be paid like lawyers who successfully represented a fee-paying client.[6]

The lawyers at Goodwin Procter work for an hourly rate that the market bears – as evidenced by the fact that their rates are voluntarily paid by the firm's clients. Every hour that was spent on Mr. Ricks's case could have (and would have) been invested in matters for fee-paying clients. Given that Goodwin Procter lawyers are routinely paid 94% of their reported time and 99% of their legal bills (see *Felty Decl.* for *Heard v. District of Columbia*, Civ. Action No. 02-0296 (CKK) (Docket # 173, Ex. R) at ¶ 3), it would hardly be a windfall that they be paid at a similar rate for their work on this case.

Congress intended for the decision to take on civil rights cases and prosecute them vigorously to be made by competent counsel without concern about compensation.[7] To pay a mere fraction of their fees to private lawyers asked to prosecute novel claims – as Mr. Ricks's lawyers did in this case – would be to quickly bring an end to the promise

---

[6]      For self-evident reasons, Congress has equated the payment of prevailing parties' counsel with the payment of similarly successful counsel of fee-paying clients. See, *e.g.*, *Missouri* v. *Jenkins*, 491 U.S. 274, 286 (1989). By that metric alone, Defendant's attempt to slash Mr. Ricks's attorneys' fees by a considerable margin is wildly inconsistent with § 1988. Curiously, the District's Objection fails to tell the Court precisely what overall deduction it is seeking, apparently hoping the Court will do the District's work for it. The Court should not oblige the District which has had many months to make such calculations of its own.

[7]      As one Court of Appeals put it, "[a]n award of fees enables the plaintiff to keep the whole recovery and brings home to the defendants the full social costs of their unconstitutional conduct, costs that include litigation as well as the original damages." *Kirchoff* v. *Flynn*, 786 F.2d 320, 327 (7th Cir. 1986) (Easterbrook, J.); *see also Ramos* v. *Lamm*, 713 F.2d 546, 552 (10th Cir. 1983)("Potential liability for full value fee awards can deter violations of the civil rights laws, especially in situations in which the fee award represents a significant portion of the defendant's financial exposure."). Recognizing its potential to discourage the highly-skilled lawyers who, by dint of demand for their services, do not ***need*** to taken on civil rights fee-shifting cases, courts have also shown little tolerance for protracted fee litigation as inimical to the purposes of § 1988. *See, e.g.*, *Nat'l Ass'n of Concerned Veterans (NACV)* v. *Sec'y of Defense*, 675 F.2d 1319, 1329 ("In light of the broad policy objective Congress sought to achieve through Title VII and FOIA, attorneys must not be deterred from engaging in this type of work by the prospect of protracted litigation over reasonable demands for compensation.").

offered by § 1988 to involve the private bar in acting as private attorneys general vindicating the constitutional rights of our citizens.

### III.     Magistrate Judge Robinson Did Not Err in Finding That the Number Of Hours Billed By Mr. Ricks's Counsel Were Not Excessive

The District's second argument – that the number of hours billed by the Goodwin Procter lawyers are too high – also has changed significantly in Defendant's Objection. The District's Opposition sought a reduction of the fees charged for four specific aspects of Mr. Ricks's counsel's fees.[8]  The District's Supplemental Opposition sought a reduction of the fees charged for three briefs and for several additional aspects of Mr. Ricks's counsel's fees.[9]  Although the District identified these particular time entries (and none other) as excessive, and sought specific reductions for them, the District's Objection now seeks to add objections to time spent on briefs it has never previously mentioned. Similarly, although the District continues to object to fees associated with the Fee Petition, the Objection focuses, for the very first time, on the time spent to settle the Fee Petition, arguing, in part, that 8.9 hours spent on drafting a letter to counsel regarding settlement were excessive (at 15).   In addition to being substantively without merit, these arguments are also procedurally barred by waiver.

---

[8]       In particular, the District's Opposition sought a reduction for the: (1)  37.5 hours spent on researching possible legal challenges to the use of post-and-forfeit in the case (at 10-11); (2) 8.4 hours spent considering the District's Offer of Judgment (at 11); (3) 81.6 hours spent on the Fee Petition (at 13); and (4) 3.6 hours spent by Mr. Moustakas on review prior history around false assertions concerning the District's motion for extension and beginning a draft letter regarding that motion (at 14)

[9]       In particular, the District's Supplemental Opposition sought a reduction for the:  (1) 20.5 hours spent on Plaintiff's Supplemental Fee Petition (at 6); (2) 23.6 hours spent on the discussing and drafting Plaintiff's Opposition to Defendant's Motion for Extension of Time (at 6-7); (3) 30.9 hours spent on Plaintiff's Reply to the District's Opposition to the Fee Petition (at 7).  In addition, the District also attacked the 3.4 hours spent on researching and conferring about how to enforce the judgment in the case (at 6) and the 10.4 hours spent arranging for financing for Mr. Ricks to replace the judgment that the District illegally withheld from him (at 7-8).

A.    **The Number of Hours Counsel Invested in Plaintiff's Case was not Excessive**

Even if reviewed, Defendant's nit-picking challenges to Plaintiff's fees must fail and Magistrate Judge Robinson's Report and Recommendation should be accepted by this Court.  As the magistrate recognized, "[t]he courts in this district reject conclusory arguments in opposition to a fee petition."  R&R at 14.  And that is all the Defendant's attack on Plaintiff's petition amounts to.  Indeed, this Court has previously addressed the very sort of formless and conclusory allegations made in this case – allegations that fail to justify any reduction in the fee award.  Thus, in *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41 (D.D.C. 2004), the Court explained:

> "Defendant's objections are simply conclusory assertions regarding the amount of time that defendant thinks plaintiff's counsel 'should have spent' on certain documents and litigation tasks.  It is neither practical nor desirable to expect the trial court judge to [review] each paper . . . to decide, for example, whether a particular motion could be been done in 9.6 hours instead of 14.3 hours."

*Id*. at 46.  See also *NACV*, 675 F.2d at 1338 ("nitpicking claims by the Government should [not] be countenanced"); *Lucas v. White*, 63 F. Supp. 2d 1046, 1057-58 (N.D. Cal. 1999).

From any perspective, Plaintiff's recovery in this case was an unmitigated success.  Unlawfully detained for less than two hours, Mr. Ricks won a $32,000 damages award.  Plaintiff defies the District to present evidence of a similarly short detention that yielded a similar damages award.  Its inability to do so is attributed to the fact that it was not concern over the garden-variety false arrest claim that caused the District to settle on such favorable terms, but rather that it

15

settled because of the novel constitutional claims that identified a pervasive police practice of misusing the post-and-forfeit procedures in violation of the 5th and 8th Amendments.

In light of this success and the creativity of the claims that brought that success, Defendant's conclusory attacks on the amount of time spent researching, drafting, and editing the complaint to articulate these novel claims simply fail. In an attempt to skew the optics, Defendant even misleadingly combines the time spent on the complaint and the motion to dismiss. But no amount of sleight of hand undermines the magistrate's conclusion that the hours worked were reasonable as evidenced by the work that she observed counsel successfully accomplish. *See R&R* at 15 ("Plaintiff's counsel provided sufficient evidence in their memoranda, declarations, and exhibits to explain the reasons for the hours and fees requested.").

In any case, Defendant has failed to provide any support for the bald assertion that spending 113 hours investigating, researching, drafting, editing, and filing the complex, inventive, multi-claim complaint in this case was excessive. Nor does it fare any better with respect to the 47 hours spent preparing the opposition to the District's motion to dismiss that caused the case to settle quickly. In trying to articulate its objection to the amount of time spent focused on these critical tasks, Defendant does no more than "question[] counsel's need to expend a great deal of time researching a legal process that is unique to the District," since "a Lexis search for 'post and forfeit' in the District of Columbia generated only nine hits to cases."

Rather than prove these tasks should have been quick and easy to complete, the dearth of caselaw establishes the opposite. To Plaintiff's knowledge, no one has challenged the use of post-and-forfeit procedures, let alone successfully so (as we have). One aspect of the value counsel added in this case was in raising novel legal claims that might have otherwise gone unnoticed and researching them thoroughly enough (seeing that there is such prior case law on the topic) to ensure that they were viable before asserting them. Time spent researching under-developed strands of constitutional law and tailoring legal claims to vindicate those little-explored constitutional rights is not excessive; it is good lawyering. See *Lucas*, 63 F. Supp. 2d at 1058-59 (holding that "time reasonably spent on pre-complaint investigation legal research, and informal discovery relevant to developing the theory of the case is properly recoverable . . . . Indeed, Fed. R. Civ. P. 11 *requires* that counsel undertake sufficient precomplaint investigation such that they can properly represent that all claims asserted are 'warranted by existing law or a nonfrivolous argument for [its extension or modification]' . . ..").

Second, the District attacks as "unnecessary" time spent by Plaintiff opposing its persistent requests for extensions of time. Its superficial contention that "a simple 'Plaintiff does not consent' would have sufficed" illustrates the District's fundamental misunderstanding about the civil right laws. The District is a confessed civil rights violator. The law's solicitude is reserved for civil rights victims, not their tormentors. As a matter of pattern and practice, the District uses its ability to outlast its opponents to its advantage. Delay is part of that pattern

17

and practice.  And, while delay is almost always part of the District's gameplan, it is rarely in an aggrieved party's interest to foster delay.  Delay prolongs the anxiety and pain associated with victimhood and makes it difficult for victims to move on.  More practically, it stalls the victim's right to receive just compensation at the earliest possible time.

Mr. Ricks was not required to make his case against the District in a manner that the District would find least offensive, in a manner designed to minimize costs, nor worst of all, in a manner not best calculated to achieve an optimal outcome.  Although the District surely would have appreciated less push back from Mr. Ricks, that was not in Mr. Ricks's interest.  Rather, by forcefully prosecuting his case and letting the District know that he was a force to contend with, Plaintiff improved his chances at receiving a significant recovery and he did.  This was his entitlement; neither he nor his lawyers can now be punished for exercising it.

Third, Defendant attacks the time spend trying to resolve the fee petition out of court.  In light of the Supreme Court's admonition (echoed by our own district and circuit court of appeals that a dispute over fees not result in a second major litigation, Plaintiff labored extensively to resolve the issue out of court.  The District's recalcitrance is well-documented in our earlier briefs which are incorporated by reference here so that we can avoid being accused of unnecessarily duplicating our efforts.  In any event, it is plain that Defendant bears the responsibility for the increased fees.  We even totaled the work done on

18

the case by category and shared it with Defendant well before any fee petition was

due in an effort to promote settlement.

Fourth, the District challenges (a) time spent investigating, drafting and filing

proof of service; (b) time spent considering and responding to the Offer of Judgment; and

(c) one spent drafting a letter to opposing counsel.  Defendant does not identify any legal

authority setting a reasonable range of time such tasks might have taken; nor does it

attempt to reason what an appropriate amount of time should have been.  In any case, as

indicated above, these were all tasks that responded to actions or statements by Defendant.

For example, counsel only worked on filing the proof of service because Defendant

disputed its untimely filing of a responsive pleading in the case on the basis of a mistaken

or false assertion about the timing of service which required the investment of time in the

task that counsel undertook on Plaintiff's behalf.[10]

In sum, Defendant has failed to demonstrate that any of the time spent on matters

it has attacked was excessive.  By and large such work was essential to prevailing or to

responding to and defending against attacks leveled by Defendant.  As such, Magistrate

Judge Robinson's Report and Recommendation on this topic should be adopted.

## IV.    Magistrate Judge Robinson Did Not Err in Finding That Plaintiff Did Not Bill for Ministerial/Administrative Tasks

The Defendant's third argument – challenging the adequacy of the documentation

of tasks described in the Goodwin Procter bills – has also changed.  While it has

---

[10]    Defendant misunderstands a great deal about these cases.  Big commercial law firms do not take these cases to churn their bills as Defendant offensively implies.  *See* Defendant's Objection at 15 n.4 (opining that counsel's work after acceptance of the Offer of Judgment "appear[s] to simply be a means of increasing his potential fee award.")  As we indicated in prior filings, fee-paying clients pay Goodwin Procter 99% of every bill.  With such a miniscule billing loss rate, lawyers at such firms have built-in incentives to work on fee-paying cases that return 99 cents on every dollar billed, rather than fee-shifting cases which historically involve deeper discounts and greater losses of revenue.

abandoned its baseless nuisance claims respecting block billing and vagueness, it continues to press (at 17) the argument that Plaintiff's legal bills reflect non-legal work by its counsel.[11]  Press the issue, though it may, the District should still not prevail on the merits because these criticisms are nothing more than the sort of nit-picking that our Circuit and District Court routinely rejects.  For example, the District objects to the time entries of ACLU attorney Mulhauser for "calls to ministers and staff in churches in area of park where Ricks was arrested, to track down witness Mr. James Fedison, homeless but regular churchgoer or shelter user at Baptist church in area," and "gather examples of 42 USC 1983 police misconduct complaints, and draft by Mr. Zisser, and sent to Mr. Huitema."  Besides the fact that any attack on a time entry of an ACLU attorney was waived when the issue was never brought to the Magistrate's attention, this attack is baseless and defies common sense.  These kinds of tasks are most certainly a part of good lawyering and not work more appropriately left for a paralegal or secretary.

Likewise, the District's objections to the time entries of Mr. Moustakas for his "attempt to verify allegations regarding efforts to obtain consent; telephone conference with telecommunications department regarding tracing call" and for "several calls to OAG attorneys seeking to get one live in order to request faxing of opposition immediately as a means to determine whether misfiling was intentional or unintentional" were also tasks that were more appropriately left to lawyers.  Similarly, Mr. Huitema's "call with Ms. Saudenmeier at homeless clinic regarding abuse of post & forfeit with the

---

[11]     At best, this is a generous characterization of the District's Oppositions because **none** of the detailed entries were ever mentioned in the Oppositions.  As such, technically speaking, objection to these detailed entries can not be fairly characterized as an objection to the Report and Recommendation, let alone responsive to it because they were raised **after** the issuance of the Report and Recommendation. Nonetheless, because the District's Opposition did generally state (albeit without one example) that it is

homeless" also fail for this very same reason – the attorneys billed time for time spent to obtain and investigate facts as part of the task of applying the facts of their case to existing law.

Finally, the District's Objections to the time spent on preparing the fee petitions and supporting documentation fail for similar reasons. Preparing the fee exhibits for Mr. Ricks's Fee Petition required an ***attorney*** to exercise "billing judgment" in determining which fees should be requested and which should be "cut" – quintessentially a job reserved for counsel. Similarly, the District's Objection to Mr. Huitema's time entry to "contact Mr. Ricks to confirm his phone number change," and "meet with Mr. Ricks and sign W-9" are also tasks appropriate for an attorney. Crucial to the maintenance of the attorney-client relationship, these tasks are for lawyers, not their staffs.

It is also the obligation of the attorney to supervise the execution of clerical tasks – such as cite checks and arranging for service of complaints. Harsh legal consequences attend the failure to correctly and accurately accomplish these tasks. As Mr. Ricks's attorneys did not bill for such clerical tasks, but only for the supervision of them – and in fact, even excised numerous time entries by paralegals for time spent on such clerical tasks – Plaintiffs are entitled to their full fees for these time entries as well.

## <u>CONCLUSION</u>

For the reasons presented above, the Plaintiff respectfully requests this Court to reject the District's Objections and adopt Magistrate Judge Robinson's Report and Recommendation in full.

---

entitled to a reduction for excessive billing for ministerial and/or administrative tasks in its Opposition (at

Respectfully submitted,

  /s/  Miriam H. Cho
John Moustakas (DC Bar # 422076)
Miriam H. Cho (DC Bar # 495136)
Goodwin | Procter LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 346 – 4000
(202) 346 – 4444 (fax)

Arthur B. Spitzer (DC Bar #235960)
Frederick V. Mulhauser
(DC Bar # 455377)
American Civil Liberties Union of
the National Capital Area
1400 20th St., NW, Suite 119
Washington, DC 20036
(202) 457-0800
(202) 452-1868 (fax)

Attorneys for Lafayette Ricks

Submitted:  June 18, 2007

LIBW/1631355.1

---

19), we take the issue to be preserved.