UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LAFAYETTE RICKS, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 05-1756 (HHK) |
| | ) | |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT DISTRICT OF COLUMBIA'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff's Opposition to the District of Columbia's (the "District") Objection to the Report and Recommendation of the Magistrate Judge is an example of how Plaintiff's attorneys' fees in this case have become so unreasonable. The majority of Plaintiff's Opposition is devoted to vociferously opposing arguments that the District has not even presented to this Court in its objection and to rabid attacks against the District. A much smaller part actually addresses the issues presently before this Court.[1] In the end, once one parses through Plaintiff's counsel's unjustified and angry verbiage, it is clear that Plaintiff has not demonstrated entitlement to fees and costs in excess of $130,000.00 for this matter.

1.    Plaintiff contends that the District "abandoned" a number of arguments in the proceedings before the magistrate judge that are now barred from consideration by this Court. Plaintiff simply raises a smokescreen by characterizing issues differently than the District. Plaintiff contends that the District has not challenged "the novelty, creativity

---

[1] Indeed, Plaintiff's brief would be shorter had Plaintiff not repeated - verbatim - the exact same arguments in pages 8-13 that he has in pages 2-8.

and significance of Plaintiff's challenge to the police's use of post-and-forfeit procedures." Opp. at 3, 9.  The District did address Plaintiff's challenge of post-and-forfeit before the magistrate judge by disputing the hours Plaintiff devoted to this issue.  Def.'s Opp. to Pl.'s Fee Petition at 10-11.  Similarly, Plaintiff claims that the District did not challenge the federal litigation experience of Messrs. Moustakas and Huitema and Ms. Cho.  Opp. at 3, 9.  In fact, the District did argue before the magistrate judge that the hourly rates of these lawyers (and Plaintiff's lawyers in general) should be reduced.  Def.s' Opp. to Pl.'s Fee Petition at 7-9  Plaintiff also claims that the District has not disputed the parity of Goodwin Procter's hourly rates when compared with other D.C. law firms.  Opp. at 3, 9.  The District did not address whether Goodwin Procter's rates were similar to other firms because the District has maintained that the U.S. Attorney's Office updated *Laffey* Matrix ("USAO Matrix") should apply.  Def.'s Opp. to Pl.'s Fee Petition at 10.  Thus, the District has preserved the arguments it has made before the Court.

  2. Plaintiff contends that the District is not entitled to *de novo* review.  In fact, the District has cited the Court to the portions of the magistrate judge's opinion report to which it objects as required by the Federal and Local Rule, therefore *de novo* review is appropriate.  In any event, the only case from this jurisdiction that Plaintiff cites is *Powell v. United States Bureau of Prisons*, which can be found at 927 F.2d 1239, and not at the citation found in Plaintiff's brief, "946 F.2d 1556."

  *Powell* is a FOIA case in which the petitioner, proceeding *pro se,* challenged the magistrate judge's report and recommendation, stating that he "objects to the entire Report and Recomendation [sic] of the Magistrate and requests the District Judge to

2

conduct a *de novo* review of the proceedings." *Powell,* 927 F.2d at 1241. The district court only reviewed the report and recommendation for clear error, as Powell had not complied with the local rule which required that "objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made." *Id.* The district court adopted the Magistrate's recommendation after finding that no clear error existed. On appeal, an *amicus curiae* argued on Powell's behalf that the district court should have reviewed the report and recommendation *de novo*. The Circuit Court observed that while Powell's arguments in this regard had "some appeal," it "*need not decide at this time the merits of this claim*" as the Court decided to reverse and remand on other grounds. *Id.* at 1242 (emphasis supplied). Thus, Plaintiff's reliance on *Powell* for an issue that was not actually decided by the circuit court is not persuasive.[2] Unlike *Powell*, the District has specifically referenced for the Court the portions of the magistrate judge's opinion which should be reviewed.

      3.      Plaintiff's opposition contains arguments that the District did not present to this Court in its Objection to the magistrate's report and recommendation. *See* Opp. at 5, 6-7, 10-11, 11-12. At the same time, Plaintiff claims that the District's narrowing of issues throughout the litigation somehow demonstrates that the District "prolong[s] or complicate[s]" the litigation. Opp. at 4, 10. Rather, the fact that the District chose to present the arguments it believes have the most merit is indicative of the District's efforts to mitigate future expenses as it has during the course of this litigation. Indeed, that the District filed an Offer of Judgment after its Motion to Dismiss was denied – and before

---

[2] The other cases Plaintiff cites, *United States v. 2121 E. 30th Street,* 73 F.3d 1057 (10th Cir. 1996) and *Stubbs v. de Simone,* 2005 WL 2429913 (S.D.N.Y. Sept. 30, 2005), are distinguishable. *2121 E. 30th* concerns objections that were brief (two sentences) and general. In *Stubbs*, the district court expressly noted that it would conduct a *de novo* review for specific objections, and not general. Here, the District has made specific objections to the report and recommendation of the Magistrate Judge.

3

any additional expense would be incurred by either side – is further proof of the District's efforts in this regard. Plaintiff's contention that his excessive fees in this litigation were due to the District's delays is unfounded. Each of the District's requests for additional time were reasonable, as indicated by the fact that in each instance the Court indeed permitted the District some additional time. By harping on issues that actually are no longer issues, Plaintiff prolongs and complicates the litigation and then seeks compensation for doing so.[3]

4.  Plaintiff's counsel also takes much offense at the District's request that counsel be compensated at reasonable rates. Plaintiff cites *Covington v. District of Columbia*, 57 F.3d 1101 (D.C. Cir. 1995) for the proposition that "'*complex federal litigation* was the relevant market for purposes of establishing the prevailing market rates' for civil rights cases in the District of Columbia." Opp. at 14-15. Plaintiff further asserts that the District is estopped from arguing otherwise.

What Plaintiff refuses to recognize is that the plaintiffs in *Covington* actually established the "prevailing market rates" by relying on the *Laffey* Matrix, and that the Court found *Laffey* was reasonable. In this case, Plaintiff is asking to be awarded above the USAO Matrix. In *Covington,* the plaintiffs:

> submitted a good deal of evidence establishing the prevailing market rates for comparably experienced attorneys handling complex federal litigation. They submitted the original *Laffey* matrix, a schedule of charges based on years of experience developed in *Laffey v. Northwest Airlines, Inc.* [citation omitted]. Plaintiffs also submitted affidavits attesting to increases in the market rates since the original *Laffey* matrix was established; the U.S. Attorney's Office version of the updated *Laffey*

---

[3] For example, Plaintiff makes much of the fact that the District originally requested that Mr. Moustakas be compensated at the rate of $195 per hour. Opp. at 5, 10-11, 14. Rather than be pleased that the District has reconsidered its position and has proposed giving Mr. Moustakas the benefit of the *Laffey* rates for his total number of years practicing law, Plaintiff complains that the District's actions are unreasonable. Plaintiff's assertions are belied by the record in this litigation.

4

> matrix; the memorandum opinions in *Robles v. United States,* 1992 U.S. Dist. LEXIS 142, Civ. Action No. 84-3635, (D.D.C. Jan. 10, 1992), J.A. at I-119, and *Fischbach v. District of Columbia,* 1993 U.S. Dist. LEXIS 19756, Civ. Action No. 87-0646 (D.D.C. Jan. 3, 1993), J.A. at I-254, in which district courts awarded fees based, in part, on the *Laffey* matrix; and an EEOC decision, *Hatfield v. Garrett,* Appeal No. 01892909 (E.E.O.C. Sept. 26, 1990), J.A. at I-90, in which the EEOC awarded attorneys' fees using the updated *Laffey* matrix.

*See Covington*, 57 F.3d at 1105 (footnotes omitted). The Court considered the submissions of the plaintiffs as follows:

> Based on this evidence, plaintiffs requested fees for Schember and Gaffney at a rate of $ 260 per hour, which represented the 1993 prevailing market rate for experienced federal court litigators with eleven to nineteen years of experience in an updated version of the *Laffey* matrix and the U.S. Attorney's Office matrix. Plaintiffs requested attorneys' fee awards at an hourly rate of $ 160 for Delaney and Hager, which represents a rate just under that suggested by the U.S. Attorney's Office matrix for attorneys with four to seven years experience. Finally, plaintiffs requested that the two law graduates be awarded $ 85 per hour (less than the prevailing market rate of $ 125 under the U.S. Attorney's Office matrix), and that the two law students be awarded $ 70 per hour (the prevailing market rate for paralegals and law clerks under the U.S. Attorney's Office matrix).

*Id.* In affirming the district court's approval of rates based, in part, on the USAO Matrix, the circuit court noted that "plaintiffs submitted a great deal of evidence regarding prevailing market rates for complex federal litigation. This included the *Laffey* matrix, the U.S. Attorney's Office matrix, affidavits attesting to increases in the market rates since the original *Laffey* matrix, and memorandum opinions in district court cases which relied on these matrices." *Id.* at 1110. It is thus clear that the *Covington* court found *Laffey* to be quite persuasive in determining the prevailing market rates for complex federal litigation.

Here, Plaintiff tries to dismiss the cases cited by the District which demonstrate the routine application of the USAO Matrix by asserting that in those cases plaintiffs

5

affirmatively sought *Laffey* rates, and that the District previously argued against application of *Laffey*. These points certainly do not demonstrate that such rates are not routinely applied in similar cases.[4] The fact that the highest-priced firms in town charge rates to wealthy clients above those prescribed by the USAO Matrix does not dispel the fact that judges of this Court regularly recognize the USAO Matrix, and not Dr. Kavanaugh's Matrix, as providing reasonable compensation. It is also telling that Plaintiff ignores controlling law in this jurisdiction which expressly states that a "highly paid commercial, for-profit law firm can receive awards equal to its usual handsome rates," "[p]rovided, of course, these do not exceed the *Laffey* brackets." *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1520 n.2 (D.C. Cir. 1988) (en banc). Clearly, with plaintiffs' lawyers routinely requesting rates consistent with the USAO Matrix, Plaintiff's concern that the remedial nature of Section 1988 will not be met is patently unfounded. *See* Opp. at 18-19.

     5.     With respect to the District's argument that Plaintiff spent an excessive amount of time on tasks associated with this litigation, Plaintiff accuses the District of "nit-picking." In fact, the District provided an array of examples that, when considered in their totality, demonstrate the excessiveness of the fees requested here. Def. Obj. to R&R at 12-18. Indeed, when presented with the perfectly reasonable contention that it is excessive to spend nearly a full week (37.5 hours) opposing requests for extension of time, Plaintiff's counsel, rather than actually attempt to explain why such time is reasonable, goes on a rampage, accusing the District of having a "fundamental

---

[4] Plaintiff also asserts that the Court should disregard cases cited by the District which involve fee awards under the Individuals with Disabilities Education Act because "far lower fees have historically been awarded than under § 1988." Plaintiff offers no authority to support this contention.

6

misunderstanding about the civil rights laws," being a "confessed civil rights violator" and a "tormentor" of "civil rights victims," and having delay "always part of its gameplan." Opp. at 23. The District respectfully submits that Plaintiff has not met his burden of showing that such time expenditures were reasonable.[5]

Similarly, Plaintiff asserts that he attempted to settle this matter before resorting to litigating his fees and that the District bears the responsibility for the increase in fees. As the District demonstrated in its Objection, Plaintiff's counsel's overly contentious litigation strategy, replete with nasty personal attacks, made it impossible for the District to negotiate a reasonable settlement of the fee issue. The District certainly is not interested in increasing its costs by litigating a fee petition; however, it is also not fair for the District to pay unnecessary "legal" bills for correspondence and telephone time in which Plaintiff's counsel does nothing but berate the District. The 67 hours Plaintiff seeks to charge for these "efforts" simply is unreasonable.

6. Plaintiff also attempts to justify the use of attorneys for non-legal tasks. Rather then use investigators and paralegals, who certainly are less expensive than counsel, Plaintiff makes the blanket argument that legal judgment was required for tasks such as verifying Mr. Ricks' telephone number. Opp. at 27. Plaintiff's position in this regard does not make sense. As Judge Kotelly observed in the *Heard* case "non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Heard v. District of Columbia,* 2006 U.S. Dist. LEXIS 62912 *52-*52 (D.D.C. Sept. 5, 2006) (citations omitted).

---

[5] Indeed, when Plaintiff requested the District's consent (twice) to late-file his Opposition to the District's Objection to the Magistrate Judge's report and recommendation, the District gave its consent as it generally does in the spirit of professionalism.

7. Finally, Plaintiff takes issue with the District's contention that Ms. Cho should be compensated at a lower rate for lack of relevant experience. The District notes that Plaintiff has finally submitted an affidavit regarding Ms. Cho's experience, as required. Plaintiff states that "Ms. Cho has worked as counsel on cases" before three other federal district courts, but does not describe the nature of the work Ms. Cho performed or indicate the time frame – vis-à-vis the *Ricks* litigation – in which Ms. Cho performed this work. Plaintiff also admits, however, that this case is the "first federal case Ms. Cho has appeared in as counsel." Moustakas Decl. ¶ 5. Thus, based on counsel's representation that Ms. Cho has not appeared in any other federal litigation "as counsel," Ms. Cho should be compensated at $120 per hour to reflect her lack of experience prior to this case and the nature of the work Ms. Cho has actually performed. *See Covington,* 57 F.3d at 1108 n.17.

        Respectfully submitted,

        LINDA SINGER
        Attorney General for the District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General
        Civil Litigation Division

        __/s/ Nicole L. Lynch_____
        NICOLE L. LYNCH (471953)
        Chief, Section II

        __/s/ Shana L. Frost_____
        SHANA L. FROST (458021)
        Assistant Attorney General
        441 4th Street, NW, 6th Floor South
        Washington, DC 20001
        (202) 724-6534
        Fax: (202) 727-3625
        shana.frost@dc.gov